**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |
|---|---|
| INTELLECTUAL VENTURES I LLC<br><br>and<br><br>INTELLECTUAL VENTURES II LLC,<br><br>       Plaintiffs,<br><br>    v.<br><br>CAPITAL ONE FINANCIAL<br>CORPORATION, CAPITAL ONE BANK<br>(USA), NATIONAL ASSOCIATION and<br>CAPITAL ONE, NATIONAL<br>ASSOCIATION,<br><br>       Defendants. | Civil Action No. 1:13-CV-00740-AJT-TRJ<br><br><br><br>**JURY TRIAL DEMANDED** |

**ANSWER TO COMPLAINT**

Defendants Capital One Financial Corporation, Capital One Bank (USA), National Association and Capital One, National Association (collectively the "Capital One Defendants" or "Capital One"), by and through their undersigned counsel, respectfully submits their Answer and Defenses to Plaintiffs Intellectual Ventures I LLC ("IV I") and Intellectual Ventures II LLC ("IV II") (collectively "Plaintiffs")'s Complaint dated June 19, 2013 ("Complaint"). To the extent these paragraphs contain factual allegations that could be construed as referring to or relating to Capital One, the Capital One Defendants deny those allegations insofar as they refer or relate to Capital One. To the extent not expressly admitted, all allegations in the Complaint are denied. The Capital One Defendants allege upon information and belief as follows:

## NATURE OF THE ACTION

1.      Answering Paragraph 1, the Capital One Defendants admit that this is an action that purports to be for patent infringement arising under Title 35 of the United States Code.   The Capital One Defendants deny that they have infringed Intellectual Ventures I's alleged rights in U.S. Patent Nos. 7,664,701 ("the '701 Patent"), 7,603,382 ("the '382 Patent"), or 8,083,137 ("the '137 Patent"); or Intellectual Venture II's alleged rights in U.S. Patent Nos. 6,182,894 ("the '894 Patent") or 7,260,587 ("the '587 Patent") (collectively the "Patents-in-Suit") and further deny that Plaintiffs are entitled to any monetary damages or other relief they seek against Capital One.   The Capital One Defendants deny any remaining allegations in Paragraph 1.

## PARTIES

2.      Answering Paragraph 2, the Capital One Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein, and on that basis deny them.

3.      Answering Paragraph 3, the Capital One Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein, and on that basis deny them.

4.      Answering Paragraph 4, the Capital One Defendants admit that Capital One Financial Corporation is a Delaware corporation with a place of business at 1680 Capital One Drive, McLean, Virginia 22102.

5.      Answering Paragraph 5, the Capital One Defendants admit that Capital One Bank (USA), National Association is a national bank with a place of business at 1680

Capital One Drive, McLean, Virginia 22102 and that it is a subsidiary of Capital One Financial Corporation.

6.      Answering Paragraph 6, the Capital One Defendants admit that Capital One, National Association is a national bank with a place of business at 1680 Capital One Drive, McLean, Virginia 22102 and that it is a subsidiary of Capital One Financial Corporation.

## JURISDICTION AND VENUE

7.      Answering Paragraph 7, the Capital One Defendants admit that if Plaintiffs were to have standing to assert the Patents-in-Suit in their own names, this Court would have subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), inasmuch as the Complaint purports to state claims for patent infringement arising under the patent laws of the United States.  The Capital One Defendants deny any remaining allegations in Paragraph 7.

8.      Answering Paragraph 8, the Capital One Defendants deny that they have committed any acts giving rise to this action, but admit that they are subject to personal jurisdiction in this Court.  The Capital One Defendants further admit that they are headquartered and do business in Virginia.  The Capital One Defendants deny any remaining allegations in Paragraph 8.

9.      Answering Paragraph 9, the Capital One Defendants deny that they have committed acts of patent infringement giving rise to this action, whether within or without this district, but admit that venue is proper in this judicial district.  The Capital One Defendants deny any remaining allegations in Paragraph 9.

## STATEMENT OF FACTS

10.     Answering Paragraph 10, the Capital One Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein, and on that basis deny them.

11.     Answering Paragraph 11, the Capital One Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein, and on that basis deny them.

12.     Answering Paragraph 12, the Capital One Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein, and on that basis deny them.

13.     Answering Paragraph 13, the Capital One Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein, and on that basis deny them.

14.     Answering Paragraph 14, the Capital One Defendants admit that on its face, the '701 Patent attached to the Complaint as Exhibit A is titled "Masking Private Billing Data By Assigning Other Billing Data To Use In Commerce With Businesses" and dated February 16, 2010, but deny that it was duly and lawfully issued by the PTO. The Capital One Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 14, and on that basis deny them.

15.     Answering Paragraph 15, the Capital One Defendants admit that on its face, the '382 Patent attached to the Complaint as Exhibit B is titled "Advanced Internet Interface Providing User Display Access Of Customized Webpages" and dated October 13, 2009, but deny that it was duly and lawfully issued by the PTO. The Capital One Defendants are

without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 15, and on that basis deny them.

16.     Answering Paragraph 16, the Capital One Defendants admit that on its face, the '894 Patent attached to the Complaint as Exhibit C is titled "Systems And Methods For Authorizing A Transaction Card" and dated February 6, 2001, but deny that it was duly and lawfully issued by the PTO.  The Capital One Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 16, and on that basis deny them.

17.     Answering Paragraph 17, the Capital One Defendants admit that on its face, the '137 Patent attached to the Complaint as Exhibit D is titled "Administration Of Financial Accounts" and dated December 27, 2011, but deny that it was duly and lawfully issued by the PTO.  The Capital One Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 17, and on that basis deny them.

18.     Answering Paragraph 18, the Capital One Defendants admit that on its face, the '587 Patent attached to the Complaint as Exhibit E is titled "Method For Organizing Digital Images" and dated August 21, 2007, but deny that it was duly and lawfully issued by the PTO.  The Capital One Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 18, and on that basis deny them.

19.     Answering Paragraph 19, the Capital One Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein, and on that basis deny them.

20. Answering Paragraph 20, the Capital One Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein, and on that basis deny them.

21. The Capital One Defendants admit that one of more of them provide certain banking and financial services via the World Wide Web, but deny that such services are provided through the website https://bankofcapitalone.com. The Capital One Defendants further deny that they infringe one or more claims of the Patents-in-Suit in connection with these services. The Capital One Defendants deny any remaining allegations in Paragraph 21.

