IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Intellectual Ventures I LLC and Intellectual Ventures II LLC, | CIVIL ACTION NO. 1:13-cv-00740-AJT/TRJ |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| CAPITAL ONE FINANCIAL CORPORATION, CAPITAL ONE BANK (USA), N.A. AND CAPITAL ONE, N.A., | |
| Defendants. | |

**PLAINTIFF/COUNTERCLAIMANTS' OPENING BRIEF IN SUPPORT OF
MOTION TO DISMISS ANTITRUST COUNTERCLAIMS 11, 12 AND 13 AND
EIGHTH AFFIRMATIVE PATENT MISUSE DEFENSE**

# TABLE OF CONTENTS

**Pages**

I.   INTRODUCTION ................................................................................................ 1

   A.   Factual Allegations .................................................................................... 4

     1.   Counterclaim 11: Monopolization .................................................. 4

     2.   Counterclaim 12: Attempted Monopolization ................................ 6

     3.   Counterclaim 13: Unlawful Acquisition of Patents In Alleged Violation of Clayton § 7. ................................................................................................ 6

     4.   Affirmative defense 8:   Patent Misuse ......................................... 6

II.   ARGUMENT ................................................................................................... 7

   A.   Capital One's Antitrust Counterclaims and Patent Misuse Defenses Must Be Dismissed Because They Do Not State "Plausible" Claims for Relief. ...................... 7

   B.   Counterclaim 11 Does Not and Cannot Plausibly State a Claim for Monopolization in Violation of Sherman Act §2. ......................................................... 8

     1.   Capital One Alleges No Plausible Relevant Market. ........................... 8

     2.   Capital One Does Not Plausibly Allege that Intellectual Ventures Has Monopoly Power in any Properly Defined Relevant Market. .................................. 10

     3.   None of the Conduct Alleged by Capital One Is an Unlawful Act of Monopolization. ............................................................................................. 13

       a)   Acquiring an "enormous quantity" of patents. ............................... 13

       b)   Deliberate concealment of Intellectual Ventures' patent portfolio to force a license. ................................................................................................ 14

       c)   Sham Litigation. ............................................................................. 16

     4.   Capital One does not plausibly allege facts giving standing to assert, or antitrust injury from, Intellectual Ventures' litigation against other banks. .......................... 17

       a)   Intellectual Ventures' Conduct Is Not "Sham Litigation" as a Matter of Law. 18

       b)   Intellectual Ventures' Lawsuits Are Not Objectively Baseless.................... 18

       c)   Intellectual Ventures' Lawsuit Is Not Subjectively Baseless. ....................... 19

     5.   "Asserting vague and ambiguous patents" and demanding "excessive royalty rates." ......................................................................................................... 22

     6.   Serial litigation. ............................................................................. 23

     7.   Capital One Lacks Standing to Sue and Has Suffered No Antitrust Injury Because It Is Not a Competitor of Intellectual Ventures. .......................................... 24

   C.   Counterclaim 12 Does Not and Cannot Plausibly State a Claim for Attempted Monopolization in Violation of Sherman Act §2. ......................................................... 25

   D.   Counterclaim 13 Does Not and Cannot Plausibly State a Claim for Unlawful Acquisition of Assets in Violation of Clayton Act §7 ................................................ 26

   E.   Capital One's Patent Misuse Affirmative Defense Should Be Dismissed With Prejudice ......................................................................................................... 28

III.   CONCLUSION ................................................................................................ 29

i

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
  486 U.S. 492 (1988)..................................................................... 16, 18, 20

*Ashcroft v. Iqbal*,
  556 U.S 662 (2009)......................................................... 7, 8, 17, 18

*Atlantic Richfield Co. v. USA Petroleum Co.*,
  459 U.S. 328 (1990)................................................................ 17

*Baltimore Scrap Corp. v. David J. Joseph Co.*,
  237 F.3d 394 (4th Cir. 2004) ................................................ 19

*Bell Atlantic Corp v. Twombly*,
  550 U.S. 554 (2006)....................................................... 7, 8, 17, 18

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977)............................................................... 17

*California Motor Transport Co. v. Trucking Unlimited*,
  404 U.S. 508 S.Ct. 609, 30 L.Ed.2d 642 (1972)....................... 20

*City of Columbia v. Omni Outdoor Advertising Inc.*,
  499 U.S. 365 (1999)........................................................ 20, 21

*Dickson v. Microsoft Corp.*,
  309 F.3d 193 (4th Cir. 2002) ............................................ 11, 26

*Eastern R.R.s President's Conf. v. Noerr Motor Freight*,
  365 U.S. 127 (1961)............................................................ passim

*F.T.C. v. Actavis, Inc.*,
  133 S.Ct. L.Ed.2d 343 (2013) ............................................... 12

*Glass Equip. Dev. Corp. v. Bestin, Inc.*,
  174 F.3d 1337 (Fed. Cir. 1999) ..................................... 19, 23

*Globetrotter Software v. Elan Computer Group*,
  362 F.3d 1367 (Fed. Cir. 2004) ........................................... 22

*Golan v. Pingel Enterprise, Inc.*,
  310 F.3d 1360 (Fed. Cir. 2002) ...................................... 8, 16

*Grand River Enterprises Six Nations Ltd. v. King*,
    781 F.Supp.2d 516 (S.D.N.Y. 2011) ........................................................ 17

*IGT v. Alliance Gaming Corp.*,
    702 F.3d 1338 (Fed. Cir. 2012) ........................................................ 8, 10

*Illinois Tool Works v. Independent Ink, Inc.*,
    547 U.S. 28 (2006) ........................................................ 11

*In re Independent Service Organizations Antitrust Litigation*,
    203 F.3 1322 (Fed. Cir. 2000) ........................................................ 23

*Intergraph Corp. v. Intel Corp.*,
    195 F.3d 1346 (Fed. Cir 1999) ........................................................ 24, 25

*Kolene Corp. v. Motor City Metal Treating, Inc.*,
    440 F.2d 77 (6th Cir. 1971) ........................................................ 28

*M&M Medical Supplies & Services, Inc. v. Pleasant Valley Hospital, Inc.*,
    981 F.2d 160 (4th Cir. 1992) ........................................................ 11

*Midwest Machinery Co., Inc. v. Northwest Airlines, Inc.*,
    392 F.3d 265 (8th Cir 2004) ........................................................ 27

*Nobelpharma, AB. v. Implant Innovations, Inc.*,
    141 F.3d 1059 (Fed. Cir. 1998) ........................................................ 16, 22

*Princo Corp. v. ITC*,
    616 F.3d 1318 (Fed. Cir. 2010) ........................................................ 28

*Professional Real Estate Investors v. Columbia Pictures*,
    508 U.S. 49 (1993) ........................................................ 16

*Sciele Pharma Inc. v. Lupin Ltd.*,
    684 F.3d 1253 (Fed. Cir. 2012) ........................................................ 19

*SCM Corp. v. Xerox Corp.*,
    645 F.2d 1195 (2d Cir. 1981) ........................................................ 26

*Sessions Tank Liners, Inc. v. Joor Mfg., Inc.*,
    827 F.2d 458 (CA9 1987) ........................................................ 20

*SOSA v. DirecTV, Inc.*,
    437 F.3d 923 (9th Cir 2006) ........................................................ 23

*Spectrum Sports, Inc. v. McQuillan*,
    506 U.S. 447 (1993) ........................................................ 25

iii

*SSS Enterprises, Inc. v. Nova Petroleum Suppliers, Inc.*,
   2012 WL (E.D. VA Alex. Div. August 30, 2102) ................................................. 11, 25

*U.S. Philips Corp v. ITC*,
   424 F.3d 1179 (Fed. Cir 2005) ............................................................................. 14, 16

*United Mine Workers v. Pennington*,
   281 U.S. 657 (1965) ...................................................................................................... 16