## FIRST CLAIM FOR RELIEF
### (Infringement of U.S. Patent No. 7,664,701)[1]

22. Answering Paragraph 22, the Capital One Defendants restate and incorporate by reference their responses to the allegations of Paragraphs 1-21 of the Complaint as if fully set forth herein.

23. The Capital One Defendants deny the allegations in Paragraph 23.

24. The Capital One Defendants deny the allegations in Paragraph 24.

25. The Capital One Defendants deny the allegations in Paragraph 25.

26. Answering Paragraph 26, the Capital One Defendants admit that IV I's counsel purportedly sent a letter, which on its face was dated June 18, 2013—only a day before the Complaint was filed—to Capital One in-house counsel alleging infringement of claim 5 of the '701 patent. The Capital One Defendants further admit that they have received a copy of the Complaint. The Capital One Defendants deny any remaining allegations in Paragraph 26.

27. The Capital One Defendants deny the allegations in Paragraph 27.

---

[1] The Capital One Defendants deny the allegations embedded in this subheading.

## SECOND CLAIM FOR RELIEF
### (Infringement of U.S. Patent No. 7,603,382)[2]

28.     Answering Paragraph 28, the Capital One Defendants restate and incorporate by reference their responses to the allegations of Paragraphs 1-21 of the Complaint as if fully set forth herein.

29.     The Capital One Defendants deny the allegations in Paragraph 29.

30.     The Capital One Defendants deny the allegations in Paragraph 30.

31.     The Capital One Defendants deny the allegations in Paragraph 31.

32.     Answering Paragraph 32, the Capital One Defendants admit that IV I's counsel purportedly sent a letter, which on its face was dated June 18, 2013—only a day before the Complaint was filed—to Capital One in-house counsel alleging infringement of claim 1 of the '382 patent.  The Capital One Defendants further admit that they have received a copy of the Complaint.  The Capital One Defendants deny any remaining allegations in Paragraph 32.

33.     The Capital One Defendants deny the allegations in Paragraph 33.

## THIRD CLAIM FOR RELIEF
### (Infringement of U.S. Patent No. 6,182,894)[3]

34.     Answering Paragraph 34, the Capital One Defendants restate and incorporate by reference their responses to the allegations of Paragraphs 1-21 of the Complaint as if fully set forth herein.

35.     The Capital One Defendants deny the allegations in Paragraph 35.

36.     The Capital One Defendants deny the allegations in Paragraph 36.

37.     The Capital One Defendants deny the allegations in Paragraph 37.

---

[2] The Capital One Defendants deny the allegations embedded in this subheading.

[3] The Capital One Defendants deny the allegations embedded in this subheading.

38.     Answering Paragraph 38, the Capital One Defendants admit that IV II's counsel purportedly sent a letter, which on its face was dated June 18, 2013—only a day before the Complaint was filed—to Capital One in-house counsel alleging infringement of claim 18 of the '894 patent.  The Capital One Defendants further admit that they have received a copy of the Complaint.  The Capital One Defendants deny any remaining allegations in Paragraph 38.

39.     The Capital One Defendants deny the allegations in Paragraph 39.

### FOURTH CLAIM FOR RELIEF
**(Infringement of U.S. Patent No. 8,083,137)[4]**

40.     Answering Paragraph 40, the Capital One Defendants restate and incorporate by reference their responses to the allegations of Paragraphs 1-21 of the Complaint as if fully set forth herein.

41.     The Capital One Defendants deny the allegations in Paragraph 41.

42.     The Capital One Defendants deny the allegations in Paragraph 42.

43.     The Capital One Defendants deny the allegations in Paragraph 43.

44.     Answering Paragraph 44, the Capital One Defendants admit that IV I's counsel purportedly sent a letter, which on its face was dated June 18, 2013—only a day before the Complaint was filed—to Capital One in-house counsel alleging infringement of claim 12 of the '137 patent.  The Capital One Defendants further admit that they have received a copy of the Complaint.  The Capital One Defendants deny any remaining allegations in Paragraph 44.

45.     The Capital One Defendants deny the allegations in Paragraph 45.

---

[4] The Capital One Defendants deny the allegations embedded in this subheading.

## FIFTH CLAIM FOR RELIEF
### (Infringement of U.S. Patent No. 7,260,587)[5]

46.     Answering Paragraph 46, the Capital One Defendants restate and incorporate by reference their responses to the allegations of Paragraphs 1-21 of the Complaint as if fully set forth herein.

47.     The Capital One Defendants deny the allegations in Paragraph 47.

48.     The Capital One Defendants deny the allegations in Paragraph 48.

49.     The Capital One Defendants deny the allegations in Paragraph 49.

50.     Answering Paragraph 50, the Capital One Defendants admit that IV II's counsel purportedly sent a letter, which on its face was dated June 18, 2013—only a day before the Complaint was filed—to Capital One in-house counsel alleging infringement of claim 18 of the '587 patent.  The Capital One Defendants further admit that they have received a copy of the Complaint.  The Capital One Defendants deny any remaining allegations in Paragraph 50.

51.     The Capital One Defendants deny the allegations in Paragraph 51.

## RESPONSE TO REQUEST FOR JUDGMENT

Answering Plaintiffs' request for judgment, the Capital One Defendants deny that they infringe or have infringed any valid and enforceable claim of the Patents-in-Suit.  The Capital One Defendants also deny that Plaintiffs are entitled to any relief requested against Capital One, including damages, interest, costs, disbursements, attorneys' fees, expenses, or any other relief of any kind, including, without limitation, Paragraphs 1 through 10 of Plaintiffs' request for judgment.

---

[5] The Capital One Defendants deny the allegations embedded in this subheading.

## JURY TRIAL DEMANDED

Answering Plaintiffs' demand for jury trial, the Capital One Defendants acknowledge that Plaintiffs demand a trial by jury on all issues so triable.

## DEFENSES

To the extent not expressly admitted above, the factual allegations contained in the Complaint are denied.  Subject to the responses above, the Capital One Defendants allege and assert the following defenses in response to the allegations set forth in the Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein.  In addition to the defenses and affirmative defenses set forth below, and subject to its responses above, the Capital One Defendants specifically maintain the right to allege additional defenses pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States, and any other defenses, at law or in equity, that now exist or in the future may become known through the course of litigation discovery and further factual investigation in this case.