*United States v. Grinnel Corp.*,
   384 U.S. 563 (1966) ........................................................................................................ 8

*United States v. Paramount Pictures, Inc.*,
   334 U.S. 131 (1962) ....................................................................................................... 15

*VAE Nortrak North America, Inc. v. Progress Rail Services Corp.*,
   459 F.Supp.2d 1142 (N.D.Ala 2006) ............................................................................ 21

*White Bag v. Int'l Paper Co.*,
   579 F.2d 1384 (4th Cir. 1974) .................................................................................... 11

**Statutes**

15 U.S.C. §15(a) .................................................................................................................. 17

15 U.S.C. §18 ....................................................................................................................... 26

35 U.S.C. § 282 .................................................................................................................... 18

35 U.S.C. §271(d)(3) ...................................................................................................... 22, 29

35 U.S.C. §272(d)(3) ........................................................................................................... 15

Clayton Act § 7 .......................................................................................................... 3, 4, 6, 26

Sherman Act §2 ............................................................................................................. passim

## I.    <u>INTRODUCTION</u>

Defendants Capital One Financial Corporation, Capital One Bank (USA), National Association and Capital One, National Association (collectively "Capital One") assert two patent misuse affirmative defenses[1] and three antitrust counterclaims that must be dismissed.   Although styled differently, each of Capital One's misuse defenses and antitrust counterclaims present the following paradox – (i) Intellectual Ventures' patents are "irrelevant, invalid, not infringed, and /or unenforceable"[2] *and* (ii) Intellectual Ventures' patents give Intellectual Ventures monopoly power in some vaguely defined "relevant antitrust market."   Clearly both cannot be true.   If Intellectual Ventures' patents are invalid or unenforceable, Intellectual Ventures cannot have a monopoly in any market and Capital One's antitrust counterclaims must be dismissed.

Putting the paradox aside and considering Capital One's defenses and counterclaims individually, it becomes clear that Capital One has failed to meet its pleading burden.   Capital One's first Patent Misuse defense – "Impermissible Collection of Royalties from Invalid Patents" – hinges on the following allegations:

1.   Intellectual Ventures owns a lot of patents, some or all of which might be invalid;

2.   Intellectual Ventures has sued[3], or threatened to sue, financial institutions for infringement of some of the above patents; and

---

[1]  Although technically Capital One's Eighth Defense pleads a single defense of patent misuse, it asserts two separately enumerated misuse theories.

[2]  Although not the subject of this motion, the Intellectual Ventures entities Capital One asserted counterclaims against only own patents that are in active litigation.   They do not own the portfolio of "3,500 Intellectual Ventures Financial Patents" and thus could not have monopoly power or any likelihood of acquiring it in any relevant market no matter how fancifully alleged.

[3]  As a petitioning activity, filing patent infringement lawsuits cannot form a basis for antitrust liability because such lawsuits enjoy *Noerr-Pennington* immunity.

     3.   Intellectual Ventures has offered financial institutions a license to some or all of those patents.

None of the allegations above, however, individually or in the aggregate, constitute patent misuse.   To the contrary, Capital One has simply described Intellectual Ventures' constitutional right to own, enforce and license its intellectual property.   Capital One fails to plead a single instance of Intellectual Ventures knowingly asserting an invalid patent or a single instance of Intellectual Ventures demanding or collecting a royalty for an invalid patent.   Consequently, Capital One's Eighth Affirmative defense for Impermissible Collection of Royalties from Invalid Patents, must be dismissed.

Similarly, Capital One's Monopolization Claims[4]  must be dismissed.   Each of Capital One's Monopolization Claims alleges that Intellectual Ventures illegally monopolized "the relevant antitrust market for technology enabling business processes common throughout the commercial banking industry in the United States" ("Alleged Banking Technology Market") by:

     1.   Acquiring "an enormous quantity" of patents;

     2.   Aggregating those patents while concealing the extent of its patent holdings;

     3.   Filing patent infringement lawsuits against Capital One and other financial institutions (asserting what Capital One baldly alleges are meritless patent claims);

     4.   Asserting vague and ambiguous patents; and

     5.   Threatening to file sometime in the unspecified future multiple patent infringement lawsuits.

---

[4]  As used herein "Monopolization Claims" will refer to "Capital One's second Patent Misuse defense (Part 2 of the Eighth Affirmative Defense) for "Unlawful Monopolization," and Capital One's Eleventh Counterclaim, "Monopolization Under Section 2 of the Sherman Act," and Twelfth Counterclaim, "Attempted Monopolization Under Section 2 of the Sherman Act, which all mirror each other.

Again, none of the activity described above, alone or in the aggregate, constitutes illegal monopolization.   Capital One has failed to identify a plausible relevant market with any specificity.   For Intellectual Ventures' set of patents to be in a relevant market, the patents must be substitutes for one another.   For Intellectual Ventures to have a monopoly in the Alleged Banking Technology Market, Intellectual Ventures must possess substantial market power.   But regarding the relevant economic market, nowhere, for example, does Capital One explain how a patent that covers ATM envelope free deposit technology can be a substitute for a patent that reads on data security.   Nor does Capital One anywhere identify Intellectual Ventures' share of the purported relevant market nor does it explain how Intellectual Ventures gains substantial market power form a set of purportedly meritless patents.   If in fact, Intellectual Ventures has substantial market power, it must be because it has valid and enforceable patents.   If so, the activities by which Intellectual Ventures allegedly monopolizes the vaguely defined relevant market are nothing more than Intellectual Ventures' exercise of its constitutional right to own and enforce its intellectual property rights.   Consequently, Capital One's Monopolization Claims must be dismissed.

Finally, Capital One's Thirteenth Counterclaim for "Unlawful Asset Acquisition in Violation of Section 7 of the Clayton Act fails to state a claim.   Capital One asserts that Intellectual Ventures' mere acquisition of the 3,500 Intellectual Ventures Financial Patents violates Clayton Act § 7.   But Capital One cannot plausibly plead, and no case has held, that the mere acquisition of patents could possibly violate the antitrust laws, much less that any antitrust injury arises from the mere acquisition of patents. Moreover, Capital One's Clayton Act § 7 claim suffers from the same fatal flaw as its monopolization claim – the failure to identify a plausible relevant market or to plausibly allege Intellectual Ventures' share of a properly defined relevant market.   Moreover, because the legality of each acquisition is measured at the time the patents were acquired,

the Court would be required to evaluate each acquisition to determine whether *that acquisition* resulted in Intellectual Ventures owning enough financial patents to substantially lessen competition, keeping in mind that the statute of limitations as to each acquisition runs four years after the patents were acquired.

### A.    Factual Allegations

Capital One alleges three antitrust counterclaims, and a two-part patent misuse defense encompassing much of its antitrust counterclaims.   Counterclaim 11 alleges monopolization in violation of Sherman Act §2, Counterclaim 12 alleges attempted monopolization also in violation of Sherman Act §2, and Counterclaim 13 alleges unlawful acquisition of assets (patents) in violation of Clayton Act § 7.   Capital One's eighth affirmative defense alleges that the same acts that allegedly constitute monopolization also constitute patent misuse.