## FIRST DEFENSE
### (Failure to State a Claim)

Plaintiffs have failed to state a claim upon which relief can be granted.

## SECOND DEFENSE
### (Non-Infringement)

The Capital One Defendants are not infringing and have not infringed, either literally or under the doctrine of equivalents, directly, by inducement, contributorily, or in any way, any valid enforceable claim of the patents-in-suit.

### THIRD DEFENSE
### (Invalidity)

One or more claims of the Patents-In-Suit are invalid for failure to comply with one or more provisions of Title 35 of the United States Code, including without limitation §§ 101, 102, 103, and/or 112.

### FOURTH DEFENSE
### (Waiver, Laches, Estoppel)

Plaintiffs' claims for relief, in whole or in part, are barred by the doctrines of waiver, laches, and/or estoppel.  At a minimum, Plaintiffs are barred from recovering any pre-suit damages as a result of waiver, laches, and/or estoppel.

### FIFTH DEFENSE
### (Express or Implied License, Patent Exhaustion)

Plaintiffs' claims for relief, in whole or in part, are barred by any express or implied license to the Patents-in-Suit Capital One and/or other entities supplying, directly or indirectly, any allegedly infringing services or products to Capital One may have and/or by the doctrine of patent exhaustion.

### SIXTH DEFENSE
### (Prosecution History Estoppel, Prosecution Disclaimer)

Plaintiffs' claims for relief, in whole or in part, are barred by the doctrines of prosecution history estoppel and/or prosecution disclaimer.

### SEVENTH DEFENSE
### (Limitations on Damages)

Any claim by Plaintiffs' for damages is limited under 35 U.S.C. §§ 286 and 287.

## EIGHTH DEFENSE
### (Patent Misuse)

Patent misuse renders the asserted claims of the Patents-in-Suit unenforceable. Individually and in combination with their affiliates and other entities, Plaintiffs (collectively, "Intellectual Ventures") have engaged and are continuing to engage in a scheme to impermissibly broaden the scope of their patents, including the Patents-in-Suit, with anticompetitive purpose and effect.

### 1.        Impermissible Collection of Royalties from Invalid Patents

Through threats and lawsuits, Intellectual Ventures is forcing and seeking to force U.S. commercial banks, including Capital One, to license vast patent portfolios that likely include hundreds if not thousands of patents—including the Patents-in-Suit—that do not read on the products and/or services offered by such financial institutions and that are of doubtful validity and enforceability.  On information and belief, Intellectual Ventures acquires patents relating to financial services with the intent of creating a massive portfolio of patents that, in the aggregate, are very difficult for financial services companies to defend themselves against because of the sheer number of patents in the portfolio.  The possible irrelevance, invalidity, and unenforceability of the patents in Intellectual Ventures' financial services portfolio is not an impediment to its strategy because, unlike bona fide portfolio licensing, Intellectual Ventures' business model is not based on the licensing of valuable patent rights, but rather on the threat of asserting thousands of patents in a never-ending series of costly and disruptive patent infringement law suits—pummeling its victims into submission.  As an entity that does not practice any of its patents, Intellectual Ventures is in a position to magnify the credibility of this litigation threat because it is not itself subject to such infringement allegations from members of the financial services industry whom it attacks.  By imposing the enormous costs of litigation on

multiple members of the industry, Intellectual Ventures further insulates itself from counterattack, further enhancing the credibility and coercive effect of its litigation threat.

Therefore, Intellectual Ventures knows or should reasonably know that many if not most of the 3,500 patents in its financial services patent portfolio are irrelevant, invalid, not infringed, and/or unenforceable.  Intellectual Ventures' conduct has severe anticompetitive effects in the relevant market where Intellectual Ventures, as the sole licensor of such a large number of patents, has monopoly power – specifically the market for technology enabling business processes common throughout the commercial banking industry in the United States. By forcing its victims to either face endless, costly and disruptive patent litigation or accept licenses to thousands of potentially irrelevant, invalid, and/or unenforceable patents, Intellectual Ventures eliminates the economic incentive of its coerced licensees to challenge the validity of individual patents within the portfolio, and causes anticompetitive effects contrary to public policy.

The foregoing constitutes patent misuse and is a legal bar to enforcement of the Patents-in-Suit by Intellectual Ventures.

## 2.  Unlawful Monopolization

Through its patent aggregation and licensing practices, Intellectual Ventures has illegally monopolized the relevant antitrust market for technology enabling business processes common throughout the commercial banking industry in the United States.  Specifically, Intellectual Ventures coerces licenses by threatening patent litigation without regard to the merits of specific patent-related allegations and alleges in discussions and through its litigation activities that, as a whole, any commercial bank needs a license to its patents.  Moreover, Intellectual Ventures advises its victims that they should take a portfolio license because, even if

they prove that any given subset of Intellectual Ventures' portfolio, such as the presently-asserted patents, are invalid, unenforceable, or not infringed, Intellectual Ventures will assert other patents, and still other patents, in an endless stream of litigation that will continue irrespective of the merit of Intellectual Ventures' infringement allegations so long as the victim resists taking a license.  As an entity that does not practice any of its patents, Intellectual Ventures is in a position to magnify the credibility of this litigation threat because it is not itself subject to such infringement allegations from members of the financial services industry whom it attacks.  By imposing the enormous costs of litigation on multiple members of the industry, Intellectual Ventures further insulates itself from counterattack, further enhancing the credibility of its litigation threat.  Intellectual Ventures has thus impermissibly broadened the scope of the Patents-in-Suit by using them to obtain a market benefit, beyond that which inheres in the statutory patent right, for exclusionary purposes and in a manner that has substantial anticompetitive effects.

Intellectual Ventures repeatedly has demonstrated its power to raise prices for its portfolio of patents by successfully charging supra-competitive royalties without suffering loss of demand or sales toward other licensors.  The payments that Intellectual Ventures extracts from licensees do not reflect the real economic value of the patents in Intellectual Ventures' portfolio, which a licensee would pay in a competitive market.  Intellectual Ventures is instead trying to turn straw into gold in the sense that, while it has failed to demonstrate any of the individual patents has value, companies must license the portfolio or risk one of the patents slipping through at trial.  Or even if a defendant wins case after case, that company must be prepared to incur the significant costs and disruption of patent litigation, including a significant drain on the time of key technical and financial personnel associated with each and every accused service.