### 1.    Counterclaim 11: Monopolization

Counterclaim 11 purports to allege a claim for monopolization of the "relevant antitrust market for technology enabling business processes common throughout the commercial banking industry in the United States, where the relevant geographic market is nationwide" ["Alleged Banking Technology Market"].   (D.I. 62 at p.25; Capital One Counterclaim 11 at ¶ 55.)   Capital One alleges that "Intellectual Ventures holds monopoly power in [the Alleged Banking Technology Market] because "Intellectual Ventures has amassed an enormous portfolio of 3,500 or more patents that it alleges cover widely used financial and retail banking services ["Intellectual Ventures Financial Patents"].   Intellectual Ventures represents that it has accumulated at least 1,000 patents purportedly reading directly on retail commercial banking activities in the areas of ATMs, credit card and debit transaction processing, and online and mobile banking services ["Intellectual Ventures Retail Banking Patents"]".   (*Id.*)   Capital One alleges

that '[b]y deliberately targeting providers of financial services and products in the U.S. for a campaign of royalty extortion based on its patent portfolio of extraordinary size, and by instituting and threatening to prosecute this and future bad-faith, strategic litigation, against Capital One and other commercial banking entities in the United States, Intellectual Ventures is using its monopoly power to eliminate competition for the provision of such inputs, thus imposing an enormous licensing 'tax' upon the entire banking industry."  (*Id.* at ¶ 56.)   Capital One alleges five acts of monopolization by IV:

    1.      Acquiring an enormous quantity of patents "that purport to cover ordinary course financial services industry processes" (Id. at p.26, ¶57(a));

    2.      Attempting to force licenses to its patents by preventing banks from evaluating allegations of portfolio infringement by "deliberate concealment of the extent of its patent holdings and its threats of continued litigation"   (Id. at ¶57(b));

    3.      "Initiating sham litigation in bad faith, regardless of the relevance, validity or enforceability of its patents or the likelihood of success on the merits at trial, with the intent of using the federal court process, as opposed to the outcome of that process, as an anticompetitive weapon to increase its pricing power in the relevant market." (Id. at pp. 26, ¶57(c));

    4.      "Asserting vague and ambiguous patents coupled with licensing demands that increase Intellectual Ventures' power to impose royalty rates that vastly exceed the real economic value, if any, of that patent portfolio" (Id. at p. 27, ¶57(d)); and

    5.      "Asserting its financial service patents in serial litigation," meaning apparently that Intellectual Ventures implicitly threatened to assert additional patents against Capital One and other banks in other litigations.   (Id. at ¶57(e)).

    Capital One concludes that "[t]he only competitive effects of Intellectual Ventures' financial services patent monopoly and its abuse are to raise the costs of

commercial banking operations to include the 'holdup' value of the immense license fees Intellectual Ventures seeks to impose and, accordingly, to increase prices for and decrease services available to retain commercial banking customers of Capital One and the other target firms."   (*Id*. at ¶ 59.)

### 2.      Counterclaim 12: Attempted Monopolization

Counterclaim 12 for attempted monopolization parallels Counterclaim 11 for monopolization, alleging that "Intellectual Ventures has engaged in the anticompetitive and exclusionary practices previously alleged with the specific purpose and intent of obtaining monopoly power in [the Alleged Banking Technology Market and] has either already acquired or presents a dangerous probability of achieving monopoly power in the relevant market."   (D.I. 62, Counterclaim 12 at p. 29, ¶¶ 65-66.)

### 3.      Counterclaim 13: Unlawful Acquisition of Patents In Alleged Violation of Clayton § 7.

Counterclaim 13 alleges that Intellectual Ventures' acquisitions of the Intellectual Ventures Financial Patents "are likely to lessen substantially, and indeed already have lessened substantially, competition in the [Alleged Financial Technology Market and] in addition are likely to create, and indeed already have created, a monopoly in the relevant market" (D.I. 62, counterclaim 13 at p.31, ¶73) in violation of Section 7 of the Clayton Act, 15 U.S.C. §18. (Id. at ¶74.)

### 4.      Affirmative defense 8:   Patent Misuse

Capital One's eighth affirmative defense alleges two sets of conduct that allegedly constitute patent misuse.   The set of conduct allegedly constituting misuse numbered (1) appears to assert that Intellectual Ventures committed patent misuse of its whole portfolio of 3500 Intellectual Ventures Financial Patents, only five of which are asserted against Capital One, by acquiring the portfolio and implicitly threatening to sue on those patents while it knew or should have known that "many if not most" of the

patents are invalid, not infringed, and/or unenforceable.   (D.I. 62, Affirmative Defense 8, p. 12-13.)   The set of conduct allegedly constituting misuse numbered (2) appears to be substantively identical to Capital One's Counterclaim 11 for monopolization.   (*Id.* at p. 25-29.)

## II.   <u>ARGUMENT</u>

### A.   Capital One's Antitrust Counterclaims and Patent Misuse Defenses Must Be Dismissed Because They Do Not State "Plausible" Claims for Relief.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S 662, 678 (2009), *quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 554, 570 (2006).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Iqbal*, 550 U.S. at 678.   "[O]nly a complaint that states a *plausible claim* for relief survives a motion to dismiss.   Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the review court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (emphasis supplied; citations omitted).

Pleading facts that are as consistent with conduct that does not violate the antitrust laws as with conduct that does will not survive a motion to dismiss, despite the conclusory allegation that they violate the antitrust laws.   *Twombly*, 550 U.S. at 557. "An allegation of parallel conduct is thus much like a naked assertion of conspiracy in a § 1 complaint:   it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of 'entitle[ment] to relief.'"   *Id.* (citations omitted).

Even if a plaintiff's complaint is "well-pleaded," conclusory allegations like Twombly's that the defendants "ha[d] entered into a contract, combination or conspiracy to prevent competitive entry … and ha[d] agreed not to compete with one another" are not entitled to be taken as true.   *Ashcroft*, 556 U.S.at 679-80, quoting *Twombly*, 550 U.S. at 555.   A court must look to the "nonconclusory factual allegations" to determine whether they give rise to a plausible claim for relief.   *Ashcroft*, 556 U.S. at 680, *quoting Twombly*, 550 U.S. at 565-66.   When "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," the complaint must be dismissed. *Id.* at 558.

### B.   Counterclaim 11 Does Not and Cannot Plausibly State a Claim for Monopolization in Violation of Sherman Act §2.

#### 1.   Capital One Alleges No Plausible Relevant Market.

Intellectual Ventures cannot have committed monopolization (or attempted monopolization) unless (i) Intellectual Ventures has a monopoly (or is likely to acquire a monopoly) in a relevant market and (2) engaged in anticompetitive conduct to acquire or maintain that monopoly.   *United States v. Grinnel Corp.*, 384 U.S. 563, 570-71 (1966). "As a threshold issue in any monopolization claim, the court must identify the relevant market.   'The relevant market is the field in which meaningful competition is said to exist.'   Market definition can be broadly characterized in terms of the 'cross-elasticity of demand' for or 'reasonable interchangeability' of a given set of products or services." *IGT v. Alliance Gaming Corp.*, 702 F.3d 1338, 1344 (Fed. Cir. 2012) (citations omitted). Defining a relevant market requires "evidence of market share, barriers to entry, or any other commonly accepted evidence showing monopoly power."   *Golan v. Pingel Enterprise, Inc.*, 310 F.3d 1360, 1369 (Fed. Cir. 2002) (citation omitted).

Capital One asserts that Intellectual Ventures is a monopolist in the Alleged Banking Technology Market, apparently a "technology market" as that term is defined in the *Antitrust Guidelines for the Licensing of Intellectual Property* issued by the U.S. Department of Justice and the FTC on Aril 6, 1995 (the "*IP Guidelines*").[5]   A technology market is "the intellectual property that is licensed (the "licensed technology") *and its close substitutes* – that is, the technologies or goods that are close enough substitutes significantly to constrain the exercise of market power with respect to the intellectual property that is licensed."   *IP Guidelines* at §3.2.2 (emphasis supplied).