Accordingly, the payments reflect "hold up" value, resulting from Intellectual Ventures' deliberate strategy of mass patent aggregation and industry-wide litigation to fashion and exploit a patent monopoly, followed by serial patent assertion whose credibility as a litigation threat does not depend upon the merits of its infringement allegations.

Intellectual Ventures has engaged in exclusionary and anticompetitive conduct to obtain and maintain its monopoly power by, among other things:

1.  Acquiring by purchase and exclusive license an enormous quantity of issued patents ostensibly related to financial and banking services, that purport to cover ordinary course financial services industry processes;

2.  Aggregating a wide collection of patents ostensibly related to financial and banking services and attempting to force licenses to these patents in a way that effectively prevents Capital One and other commercial banks from evaluating the allegations of portfolio infringement and non-infringing technical work-arounds because of Intellectual Ventures' deliberate concealment of the extent of its patent holdings and its threats of continued litigation;

3.  Initiating sham infringement litigation in bad faith, regardless of the relevance, validity, or enforceability of its patents or the likelihood of success on the merits at trial, with the intent of using the federal court process, as opposed to the outcome of that process, as an anticompetitive weapon to increase its pricing power in the relevant market.  Intellectual Ventures has asserted a series of meritless patent claims against Capital One and other U.S. commercial banks for purposes of coercing settlement and without any realistic expectation of actually securing damages or other relief, *i.e.,* motivated by a desire to impose collateral, anticompetitive injury rather than to obtain a justifiable legal remedy;

4.   Asserting vague and ambiguous patents that purport to cover ordinary course financial services industry processes, coupled with licensing demands that increase Intellectual Ventures' power to impose royalty rates that vastly exceed the real economic value, if any, of that patent portfolio; and

5.   Asserting and threatening to assert its financial services patents in serial litigation, thus making it prohibitively costly (again, regardless of the merits) for a target to defend itself against alleged infringement.  Even if the target succeeds in defeating Intellectual Ventures' first wave of asserted patents, Intellectual Ventures' demonstrable tactic and thus plainly implied threat is to file another lawsuit, and then another in an attempt to bury the target with the legal process and associated costs, irrespective of the merits.  *See, e.g.*, *Intellectual Ventures I LLC, et al. v. Canon Inc., et al.*, C.A. No. 11-792-SLR (D. Del.); *Intellectual Ventures I LLC et al. v. Canon, Inc., et al.*, C.A. No. 13-473-SLR (D. Del.).

In the face of these anticompetitive practices, a rational financial services target would more likely than not pay for limited patent peace, even if Intellectual Ventures does not have a single valid and infringed patent in its financial services portfolio.  Such payments are not compensation for the inventive value of the patents but rather monopoly rents, in other words hold-up payments attributable to Intellectual Ventures' willful patent aggregation and serial assertion strategy.  Deliberately increasing the cumulative cost of patent litigation in order to extract payments above and beyond the economic value of its patent in a competitive marketplace extends Intellectual Ventures' patent rights to derive a benefit not attributable to the use of the patents' teaching and therefore constitutes misuse.

Intellectual Ventures' conduct harms the competitive process by, for example, forcing and seeking to force providers of financial services and products to pay monopoly

overcharges, thereby reducing the incentive to innovate.  Companies such as Capital One foresee that if they achieve success by selling a product with enough revenue to attract Intellectual Ventures, Intellectual Ventures will seek to "tax" it.  Moreover, Intellectual Ventures' campaigns of serially asserting waves of weak patents to intimidate its victims and coerce them into taking portfolio licenses at exorbitant prices forces its targets, including Capital One, to expend significant resources in defending against Intellectual Ventures' monopolistic course of conduct. Such supracompetitive royalties also restrict output and raise prices in the downstream markets for the commercial banking services and products, therefore harming consumers.  By raising the costs of companies such as Capital One that compete with Intellectual Ventures' through self-supplying or purchasing necessary financial service inputs from other firms, Intellectual Ventures injures competition in the broader downstream market for commercial banking services and products.

Through the accumulation of a comprehensive patent portfolio primarily through acquisition, and by exclusionary abuse of that patent portfolio to extract monopoly, hold-up royalties, as set forth above, Intellectual Ventures has committed patent misuse rendering the Patents-In-Suit unenforceable as a matter of law.

## COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 13, Defendants and Capital One Counterclaim-Plaintiffs Financial Corporation, Capital One Bank (USA), N.A., and Capital One, N.A. (collectively "Capital One" or "Capital One Counterclaim-Plaintiffs") allege the following against Plaintiffs and Counterclaim-Defendants Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively "IV"):

## PARTIES

1.      Capital One Financial Corporation is a Delaware corporation with its corporate headquarters and principal place of business in McLean, Virginia.

2.      Capital One Bank (USA), N.A. is a national bank with its principal place of business located in Glen Allen, Virginia.

3.      Capital One, N.A. is a national bank with its principal place of business in McLean, Virginia.

4.      Intellectual Ventures I LLC ("IV I") alleges that it is a Delaware limited liability company with its principal place of business in Bellevue, Washington.

5.      Intellectual Ventures II LLC ("IV II") alleges that it is a Delaware limited liability company with its principal place of business in Bellevue, Washington.

## JURISDICTION AND VENUE

6.      Subject to the affirmative defenses and denials set forth above, this Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 2201, and 2202.

7.      IV have submitted to the personal jurisdiction of this Court by, without limitation, bringing the present action alleging infringement of the Patents-in-Suit.

8.      Venue is proper in this judicial district pursuant to, without limitation, 28 U.S.C. §§ 1391(b) and 1391(c).

## COUNTERCLAIM COUNT ONE
### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,664,701)

9.      The Capital One Counterclaim-Plaintiffs repeat and re-allege the allegations of the preceding Paragraphs 1-8 of these Counterclaims are if fully set forth herein.

10.     IV I has sued Capital One in the present action, alleging infringement of U.S. Patent No. 7,664,701 ("the '701 Patent").  Thus, an immediate, real and justiciable controversy exists between IV, on the one hand, and Capital One, on the other hand, with respect to the alleged infringement of the '701 Patent.