But for even two patents (Patent A and Patent B) to be in the same relevant market as each other, they must be close enough substitutes for one another that "a small but significant and non-transitory price increase" in the license fee for Patent A would result in enough potential licensees switching from licensing Patent A to licensing Patent B to make the increase in the license fee for Patent A unprofitable.   *IP Guidelines* at §3.2.2; *see* 1992 Department of Justice and FTC *Horizontal Merger Guidelines* ("*Merger Guidelines*") at § 1.11; *IP & Antitrust* at 4-81.   Capital One does not even identify two patents that meet the requirements for being in the same relevant market, much less allege that all 3,500 Intellectual Ventures Financial Patents meet the requirement of substitutability necessary for inclusion of all of them in the same relevant market.   And Capital One does not, because it cannot, allege that the license fee for each of the 3,500 Intellectual Ventures Financial Patents constrains the license fee for

---

[5]  Because there is a paucity of case law on technology markets, Intellectual Ventures will principally rely on the *IP Guidelines* and H. Hovenkamp, M. Janis, M. Lemley and C. Leslie, *IP and Antitrust* (Aspen Publishers 2010) ("*IP & Antitrust*").

every other one of the 3,500 Intellectual Ventures Financial Patents.    But without such allegations, the 3,500 Intellectual Ventures Financial Patents cannot all be in the same relevant market.    Capital One must, but cannot, allege that Capital One and other banks would consider every one of the 3,500 Intellectual Ventures Financial Patents to be substitutes for each of the others, such that an increase in the license fee of all but one of the 3,500 Intellectual Ventures Financial Patents would cause Capital One and the other banks to license the one patent for which there had been no increase, if only the 3,500 Financial Patents were each owned by a different entity.

Capital One itself identifies 1,000 Intellectual Ventures Retail Banking Patents, which read on "ATM's, credit and debit transaction processing, and online and mobile banking services."    But ATM patents are not substitutes for each other, much less substitutes for patents which read on credit and debit transaction processing, patents which read on online or mobile banking services, or any of the other 2,500 Intellectual Ventures Financial Patents, demonstrating that the 3,500 Intellectual Ventures Financial Patents cannot be in the same relevant antitrust market.

The failure by Capital One to identify a plausible relevant market in which Intellectual Ventures has or is likely to obtain market power is fatal to its antitrust claims. *IGT,* 702 F.3d at 1344.    Capital One's Counterclaim 11 for monopolization must be dismissed with prejudice.

**2.    Capital One Does Not Plausibly Allege that Intellectual Ventures Has Monopoly Power in any Properly Defined Relevant Market.**

In the Fourth Circuit, a complaint that fails to allege the market share of a

Sherman Act §2 defendant must be dismissed under Rule 12(b)(6).[6]   *Dickson v.*

*Microsoft Corp.*, 309 F.3d 193, 212-213 (4th Cir. 2002).   Because Capital One

nowhere alleges Intellectual Ventures' purported market share, its antitrust

counterclaims must be dismissed.

Capital One's failure to allege market share is not fixable by amendment, since

Capital One could not plausibly allege the market share necessary for monopolization.

"A share of seventy percent or greater is often required in monopolization cases whereas

a share of fifty percent or greater is often required in attempted monopolization cases."

*SSS Enterprises, Inc. Nova Petroleum Suppliers, Inc.*, 2012 WL 3866490 at *2 (E.D. VA

Alex. Div. August 30, 2102), *citing White Bag v. Int'l Paper Co.*, 579 F.2d 1384, 1387

(4th Cir. 1974); *M&M Medical Supplies & Services, Inc. v. Pleasant Valley Hospital,*

*Inc.*, 981 F.2d 160, 168 (4th Cir. 1992).   But Capital One affirmatively alleges that it

has no way of knowing which patents Intellectual Ventures owns "because of

Intellectual Ventures' deliberate concealment of the extent of its patent holdings," (D.I.

62, Counterclaim 11, p. 26 ¶ 57(b).   Since Capital One has disavowed the ability to

plead Intellectual Ventures' share of the relevant market, it should not be permitted to

allege in an amended counterclaim facts which it affirmatively alleges it has no way of

knowing.

---

[6]  Patents are no longer presumed to confer market power under the antitrust laws.
*Illinois Tool Works v. Independent Ink, Inc.*, 547 U.S. 28, 42-43 (2006).   They are also
not presumed to confer market power for patent misuse purposes either.   35 U.S.C.
§272(d)(3).

None of the 3,500 Intellectual Ventures Financial Patents are presumed to confer market power, *see* footnote 6*, supra*, and Capital One does not allege that even a single Intellectual Ventures Financial Patent confers market power.   It could hardly do so, since it affirmatively alleges that all 3,500 Intellectual Ventures Financial Patents are "irrelevant, invalid, not infringed, and /or unenforceable."   (D.I. 62, Eighth Affirmative Defense for Patent Misuse, p. 13).   An invalid patent carries no exclusion right, and "even a valid patent confers no right to exclude products or processes that do not actually infringe."   *F.T.C. v. Actavis, Inc.*, 133 S.Ct. 2223, 2231, 186 L.Ed.2d 343 (2013).

To plausibly allege that Intellectual Ventures has monopoly power, Capital One would have to allege specific Capital One products or services that Intellectual Ventures asserts or at least plausibly could assert are infringed by a specific Intellectual Ventures patent or group of patents ("Intellectual Ventures Patent Group 1").   Second, Capital One would have to allege that there is an alternative way for Capital One to provide the identified specific product or service which plausibly would infringe another Intellectual Ventures patent or group of patents ("Intellectual Ventures Patent Group 2"), but which would not plausibly infringe Intellectual Ventures Patent Group 1.[7]   Third, Capital One would have to allege that Capital One cannot provide the identified specific product or service without infringing some patent, because otherwise Capital One could simply

---

[7]  If there is no way for Capital One to provide a specific product or service which plausibly infringes IV Patent Group 1 without plausibly infringing IV Patent Group 2, there would be no anticompetitive effect from their joint ownership.   *See* Section __, *infr*a.

chose the non-infringing alternative.   *See IP & Antitrust* at 4-78.   Capital One did not,

however, and cannot, meet this pleading obligation.

### 3.   None of the Conduct Alleged by Capital One Is an Unlawful Act of Monopolization.

Even if Capital One plausibly could allege a relevant antitrust market and

Intellectual Ventures' possession of monopoly power in it, the five anticompetitive acts

alleged by Capital One, individually and collectively, do not state a plausible claim for

monopolization.

### a)   Acquiring an "enormous quantity" of patents.

Capital One alleges that Intellectual Ventures is monopolizing the Banking

Technology Market by "acquiring by purchase and exclusive license an enormous

quantity of issued patents ostensibly related to financial and banking services, that

purport to cover ordinary course financial services industry processes," (Counterclaim at

¶57(a).   But no case has ever found it unlawful to acquire an enormous quantity of

patents, and neither of the federal agencies[8]  has ever asserted such to be an antitrust

violation.    *See* Section Intellectual Ventures (Counterclaim 13 for violation of Clayton

§ 7, *infra*.   Presumably if the acquisition of an "enormous quantity" of patents were

illegal, then the antitrust agencies would have challenged Intellectual Ventures'

acquisition of Kodak's portfolio of more than 1,000 digital patents or Apple and

Microsoft's acquisition of more than 6,000 Nortel patents.    Indeed, since a consortium

of direct competitors acquired the Nortel patents, that acquisition presumably would

have raised antitrust issues if ever an acquisition of an "enormous quantity" of patents

---

[8]  The Antitrust Division of the Department of Justice and the Bureau of Competition of the Federal Trade Commission share responsibility for enforcing the federal antitrust laws.   They have on occasion promulgated joint statements of their enforcement policy, including horizontal merger guidelines and guidelines for the licensing of intellectual property.

could.    Thus, the alleged acquisition of an enormous number of issued Intellectual Ventures Financial Patents is not an act of monopolization.