11.     The Capital One Counterclaim-Plaintiffs are not infringing, and have not infringed, either literally or under the doctrine of equivalents, directly, by inducement, contributorily, or in any way, any valid, enforceable claim of the '701 Patent.

12.     The Capital One Counterclaim-Plaintiffs are entitled to a declaratory judgment that they have not and do not infringe, directly or indirectly, any valid, enforceable claim of the '701 Patent.

### COUNTERCLAIM COUNT TWO
**(Declaratory Judgment of Invalidity and Unenforceability of U.S. Patent No. 7,664,701)**

13.     The Capital One Counterclaim-Plaintiffs repeat and re-allege the allegations of the preceding Paragraphs 1-8 of these Counterclaims are if fully set forth herein.

14.     IV I has sued Capital One in the present action, alleging infringement of the '701 Patent.  Thus, an immediate, real and justiciable controversy exists between IV, on the one hand, and Capital One, on the other hand, with respect to the alleged infringement of the '701 Patent.

15.     The claims of the '701 Patent are invalid for failure to satisfy one or more of the requirements of Title 35 of the United States Code, including, without limitation, Sections 101, 102, 103, and/or 112.

16.     The claims of the '701 Patent are unenforceable for at least the reasons stated in Capital One's defenses, herein incorporated by reference.

17.     The Capital One Counterclaim-Plaintiffs are entitled to a declaratory judgment that the claims of the '701 Patent are invalid and unenforceable.

### COUNTERCLAIM COUNT THREE
**(Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,603,382)**

18.     The Capital One Counterclaim-Plaintiffs repeat and re-allege the allegations of the preceding Paragraphs 1-8 of these Counterclaims are if fully set forth herein.

19.     IV I has sued Capital One in the present action, alleging infringement of U.S. Patent No. 7,603,382 ("the '382 Patent").   Thus, an immediate, real and justiciable controversy exists between IV, on the one hand, and Capital One, on the other hand, with respect to the alleged infringement of the '382 Patent.

20.     The Capital One Counterclaim-Plaintiffs are not infringing, and have not infringed, either literally or under the doctrine of equivalents, directly, by inducement, contributorily, or in any way, any valid, enforceable claim of the '382 Patent.

21.     The Capital One Counterclaim-Plaintiffs are entitled to a declaratory judgment that they have not and do not infringe, directly or indirectly, any valid, enforceable claim of the '382 Patent.

### COUNTERCLAIM COUNT FOUR
**(Declaratory Judgment of Invalidity and Unenforceability of U.S. Patent No. 7,603,382)**

22.     The Capital One Counterclaim-Plaintiffs repeat and re-allege the allegations of the preceding Paragraphs 1-8 of these Counterclaims are if fully set forth herein.

23.     IV I has sued Capital One in the present action, alleging infringement of the '382 Patent.   Thus, an immediate, real and justiciable controversy exists between IV, on the one hand, and Capital One, on the other hand, with respect to the alleged infringement of the '382 Patent.

20

24.      The claims of the '382 Patent are invalid for failure to satisfy one or more of the requirements of Title 35 of the United States Code, including, without limitation, Sections 101, 102, 103, and/or 112.

25.      The claims of the '382 Patent are unenforceable for at least the reasons stated in Capital One's defenses, herein incorporated by reference.

26.      The Capital One Counterclaim-Plaintiffs are entitled to a declaratory judgment that the claims of the '382 Patent are invalid and unenforceable.

**COUNTERCLAIM COUNT FIVE**
**(Declaratory Judgment of Non-Infringement of U.S. Patent No. 6,182,894)**

27.      The Capital One Counterclaim-Plaintiffs repeat and re-allege the allegations of the preceding Paragraphs 1-8 of these Counterclaims are if fully set forth herein.

28.      IV II has sued Capital One in the present action, alleging infringement of U.S. Patent No. 6,182,894 ("the '894 Patent").   Thus, an immediate, real and justiciable controversy exists between IV, on the one hand, and Capital One, on the other hand, with respect to the alleged infringement of the '894 Patent.

29.      The Capital One Counterclaim-Plaintiffs are not infringing, and have not infringed, either literally or under the doctrine of equivalents, directly, by inducement, contributorily, or in any way, any valid, enforceable claim of the '894 Patent.

30.      The Capital One Counterclaim-Plaintiffs are entitled to a declaratory judgment that they have not and do not infringe, directly or indirectly, any valid, enforceable claim of the '894 Patent.

**COUNTERCLAIM COUNT SIX**
**(Declaratory Judgment of Invalidity and Unenforceability of U.S. Patent No. 6,182,894)**

31.     The Capital One Counterclaim-Plaintiffs repeat and re-allege the allegations of the preceding Paragraphs 1-8 of these Counterclaims are if fully set forth herein.

32.     IV II has sued Capital One in the present action, alleging infringement of the '894 Patent.  Thus, an immediate, real and justiciable controversy exists between IV, on the one hand, and Capital One, on the other hand, with respect to the alleged infringement of the '894 Patent.

33.     The claims of the '894 Patent are invalid for failure to satisfy one or more of the requirements of Title 35 of the United States Code, including, without limitation, Sections 101, 102, 103, and/or 112.

34.     The claims of the '894 Patent are unenforceable for at least the reasons stated in Capital One's defenses, herein incorporated by reference.

35.     The Capital One Counterclaim-Plaintiffs are entitled to a declaratory judgment that the claims of the '894 Patent are invalid and unenforceable.

**COUNTERCLAIM COUNT SEVEN**
**(Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,083,137)**

36.     The Capital One Counterclaim-Plaintiffs repeat and re-allege the allegations of the preceding Paragraphs 1-8 of these Counterclaims are if fully set forth herein.

37.     IV I has sued Capital One in the present action, alleging infringement of U.S. Patent No. 8,083,137 ("the '137 Patent").   Thus, an immediate, real and justiciable controversy exists between IV, on the one hand, and Capital One, on the other hand, with respect to the alleged infringement of the '137 Patent.

38.     The Capital One Counterclaim-Plaintiffs are not infringing, and have not infringed, either literally or under the doctrine of equivalents, directly, by inducement, contributorily, or in any way, any valid, enforceable claim of the '137 Patent.