### b)    Deliberate concealment of Intellectual Ventures' patent portfolio to force a license.

Capital One alleges that Intellectual Ventures is attempting to force Capital One and other banks to license its patents by preventing banks from evaluating allegations of portfolio infringement and possible non-infringing alternatives by "deliberate concealment of the extent of its patent holdings and its threats of continued litigation." (D.I. 62, Counterclaim 11 at p. 26, ¶57(b).)    But Intellectual Ventures has no obligation to allow Capital One to evaluate "allegations of portfolio infringement" or to tell Capital One what patents it owns.    Capital One does not allege that Intellectual Ventures has asserted that Capital One infringes all of the Intellectual Ventures Financial Patents or even any particular one of them other than the five in suit.    And despite the bluster, there is no allegation that Intellectual Ventures has in fact asserted that Capital One has committed "portfolio infringement," whatever that means.    Offering a license to 3,500 Intellectual Ventures Financial Patents is not the same thing as asserting "portfolio infringement" of those patents.

Capital One does not allege that it is only being offered a "package" license to the entire 3,500 portfolio of Intellectual Ventures Financial Patents, or that Intellectual Ventures refuses to license just the Patents-in-Suit or the patents individually.    But even a refusal to license except on a portfolio basis would not plausibly allege monopolization.

In *U.S. Philips Corp v. ITC*, 424 F.3d 1179 (Fed. Cir 2005), the Federal Circuit held that a non-exclusive package license is not anticompetitive.    The issue arose in the patent misuse context, but the Court relied on antitrust principles in its analysis. Philips only made its patents available as part of a package.    Philips charged the same

14

per-disc royalty regardless of how many patents were used by the licensee. *Id.* at 1188-1189.   Philips appealed from a decision by the ITC that its blanket licensing was an illegal tying arrangement and therefore patent misuse.

The Federal Circuit agreed with the ITC that Philips' patents were essential and thus in fact gave Philips market power even though they were not presumed to do so under 35 U.S.C. §272(d)(3).   *Id.* at 1186.   But because a package of non-exclusive patent licenses is only a covenant not to sue on the patents in the package, it does not compel the package licensee to ***use*** the tied, non-essential licensed patents as opposed to using patents competing with the non-essential patents.   *Id.* at 1190.

As an economic matter, "the value of any patent package is largely, if not entirely, based on the patents that are essential to the technology in question."   *Id.* at 1191.   Thus, "[i]t is entirely rational for a patentee who has a patent this is essential to particular technology, as well as other patents that are not essential, to charge what the market will bear for the essential patent and to offer the others for free," which "plainly would not be unlawful."   *Id.* at 1190-1191.   For this reason, a package license cannot be used to obtain power in the market for the non-essential patents, and the "package licensing cannot fairly be characterized as exploitation of power in one market to obtain a competitive advantage in another."   *Id.* at 1192.   Thus, even if Intellectual Ventures would only license its patents on a portfolio basis, that would be an act of neither monopolization nor patent misuse.

The Federal Circuit distinguished *United States v. Paramount Pictures, Inc.*, 334 U.S. 131 (1962), which held that Paramount's "block booking" of desirable and undesirable movies was an unlawful tying arrangement.   The Federal Circuit held that the *Paramount* tie-in was analogous to a "patent-to-product" tying arrangement because the movie houses actually had to exhibit the undesirable movies in order to exhibit the desirable movies.   Thus, competing distributors of undesirable movies were precluded

from the market because the exhibitors' movie theaters were already tied up with Paramount's undesirable movies.   The Philips' blanket license, on the other hand, was a "patent-to-patent" tie and not illegal per se because Philips did not require its licensees to use any of the licensed patents, desirable or undesirable. *Philips* at 1188.

### c)   Sham Litigation

Third, Capital One alleges that Intellectual Ventures has engaged in "sham litigation."   (D.I. 62, Counterclaim 11 at P 26-27, ¶57(c) .)   The legality of antitrust claims based on obtaining, enforcing or litigating a patent are decided as a matter of Federal Circuit law, not regional circuit law.   *Nobelpharma, AB. v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998) (*en banc* as to this issue alone, *see* fn. 5). "An intellectual property owner is presumptively entitled to immunity from antitrust liability based on its filing of an infringement lawsuit."   *IP & Antitrust* at 11-22.   That is because the First Amendment immunizes antitrust defendants from liability for petitioning the government.   *See Eastern R.R.s President's Conf. v. Noerr Motor Freight*, 365 U.S. 127, 144 (1961); *United Mine Workers v. Pennington*, 281 U.S. 657,665 (1965).   Filing a lawsuit is petitioning activity protected by *Noerr-Pennington* immunity.   *Professional Real Estate Investors v. Columbia Pictures*, 508 U.S. 49 (1993) ("*PREI*").

The only exception to *Noerr-Pennington* immunity is if the litigation is a "sham." *See Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 493 (1988).   To adequately allege facts sufficient to establish the sham exception to *Noerr-Pennington* immunity for assertion of patent infringement, Capital One must allege facts from which a jury could find clear and convincing evidence that Intellectual Ventures had no reasonable basis to believe that Capital One infringed its patents and that the patents are not invalid.   *See Golan v. Pingel Enterprise, Inc.*, 310 F.3d 1360, 1371(Fed. Cir. 2002). While Capital One dutifully pled that Intellectual Ventures is engaging in sham litigation,

those conclusory allegations should be ignored because a court must look only to the "nonconclusory factual allegations" to determine whether they give rise to a plausible claim for relief.   *Ashcroft*, 556 U.S. at 680, quoting *Twombly*, 550 U.S. at 565-66.

### 4.    Capital One does not plausibly allege facts giving standing to assert, or antitrust injury from, Intellectual Ventures' litigation against other banks.

Capital One does not have standing to assert that other banks have been the victims of sham litigation by Intellectual Ventures because Capital One has not suffered antitrust or any other injury as a result of suits against other banks because a competitor does not suffer antitrust conduct from illegal conduct that raises competitors' costs. *Grand River Enterprises Six Nations Ltd. v. King*, 781 F.Supp.2d 516, 530-31 (S.D.N.Y. 2011) (Canadian cigarette manufacturer and importer lacked standing and suffered no antitrust injury from tobacco Master Settlement Agreement to which they were not signatories and which raised rival's prices); *See Atlantic Richfield Co. v. USA Petroleum Co.*, 459 U.S. 328 (1990); *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) (antitrust plaintiff must suffer "antitrust injury").

Even if Capital One could have suffered antitrust injury from Intellectual Ventures' alleged sham litigation against rival banks, Capital One is only entitled to "recover threefold the damages by [it] sustained" as a result of Intellectual Ventures' purported sham litigations against other banks.   15 U.S.C. §15(a).   Capital One sustained no damages from any sham litigation against other banks since presumably the other banks are defending themselves rather than being defended by Capital One, and presumably the other banks are not indemnified against any judgment by Capital One. Thus, Capital One cannot assert sham litigations *against other banks* as a basis for monopolization, since it lacks standing, suffered no antitrust injury and sustained no damages as a result of any sham litigation against any other bank.

### a)   Intellectual Ventures' Conduct Is Not "Sham Litigation" as a Matter of Law.

Only if a lawsuit meets two distinct tests can it be deemed a "sham" and be stripped of *Noerr-Pennington* immunity.   First, it "must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits."   *PRE,* 404 U.S. at 60.   Second, even an objectively baseless lawsuit is not a sham unless it is "an attempt to interfere ***directly*** with the business relationships ***of a competitor*** through the use of governmental process – ***as opposed to the outcome of that process*** - as an anticompetitive weapon."   Id. at 60-61 (emphasis in original).   This second test is sometimes referred to as the "subjective baseless" test.   As will be shown, Capital One does not and cannot plausibly allege facts that would pass either of the two tests.

### b)   Intellectual Ventures' Lawsuits Are Not Objectively Baseless.

"We regard as sham private action that is not genuinely aimed at procuring favorable government action," as opposed to "a valid effort to influence government action." *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 500 n.4 (1988). Capital One cannot show that any of Intellectual Ventures' patents are objectively baseless in that any reasonable patentee would believe they were invalid, unenforceable or not infringed.