39.     The Capital One Counterclaim-Plaintiffs are entitled to a declaratory judgment that they have not and do not infringe, directly or indirectly, any valid, enforceable claim of the '137 Patent.

## COUNTERCLAIM COUNT EIGHT
**(Declaratory Judgment of Invalidity and Unenforceability of U.S. Patent No. 8,083,137)**

40.     The Capital One Counterclaim-Plaintiffs repeat and re-allege the allegations of the preceding Paragraphs 1-8 of these Counterclaims are if fully set forth herein.

41.     IV I has sued Capital One in the present action, alleging infringement of the '137 Patent. Thus, an immediate, real and justiciable controversy exists between IV, on the one hand, and Capital One, on the other hand, with respect to the alleged infringement of the '137 Patent.

42.     The claims of the '137 Patent are invalid for failure to satisfy one or more of the requirements of Title 35 of the United States Code, including, without limitation, Sections 101, 102, 103, and/or 112.

43.     The claims of the '137 Patent are unenforceable for at least the reasons stated in Capital One's defenses, herein incorporated by reference.

44.     The Capital One Counterclaim-Plaintiffs are entitled to a declaratory judgment that the claims of the '137 Patent are invalid and unenforceable.

**COUNTERCLAIM COUNT NINE**
**(Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,260,587)**

45.     The Capital One Counterclaim-Plaintiffs repeat and re-allege the allegations of the preceding Paragraphs 1-8 of these Counterclaims are if fully set forth herein.

46.     IV II has sued Capital One in the present action, alleging infringement of U.S. Patent No. 7,260,587 ("the '587 Patent").   Thus, an immediate, real and justiciable controversy exists between IV, on the one hand, and Capital One, on the other hand, with respect to the alleged infringement of the '587 Patent.

47.     The Capital One Counterclaim-Plaintiffs are not infringing, and have not infringed, either literally or under the doctrine of equivalents, directly, by inducement, contributorily, or in any way, any valid, enforceable claim of the '587 Patent.

48.     The Capital One Counterclaim-Plaintiffs are entitled to a declaratory judgment that they have not and do not infringe, directly or indirectly, any valid, enforceable claim of the '587 Patent.

**COUNTERCLAIM COUNT TEN**
**(Declaratory Judgment of Invalidity and Unenforceability of U.S. Patent No. 7,260,587)**

49.     The Capital One Counterclaim-Plaintiffs repeat and re-allege the allegations of the preceding Paragraphs 1-8 of these Counterclaims are if fully set forth herein.

50.     IV II has sued Capital One in the present action, alleging infringement of the '587 Patent.   Thus, an immediate, real and justiciable controversy exists between IV, on the one hand, and Capital One, on the other hand, with respect to the alleged infringement of the '587 Patent.

51.     The claims of the '587 Patent are invalid for failure to satisfy one or more of the requirements of Title 35 of the United States Code, including, without limitation, Sections 101, 102, 103, and/or 112.

52.     The claims of the '587 Patent are unenforceable for at least the reasons stated in Capital One's defenses, herein incorporated by reference.

53.     The Capital One Counterclaim-Plaintiffs are entitled to a declaratory judgment that the claims of the '587 Patent are invalid and unenforceable.

**COUNTERCLAIM COUNT ELEVEN**
**(Monopolization Under Section 2 of the Sherman Act)**

54.     The Capital One Counterclaim-Plaintiffs repeat and re-allege the allegations of the preceding Paragraphs 1-53 of these Counterclaims as if fully set forth herein.

55.     Based on the sheer number of patents Intellectual Ventures has accumulated and its licensing practices (not the value of any of its individual patents), Intellectual Ventures holds monopoly power in the relevant antitrust market for technology enabling business processes common throughout the commercial banking industry in the United States, where the relevant geographic market is nationwide.  Principally through acquisition and license, rather than internal development, Intellectual Ventures has amassed an enormous portfolio of 3,500 or more patents that it alleges cover widely used financial and retail banking services.  Intellectual Ventures represents that it has accumulated at least 1,000 patents purportedly reading directly on retail commercial banking activities in the areas of ATMs, credit and debit transaction processing, and online and mobile banking services.

56.     By deliberately targeting providers of financial services and products in the U.S. for a campaign of royalty extortion based on its patent portfolio of extraordinary size, and by instituting and threatening to prosecute this and future bad-faith, strategic litigation

against Capital One and other commercial banking entities in the United States, Intellectual Ventures is using its monopoly power to eliminate competition for the provision of such inputs, thus imposing an enormous licensing "tax" upon the entire banking industry. Intellectual Ventures has thereby monopolized the market for technology enabling business processes common throughout the commercial banking industry in the United States in violation of Section 2 of the Sherman Act.

57.     Intellectual Ventures has engaged in exclusionary and anticompetitive conduct to obtain and maintain its monopoly power in the relevant market by, among other things:

a.      Acquiring by purchase and exclusive license an enormous quantity of issued patents ostensibly related to financial and banking services, that purport to cover ordinary course financial services industry processes;

b.      Aggregating a wide collection of patents ostensibly related to financial and banking services and attempting to force licenses to these patents in a way that effectively prevents Capital One and other commercial banks from evaluating the allegations of portfolio infringement and the availability of non-infringing technical work-arounds because of Intellectual Ventures' deliberate concealment of the extent of its patent holdings and its threats of continued litigation;

c.      Initiating sham infringement litigation in bad faith, regardless of the relevance, validity, or enforceability of its patents or the likelihood of success on the merits at trial, with the intent of using the federal court process, as opposed to the outcome of that process, as an anticompetitive weapon to increase its pricing power in the relevant market. Intellectual Ventures has asserted a series of meritless patent claims, against Capital One and other U.S.

commercial banks, for purposes of coercing settlement and without any realistic expectation of actually securing damages or other relief, *i.e.,* motivated by a desire to impose collateral, anticompetitive injury rather than to obtain a justifiable legal remedy;

    d. Asserting vague and ambiguous patents that purport to cover ordinary course financial services industry processes, coupled with licensing demands that increase Intellectual Ventures' power to impose royalty rates that vastly exceed the real economic value, if any, of that patent portfolio; and

    e. Asserting its financial services patents in serial litigation, thus making it prohibitively costly (again, regardless of the merits) for a target to defend itself against alleged infringement.  Even if the target succeeds in defeating Intellectual Ventures' first wave of asserted patents, Intellectual Ventures' demonstrable tactic and thus plainly implied threat is to file another lawsuit, and then another in an attempt to bury the target with the legal process and associated costs, irrespective of the merits.  *See, e.g., Intellectual Ventures I LLC, et al. v. Canon Inc., et al.,* C.A. No. 11-792-SLR (D. Del.); *Intellectual Ventures I LLC, et al. v. Canon, Inc., et al.,* C.A. No. 13-473-SLR (D. Del.).  As an entity that does not practice any of its patents, Intellectual Ventures is in a position to magnify the credibility of this litigation threat because it is not itself subject to such infringement allegations from members of the financial services industry whom it attacks.  By imposing the enormous costs of litigation on multiple members of the industry, Intellectual Ventures further insulates itself from counterattack, further enhancing the credibility of its litigation threat.