Other than conclusory factual allegations which are to be disregarded, *Ashcroft*, 556 U.S. at 680, quoting *Twombly*, 550 U.S. at 565-66, Capital One does not even attempt to show clear and convincing evidence that all five of the patents-in-suit, much less all 3500 of the patents identified by Capital One, are invalid or unenforceable. And Intellectual Ventures is entitled to rely on the presumption of validity set forth in the Patent Act, 35 U.S.C. § 282.   "The presumption of validity attaches to all issued patents and the clear and convincing evidence burden applies to all issued patents…. The presumption of validity found in §282 is reflected in the standard of proof required

to prove invalidity, clear and convincing evidence."   *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012)(citations omitted).   The fact that Capital One lost its motion to dismiss Intellectual Ventures' complaint is itself evidence that this lawsuit is not "objectively baseless."   And other than conclusory allegations that are to be disregarded, Capital One does not even attempt to show that all five of the patents-in-suit, much less all 3500 of the patents identified by Capital One, are not infringed.

Indeed, Capital One admits it could not show that Intellectual Ventures' patents are invalid or not infringed, because it affirmatively alleges that it does not even know what patents Intellectual Ventures owns other than the eleven patents that have been asserted against banks (Capital One cannot evaluate Intellectual Ventures' infringement allegations "because of Intellectual Ventures' deliberate concealment of the extent of its patent holdings….") and does not know whether it infringes those patents (Intellectual Ventures "prevents Capital One and other commercial banks from evaluating the allegations of portfolio infringement").   (D.I. 62, Counterclaim 11 at p. 26, ¶ 57b.) Thus, Capital One fails to make a plausible claim that any, let alone all, of Intellectual Ventures' infringement actions are objectively baseless, and Intellectual Ventures is entitled to *Noerr-Pennington* immunity from Capital One's antitrust claims.

### c)   Intellectual Ventures' Lawsuit Is Not Subjectively Baseless.

Capital One cannot meet the subjective baselessness test either, because it does and cannot allege that it is a competitor of Intellectual Ventures.   "In the event the challenged litigation is found to be objectively baseless, the lawsuit must further conceal an attempt to interfere directly with the business relationships *of **a competitor***." *Baltimore Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 399 (4th Cir. 2004) quoting *PREI* at 60-61 (emphasis supplied); *Glass Equip. Dev. Corp. v. Bestin, Inc.* 174 F.3d 1337, 1343 (Fed. Cir. 1999)(*quoting Eastern R.R. Presidents Conference v. Noerr Motor*

*Freight, Inc.*, 365 U.S. 127, 144 (1961).   Because Capital One is not a competitor of

Intellectual Ventures, Capital One cannot meet the subjective test for the sham litigation

exception to *Noerr-Pennington* immunity, and Intellectual Ventures could not have

committed sham litigation against Capital One, or any other bank, for that matter.

Thus, sham litigation cannot be an act of monopolization.

But even if Capital One could somehow overcome the fact that the sham

exception only applies to lawsuits against competitors, the subjective test still could not

be met:

> "The "sham" exception to *Noerr* encompasses situations in which persons use
> the governmental *process*—as opposed to the *outcome* of that process—as an
> anticompetitive weapon.   A classic example is the filing of frivolous objections
> to the license application of a competitor, with no expectation of achieving
> denial of the license but simply in order to impose expense and delay. See
> *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct.
> 609, 30 L.Ed.2d 642 (1972).   A "sham" situation involves a defendant whose
> activities are "not genuinely aimed at procuring favorable government action" at
> all, *Allied Tube & Conduit Corp. v. Indian Head, Inc.,* 486 U.S. 592, 500 n.4,
> 108 S.Ct. 1931, 1937 n.4, 100 L.Ed.2d 497 (1988), not one "who 'genuinely
> seeks to achieve his governmental result, but does so *through improper means,*' "
> *id.*, at 508, n.10, 108 S.Ct. At 1941, n.10 (quoting *Sessions Tank Liners, Inc. v.
> Joor Mfg., Inc.*, 827 F.2d 458, 465, n.5 (CA9 1987).

*City of Columbia v. Omni Outdoor Advertising Inc.*, 499 U.S. 365, 380 (1999).

Capital One does make the conclusory allegation that Intellectual Ventures

initiated the litigation with the intent of using the federal court process, as opposed to the

outcome of that process, as an anticompetitive weapon to increase its pricing power in

the relevant market (D.I. 62, Counterclaim 11 at p. 26 ¶ 57(c)) but nowhere explains

how that is possible, much less plausible.   And it is flatly contradicted by Capital One's

allegation that Intellectual Ventures brought the lawsuit to obtain (or as pejoratively

characterized by Capital One, to "coerce") a settlement.   A lawsuit brought to obtain or

"coerce" a settlement is not a sham as a matter of law. As the *City of Columbia* court

said:

> Neither of the Court of Appeals' theories for application of the "sham"
> exception to the facts of the present case is sound. The court reasoned, first, that
> the jury could have concluded that COA's interaction with city officials was
> " 'actually nothing more than an attempt to interfere directly with the business
> relations *[sic]* of a competitor.' " 891 F.d2d, at 1139 (quoting Noerr, supra, 365
> U.S., at 144, 81 S.Ct. at 533). This analysis relies upon language from *Noerr,*
> but ignores the import of the critical word "directly." Although COA
> indisputably set out to disrupt Omni's business relationships, it sought to do so
> not through the very process of lobbying, or of causing the city council to
> consider zoning measures, but rather through the ultimate *product* of that
> lobbying and consideration, viz., the zoning ordinances. The Court of Appeals'
> second theory was that the jury could have found "that COA's purposes were to
> delay Omni's entry into the market and even to deny it a meaningful access to
> the appropriate city administrative and legislative fora."   891 F.2d, at 1139.
> But the purpose of delaying a competitor's entry into the market does not render
> lobbying activity a "sham," unless (as no evidence suggested was true here) the
> delay is sought to be achieved only by the lobbying process itself, and not by
> the governmental action that the lobbying seeks.    "If *Noerr* teaches anything it
> is that an intent to restrain trade as a *result* of the government action sought ...
> does not foreclose protection."    Sullivan, Developments in the Noerr Doctrine,
> 56 Antitrust L.J. 361, 262 (1987).

*City of Columbia*, 499 U.S. at 381.

As in *City of Columbia*, Capital One parrots the language from *Noerr* that using

litigation to directly interfere with the business of a competitor satisfies the second test,

but ignores the word "directly."   The only way that Capital One even claims that

Intellectual Ventures is seeking to "use the [litigation] process" is to "obtain the

outcome of that process," settlement, which cannot satisfy the second test for the sham

exception to *Noerr-Pennington* immunity.    And all of the alleged infringement claims

in each lawsuit, including the hypothetical ones not yet filed, would have to be

objectively and subjectively baseless, that is "a sham," in order for that lawsuit to lose

*Noerr-Pennington* immunity.   *VAE Nortrak North America, Inc. v. Progress Rail*

*Services Corp*., 459 F.Supp.2d 1142, (N.D.Ala 2006).    It is impossible, not just

21

implausible, for Intellectual Ventures to *directly* interfere with Capital One's business through the filing of a plethora of patent litigation lawsuits, even if Capital One were a competitor of Intellectual Ventures which Capital One plainly is not

Even were Capital One to somehow overcome Intellectual Ventures' *Noerr-Pennington* immunity, it "must still prove a substantive antitrust violation.   Proof of a sham merely deprives the defendant of immunity' it does not relieve the plaintiff of the obligation to establish all other elements of his claim."   *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1072 (Fed. Cir. 1998).   Here Capital One cannot plausibly establish any element, much less all of the elements, of its antitrust claims and they must be dismissed with prejudice.