    58. To the extent that Capital One and other defendants victimized by Intellectual Ventures' campaign make expenditures to defend themselves and/or are required to pay royalties as a result, the cost to the Capital One Counterclaim-Plaintiffs and their competitors

of delivering financial products and services in the United States will be increased, the price of such services to consumers will rise, and the quantity, quality and rate of innovation of such products and services will decline.  Intellectual Ventures' campaign of extraordinary patent accumulation and litigation, with the objective to compel the payment of enormous royalties from Capital One and other large commercial banks by "going after the entire industry," has no cognizable procompetitive justification and lacks any efficiency enhancing effects sufficient to outweigh its enormous anticompetitive impact.

59.    The only competitive effects of Intellectual Ventures' financial services patent monopoly and its abuse are to raise the costs of commercial banking operations to include the "holdup" value of the immense license fees Intellectual Ventures seeks to impose and, accordingly, to increase prices for and decrease services available to retail commercial banking customers of Capital One and the other target firms.  These are "deadweight" economic losses that decrease consumer welfare and, because Intellectual Ventures produces no products or services in the relevant market itself, serve only to prevent commercial banking entities like Capital One from purchasing, using and passing on to consumers lower-cost technologies and business processes available from vendor firms that actually supply valuable goods and services to the industry.

60.    Intellectual Ventures has thereby monopolized the market for technology enabling business processes common throughout the commercial banking industry in the United States, where the relevant geographic market is nationwide, in violation of Section 2 of the Sherman Act.

61.    As a direct result of Intellectual Ventures' illegal monopolization, the Capital One Counterclaim-Plaintiffs have been injured in their business and property.  This

28

campaign has already required the Capital One Counterclaim-Plaintiffs to expend substantial sums of money and devote considerable management time and other resources in defending themselves, and will require the Capital One Counterclaim-Plaintiffs to make substantial additional expenditures and devote additional resources to their defense in the future. Capital One's injuries are accordingly a direct result of the anticompetitive conduct engaged in by Intellectual Ventures and are injuries of the type the antitrust laws were intended to prevent.

62.    Pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, the Capital One Counterclaim-Plaintiffs are entitled to treble the amount of their actual damages attributable to Intellectual Ventures' unlawful monopolization in an amount to be determined at trial, plus the cost of suit, including reasonable attorneys' fees.

63.    Pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, the Capital One Counterclaim-Plaintiffs are entitled to an injunction preventing and restraining Intellectual Ventures' conduct in violation of Section 2 of the Sherman Act, and to an award of the cost of suit, including reasonable attorneys' fees.

## COUNTERCLAIM COUNT TWELVE
### (Attempted Monopolization Under Section 2 of the Sherman Act)

64.    The Capital One Counterclaim-Plaintiffs repeat and re-allege the allegations of the preceding Paragraphs 1-63 of these Counterclaims as if fully set forth herein.

65.    Intellectual Ventures has engaged in the anticompetitive and exclusionary practices previously alleged with the specific purpose and intent of obtaining monopoly power in the market for technology enabling business processes common throughout the commercial banking industry in the United States, where the relevant geographic market is nationwide.

66.    Intellectual Ventures has either already acquired or presents a dangerous probability of achieving monopoly power in the relevant market.

67. Intellectual Ventures has thereby attempted to monopolize the market for technology enabling business processes common throughout the commercial banking industry in the United States, in violation of Section 2 of the Sherman Act.

68. As a direct result of Intellectual Ventures' attempted monopolization, the Capital One Counterclaim-Plaintiffs have been injured in their business and property, as previously alleged. Capital One's injuries are a direct result of the unlawful conduct engaged in by Intellectual Ventures and are injuries of the type the antitrust laws were intended to prevent.

69. Pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, the Capital One Counterclaim-Plaintiffs are entitled to treble the amount of their actual damages attributable to Intellectual Ventures' unlawful monopolization in an amount to be determined at trial, plus the cost of suit, including reasonable attorneys' fees.

70. Pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, the Capital One Counterclaim-Plaintiffs are entitled to an injunction preventing and restraining Intellectual Ventures' conduct in violation of Section 2 of the Sherman Act, and to an award of the cost of suit, including reasonable attorneys' fees.

### COUNTERCLAIM COUNT THIRTEEN
**(Unlawful Asset Acquisitions in Violation of Section 7 of the Clayton Act)**

71. The Capital One Counterclaim-Plaintiffs repeat and re-allege the allegations of the preceding Paragraphs 1-70 of these Counterclaims as if fully set forth herein.

72. Intellectual Ventures has amassed a financial services patent portfolio of extraordinary breadth in order to carry out its campaign of actual and threatened bad-faith and strategic litigation. This enormous portfolio, which it asserts includes at least 3,500 patents ostensibly related to financial services and more than 1,000 patents claimed to read directly on retail commercial banking activities in the areas of ATMs, credit and debit transaction

processing, and online and mobile banking services, has been aggregated primarily through acquisition by Intellectual Ventures of assets, namely patents and exclusive patent licenses.

73.     These asset acquisitions are likely to lessen substantially, and indeed already have lessened substantially, competition in the market for technology enabling business processes common throughout the commercial banking industry in the United States, where the relevant geographic market is nationwide.   These asset acquisitions in addition are likely to create, and indeed already have created, a monopoly in the relevant market.