### 5.   "Asserting vague and ambiguous patents" and demanding "excessive royalty rates."

Capital One alleges that Intellectual Ventures is monopolizing by "[a]sserting vague and ambiguous patents coupled with licensing demands for royalty rates that vastly exceed "the real economic value, if any, of that patent portfolio."   (D.I. 62, Counterclaim 11 at p. 27 ¶57(d)).   But asserting patents, "vague and ambiguous" or otherwise, cannot be an act of monopolization because the Patent Act states specifically that no patent owner "shall be deemed guilty of misuse or illegal extension of the patent right by reason of his having done one or more of the following:…sought to enforce his patent rights against infringement or contributory infringement."   35 U.S.C. §271(d)(3).

To be a monopolistic act, the assertion of "vague and ambiguous patents" would have to meet the requirements for the sham litigation exception to *Noerr-Pennington* immunity.   *Globetrotter Software v. Elan Computer Group*, 362 F.3d 1367, 1376-77 (Fed. Cir. 2004)("the objectively baseless standard of *Professional Real Estate* applies to state-law claims based on communications alleging patent infringement").   But by definition, Capital One could not establish the objective test for the sham exception

since Capital One cannot possibly show by clear and convincing evidence that every reasonable patentee would believe a "vague and ambiguous patent" was invalid, unenforceable or not infringed.   Asserting "vague and ambiguous patents" cannot be an act of monopolization.

And demanding "excessive" royalty rates cannot violate the antitrust laws either. *SOSA v. DirecTV, Inc.,* 437 F.3d 923, 936 (9th Cir 2006) ("the established sham exception to the *Noerr-Pennington* doctrine provides adequate protection against baseless claims asserted in pre litigation settlement letters").   Since there is no obligation to license a patent "even though his refusal to sell or license may have an anticompetitive effect," *In re Independent Service Organizations Antitrust Litigation*, 203 F.3 1322, 1328-29 (Fed. Cir. 2000), it cannot be anticompetitive to refuse to license except at "excessive" royalty rates.   There is no anticompetitive conduct alleged here.

### 6.     Serial litigation.

Capital One alleges that Intellectual Ventures is asserting its Financial Patents "in serial litigation."   (D.I. 62, Counterclaim 11 at p. 27 ¶57(e).   But Capital One has been sued once by Intellectual Ventures, not "serially."   And "serial litigations" are protected from antitrust liability by the *Noerr-Pennington* doctrine unless they are "sham litigations."   *Glass Equip. Dev. Corp. v. Bestin, Inc.* 174 F.3d 1337, 1344 (Fed. Cir. 1999).   Capital One has not alleged that the hypothetical "serial" lawsuits alleging infringement of unidentified patents by unidentified Capital One products or services are all shams, nor could it plausibly do so.

When the conclusory allegations are separated from the sparse factual ones, Capital One appears to be complaining that it is more economic for it to take a "portfolio license" to Intellectual Ventures' 3,500 Financial Patents than to evaluate whether all 3,500 are valid and infringed.   Even if true, making a license more attractive than the alternative cannot be anticompetitive.   In the first place, Intellectual Ventures has only

asserted five patents against Capital One, and one can presume that it will never assert all 3,500.    Second, the transaction cost of evaluating 3,500 Intellectual Ventures Financial Patents does not reflect monopoly power.    Capital One does not explain how it would cost less for it to evaluate Intellectual Ventures' 3,500 Banking Patents if each was owned by an unrelated company.    Third, Capital One does not allege that Intellectual Ventures refuses to license only the Patents-in-Suit (because Intellectual Ventures has offered to license only the Patents-in-Suit) nor does Capital One allege that Intellectual Ventures insists on a portfolio license (because it does not do so).    But, as discussed above, insistence by Intellectual Ventures' on licensing its entire portfolio of Banking Patents would have been legal had it happened.

Capital One apparently believes that it is an act of monopolization for Intellectual Ventures to truthfully tell Capital One that it could be sued for infringement of other patents even if it prevails in this case.    Under Capital One's apparent theory, any patent holder must assert all of its patents in a single suit against Capital One, apparently conveying a royalty-free covenant not to sue on all the others.    Such an assertion is particularly ironic here where Capital One initially took the position that the five Patents-in-Suit should be divided into five different lawsuits.    Had Capital One convinced the Court to separate the five Patents-in-Suit into five different lawsuits, would Capital One then have claimed that suing it in five different lawsuits was an act of monopolization?

### 7.    Capital One Lacks Standing to Sue and Has Suffered No Antitrust Injury Because It Is Not a Competitor of Intellectual Ventures.

Prohibited monopolization or attempted monopolization "*must be directed toward competitors* and must be intended to injure competition."    *Intergraph Corp. v. Intel Corp*, 195 F.3d 1346, 1353 (Fed. Cir 1999) (emphasis supplied) (monopolization

and attempted monopolization claims dismissed because Intel and Intergraph were not competitors), *citing Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993). The allegedly unlawful "conduct must affect the relevant product market, that is, *the 'area of effective competition between the defendant and the plaintiff*.'"   *Intergraph*, 195 F.3d at 1353 (emphasis supplied; citation omitted).

Capital One does not and could not allege that it is a competitor of Intellectual Ventures.   Capital One alleges that it is a bank.   (D.I. 62, Counterclaims p. 18 ¶¶1-3.) Intellectual Ventures is neither a bank nor provides any financial services or products whatsoever.   This absence of a competitive relationship between Capital One and Intellectual Ventures alone dooms Capital One's antitrust claims, and they must be dismissed with prejudice.

**C.    Counterclaim 12 Does Not and Cannot Plausibly State a Claim for Attempted Monopolization in Violation of Sherman Act §2.**

Capital One alleges that the acts of monopolization also evidence a "specific purpose and intent of obtaining monopoly power in the [Alleged Banking Technology Market]" and Intellectual Ventures "has either already acquired or presents a dangerous probability of achieving monopoly power in the relevant market."   (D.I. 62, Counterclaim 12 at p. 29, ¶¶ 65-66.)   Accordingly, for the same reasons that Capital One cannot state a plausible claim for monopolization, it also cannot state a plausible claim for attempted monopolization. "   In addition, "[a] share of seventy percent or greater is often required in monopolization cases whereas a share of fifty percent or greater is often required in attempted monopolization cases." *SSS Enterprises, Inc. Nova Petroleum Suppliers, Inc.*, 2012 WL 3866490 at *2 (E.D. VA Alex. Div. August 30, 2102) (citations omitted)).   Thus, while perhaps an allegation of a market share somewhat lower than what is required to establish monopolization would be sufficient, Capital One fails to allege any market share as required under Fourth Circuit law,

*Dickson v. Microsoft Corp.*, 309 F.3d 193, 212-213 (4th Cir. 2002).   Therefore Capital One's Counterclaim 12 for attempted monopolization should be dismissed.

### D.   Counterclaim 13 Does Not and Cannot Plausibly State a Claim for Unlawful Acquisition of Assets in Violation of Clayton Act §7.

Counterclaim 13 alleges that Intellectual Ventures' acquisitions of the Intellectual Ventures Financial Patents "are likely to lessen substantially, and indeed already have lessened substantially, competition in the [Alleged Banking Technology Market and] in addition are likely to create, and indeed already have created, a monopoly in the relevant market"   (D.I. 62, counterclaim 13 at p.31, ¶73) in violation of Section 7 of the Clayton Act, 15 U.S.C. §18 (Id. at ¶74).

For the reasons stated in Section II(B)2, *infra*, Capital One has not alleged a plausible relevant market, and has not alleged (plausibly or otherwise) Intellectual Ventures' share of that market.   For that reason Capital One's counterclaim for unlawful acquisition must fail.