74.     Intellectual Ventures' acquisitions thereby violate Section 7 of the Clayton Act, 15 U.S.C. § 18.

75.     As a direct result of Intellectual Ventures' unlawful asset acquisitions, the Capital One Counterclaim-Plaintiffs have been injured in their business and property, as previously alleged.   Capital One's injuries are a direct result of the unlawful conduct engaged in by Intellectual Ventures and are injuries of the type the antitrust laws were intended to prevent.

76.     Pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, the Capital One Counterclaim-Plaintiffs are entitled to treble the amount of their actual damages attributable to Intellectual Ventures' unlawful acquisitions in an amount to be determined at trial, plus the cost of suit, including reasonable attorneys' fees.

77.     Pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, the Capital One Counterclaim-Plaintiffs are entitled to an injunction mandating divestiture or other disposition of Intellectual Ventures' unlawfully acquired patent assets and to an award of the cost of suit, including reasonable attorneys' fees.

## RELIEF REQUESTED

WHEREFORE, the Capital One Counterclaim-Plaintiffs respectfully request the following relief:

A.    That IV take nothing on their Complaint;

B.    That IV's Complaint be dismissed with prejudice and that all relief requested by IV be denied with prejudice;

C.    That the Court find and declare that the Capital One Counterclaim-Plaintiffs have not infringed and do not infringe in any manner any valid, enforceable claim of the Patents-in-Suit;

D.    That the Court find and declare that each claim of the Patents-in-Suit is invalid, void, unenforceable, and without any force or effect against the Capital One Counterclaim-Plaintiffs and their officers, employees, agents and attorneys, or any of them;

E.    That the Court find and declare this to be an exceptional case under 35 U.S.C. § 285, and that the Court award the Capital One Counterclaim-Plaintiffs their reasonable attorneys' fees;

F.    That the Court enter judgment against IV under Section 2 of the Sherman Act and Section 7 of the Clayton Act, award the Capital One Counterclaim-Plaintiffs treble the amount of their actual damages attributable to IV's antitrust violations, plus reasonable attorneys' fees, and enter an injunction (i) preventing and restraining IV's exclusionary, anticompetitive conduct, and (ii) mandating divestiture or other disposition of IV's unlawfully acquired financial services patent assets;

G.    That the Court award to the Capital One Counterclaim-Plaintiffs their costs associated with this case; and

32

H.     That the Court award to the Capital One Counterclaim-Plaintiffs such further relief, in law or in equity, as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Capital One Counterclaim-Plaintiffs demand a trial by jury on all issues properly triable to a jury.

Dated:  September 11, 2013

**CAPITAL ONE FINANCIAL CORPORATION
CAPITAL ONE BANK (USA), N.A.
CAPITAL ONE, N.A.**

By:/s/ S. Mohsin Reza
Mary C. Zinsner (VSB No. 31397)
mary.zinsner@troutmansanders.com
S. Mohsin Reza (VSB No. 75347)
mohsin.reza@troutmansanders.com
TROUTMAN SANDERS LLP
1850 Towers Crescent Plaza, Ste. 500
Tysons Corner, VA  22182
Telephone:  (703) 734-4334
Facsimile:  (703) 734-4340

Robert A. Angle (VSB No. 37691)
robert.angle@troutmansanders.com
Dabney J. Carr, IV (VSB No. 28679)
dabney.carr@troutmansanders.com
Nicholas R. Klaiber (VSB No. 80563)
nicholas.klaiber@troutmansanders.com
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia  23219
Telephone: (804) 697-1246
Facsimile: (804) 698-5124

Jonathan D. Link (VSB No. 42951)
jonathan.link@lw.com
Matthew J. Moore (*pro hac vice*)
matthew.moore@lw.com
Abbott B. Lipsky, Jr. (*pro hac vice*)
tad.lipsky@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000

Washington, DC  20004-1304
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201

Jeffrey G. Homrig (*pro hac vice*)
jeff.homrig@lw.com
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA  92025-1008
Telephone:  (650) 328-4600
Facsimile:  (650) 463-2600

Joseph H. Lee (*pro hac vice*)
joseph.lee@lw.com
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA  92626-1925
Telephone:  (714) 840-1235
Facsimile (714) 755-8290

Neil A. Rubin (*pro hac vice*)
neil.rubin@lw.com
LATHAM & WATKINS LLP
355 Grand Avenue
Los Angeles, CA  90071-1560
Telephone:  (213) 485-1234
Facsimile:  (213) 891-8763

Andrew J. Fossom (*pro hac vice*)
andrew.fossum@lw.com
LATHAM & WATKINS LLP
811 Main Street, Suite 3700
Houston, TX  77002
Telephone:  (713) 546-7449
Facsimile:  (713) 546-5401

*Attorneys for Defendants, Capital One Financial Corporation, Capital One Bank (USA), N.A. and Capital One, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of September 2013, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification

of such filing (NEF) to the registered users listed below:

> Clayton W. Thompson, II (VSB No. 41962)
>  cthompson@feinday.com
> Ian N. Feinberg (*pro hac vice*)
>  ifeinberg@feinday.com
> Elizabeth Day (*pro hac vice*)
>  eday@feinday.com
> Marc C. Belloli (*pro hac vice*)
>  mbelloli@feinday.com
> Yakov Zolotorev (*pro hac vice*)
>  yzolotorev@feinday.com
> FEINBERG DAY ALBERTI & THOMPSON LLP
> 1600 El Camino Real, Suite 280
> Menlo Park, CA  94025
>
>
> Craig C. Reilly (VSB No. 20942)
>  craig.reilly@ccreillylaw.com
> LAW OFFICE OF CRAIG C. REILLY
> 111 Oronoco Street
> Alexandria, VA  22314
>
> *Counsel for Plaintiffs Intellectual Ventures I LLC*
> *and Intellectual Ventures II LLC*

>                    /s/ S. Mohsin Reza
>                    Mary C. Zinsner (VSB No. 31397)
>                    mary.zinsner@troutmansanders.com
>                    S. Mohsin Reza (VSB No. 75347)
>                    mohsin.reza@troutmansanders.com
>                    TROUTMAN SANDERS LLP
>                    1850 Towers Crescent Plaza, Ste. 500
>                    Tysons Corner, VA  22182
>                    Telephone:  (703) 734-4334
>                    Facsimile:  (703) 734-4340
>
>                    *Attorneys for Capital One Defendants Financial*
>                    *Corporation, Capital One Bank (USA), National*
>                    *Association and Capital One, National Association*