But there are more fundamental problems.   First, the legality of an acquisition of patents under Clayton Act § 7 is measured at the time of acquisition.   *SCM Corp. v. Xerox Corp.*, 645 F.2d 1195, 1211-12 (2d Cir. 1981) ("Where a corporation's acquisition of a patent is not violative of §7, as was the case here, its subsequent holding of the patent cannot later be deemed violative of this section. Where a company has acquired patents lawfully, it must be entitled to hold them free from the threat of antitrust liability for the seventeen years that the patent laws provide. To hold otherwise would unduly trespass upon the policies that underlie the patent law system.")

Capital One nowhere alleges which acquisition or acquisitions of patents by Intellectual Ventures violated Clayton Act § 7.   Since only an acquisition which was likely to "likely to lessen substantially" competition at the time of acquisition can violate Clayton Act § 7, this omission is fatal to Capital One's Clayton Act § 7 claim.   And

Capital One affirmatively pleads facts demonstrating that it could not fix this omission by amendment, since it alleges that it does not know which patents Intellectual Ventures even owns, much less when Intellectual Ventures acquired any of them (D.I. 62 at p.25; Capital One Counterclaim 11 at ¶ 57(b).   As a result, Capital One could not allege which acquisition of patents violated Clayton Act § 7 without itself violating Rule 11.

Moreover, the statute of limitations runs as to each acquisition of patents four years after those assets were purchased.   *Midwest Machinery Co., Inc. v. Northwest Airlines, Inc.*, 392 F.3d 265, 270 (8th Cir 2004) ("Once a merger is completed, there is no continuing violation possible under § 7 that would justify extending the statute of limitations beyond four years.").   So only an acquisition of patents acquired less than four years before Capital One filed its counterclaim could even be challenged.   If Intellectual Ventures already had monopoly power in the purported relevant market more than four years before Capital One filed its counterclaim, it is difficult to understand how the acquisition of additional patents could have created a monopoly that already existed.

Perhaps most importantly, it is not the acquisition of any or all of the Intellectual Ventures Financial Patents that could have injured Capital One but only their assertion. Patents do not assert themselves, even when owned by Intellectual Ventures.   That Intellectual Ventures' acquisition or ownership of the Intellectual Ventures Financial Patents did not injure Capital One is obvious from its complaint that Intellectual Ventures concealed the Intellectual Ventures Financial Patents from Capital One (D.I.62, Counterclaim 11 at p. 24 ¶ 57(b)).   If patents were concealed such that Capital One does not know about the patents or their ownership, how could they have injured Capital One?

For all of these reasons, Capital One cannot state a plausible violation of Section 7 of the Clayton Act and Counterclaim 13 must be dismissed with prejudice.

27

**E.    Capital One's Patent Misuse Affirmative Defense Should Be Dismissed With Prejudice**

Capital One's eighth affirmative defense alleges two sets of conduct that allegedly constitute patent misuse.    The set of conduct allegedly constituting misuse numbered (1) appears to assert that Intellectual Ventures committed patent misuse of a whole portfolio of 3,500 patents, only five of which are asserted against Capital One, by acquiring the portfolio and implicitly threatening to sue on those patents while it knew or should have known that "many if not most" of the patents are invalid, not infringed, and/or unenforceable.   (D.I. 62, Affirmative Defense 8, p. 12-13.)    This set of conduct cannot constitute patent misuse for the reasons set forth in Section II(D), *supra*, relating to Capital One's Counterclaim 13 for violation of Clayton Act §13.    The set of conduct allegedly constituting misuse numbered (2) appears to be substantively identical to Capital One's Counterclaim 11 for monopolization.    (*Id.* at p. 17.)    Accordingly, Capital One's patent misuse defenses should be dismissed for the same reasons that Capital One's monopolization claim should be dismissed.    *See* Section II(B), *supra*.

In addition, Capital One's patent misuse defense must be struck because it is not based on misuse of the patents at issue:    "There is no such thing as 'misuse in the air. The misuse must be of the patent in suit….'"    *Princo Corp. v. ITC*, 616 F.3d 1318, 1329 (Fed. Cir. 2010), *quoting Kolene Corp. v. Motor City Metal Treating, Inc.*, 440 F.2d 77, 84-85 (6th Cir. 1971).    "It follows that the key inquiry under the patent misuse doctrine is whether, by imposing the condition in question, the patentee has impermissibly broadened the physical or temporal scope of the patent grant and has done so in a manner that has anticompetitive effects.    Where the patentee has not leveraged its patent beyond the scope of rights granted by the Patent Act, misuse has not been found."    *Princo*, 616 F.3d at 1328 (citations omitted).    Nowhere in nearly six pages of patent misuse pleading does Capital One make a plausible allegation that

Intellectual Ventures leveraged even a single "patent beyond the scope of rights granted by the Patent Act," much less the Patents-in-Suit which are the only ones that matter.

In addition, asserting patents, "vague and ambiguous" or otherwise, cannot be patent misuse because the Patent Act states specifically that no patent owner "shall be deemed guilty of misuse or illegal extension of the patent right by reason of his having done one or more of the following:…sought to enforce his patent rights against infringement or contributory infringement."   35 U.S.C. §271(d)(3).   And the Patent Act itself expressly states that it is ***not*** patent misuse to condition a license to a patent on a license to another patent, unless at least one of the patents confers "market power in the relevant market for the patent."   35 U.S.C. § 271(d).

For the same reasons Capital One's monopolization and Clayton §7 counterclaims must be dismissed, as well as for the reasons stated above, Capital One's Eighth Affirmative Defense for patent misuse must be dismissed with prejudice.

### III.   <u>CONCLUSION</u>

Because Capital One does not and cannot allege a plausible antitrust counterclaim or a patent misuse defense, Capital One's antitrust counterclaims 11, 12 and 13, and its eighth affirmative defense for patent misuse must be dismissed with prejudice.

Dated:   October 2, 2013               Respectfully submitted,

/s/ Craig C. Reilly
Craig C. Reilly VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
Tel:    (703) 549-5354
Fax:    (703) 549-2604
E-mail: craig.reilly@ccreillylaw.com
*Counsel for Plaintiffs Intellectual Ventures
I LLC and Intellectual Ventures II LLC*

Clayton Thompson, VSB No. 41962
Ian N. Feinberg
M. Elizabeth Day
Marc C. Belloli
FEINBERG DAY ALBERTI &
THOMPSON LLP
1600 El Camino Real, Suite 280
Menlo Park, CA   94025
Telephone:   (650) 618.4360
Facsimile:     (650) 618.4368
cthompson@feinday.com
ifeinberg@feinday.com
eday@feinday.com
mbelloli@feinday.com

*Counsel for Plaintiffs Intellectual Ventures
I LLC and Intellectual Ventures II LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2013, I filed the foregoing pleading or paper

through the Court's CM/ECF system which sent a notice of electronic filing to the

following attorneys for defendants:

Robert A. Angle
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia    23219
robert.angle@troutmansanders.com


TS-CapOne_IV@troutmansanders.com

Matthew J. Moore
Abbott B. Lipsky, Jr. (*pro hac vice*)
Jonathan D. Link (VSB No. 42951)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
matthew.moore@lw.com
tad.lipsky@lw.com
Jonathan.link@lw.com

Jeffrey G. Homrig
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025-1008
jeff.homrig@lw.com

Joseph H. Lee
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
joseph.lee@lw.com

Neil A. Rubin
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
neil.rubin@lw.com

Andrew J. Fossom
LATHAM & WATKINS LLP
811 Main Street, Suite 3700
Houston, TX 77002
andrew.fossom@lw.com

CAPITALONEIV.LWTEAM@lw.com

*/s/ Craig C. Reilly*
Craig C. Reilly VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
Tel: (703) 549-5354
Fax: (703) 549-2604
E-mail: craig.reilly@ccreillylaw.com
*Counsel for Plaintiffs*