**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC,

Plaintiffs/Counter-Defendants,

v.

CAPITAL ONE FINANCIAL CORPORATION; CAPITAL ONE BANK (USA), NATIONAL ASSOCIATION; and CAPITAL ONE, NATIONAL ASSOCIATION,

Defendants/Counter-Plaintiffs,

v.

INTELLECTUAL VENTURES MANAGEMENT, LLC; INVENTION INVESTMENT FUND I, L.P.; INVENTION INVESTMENT FUND II, LLC; INTELLECTUAL VENTURES FUND 83 LLC, and JOHN DOES 1-2000,

Additional Counter-Defendants.

Civil Action No. 1:13-CV-00740-AJT-TCB

**JURY TRIAL DEMANDED**

**ANSWER TO COMPLAINT**

Defendants Capital One Financial Corporation, Capital One Bank (USA), National Association and Capital One, National Association (collectively the "Capital One Defendants" or "Capital One"), by and through their undersigned counsel, respectfully submits their Answer and Defenses to Plaintiffs Intellectual Ventures I LLC ("IV I") and Intellectual Ventures II LLC ("IV II") (collectively "Plaintiffs")'s Complaint dated June 19, 2013 ("Complaint"). To the extent these paragraphs contain factual allegations that could be

construed as referring to or relating to Capital One, the Capital One Defendants deny those allegations insofar as they refer or relate to Capital One.  To the extent not expressly admitted, all allegations in the Complaint are denied.  The Capital One Defendants allege upon information and belief as follows:

## NATURE OF THE ACTION

1.      Answering Paragraph 1, the Capital One Defendants admit that this is an action that purports to be for patent infringement arising under Title 35 of the United States Code.  The Capital One Defendants deny that they have infringed Intellectual Ventures I's alleged rights in U.S. Patent Nos. 7,664,701 ("the '701 Patent"), 7,603,382 ("the '382 Patent"), or 8,083,137 ("the '137 Patent"); or Intellectual Venture II's alleged rights in U.S. Patent Nos. 6,182,894 ("the '894 Patent") or 7,260,587 ("the '587 Patent") (collectively the "Patents-in-Suit") and further deny that Plaintiffs are entitled to any monetary damages or other relief they seek against Capital One.  The Capital One Defendants deny any remaining allegations in Paragraph 1.

## PARTIES

2.      Answering Paragraph 2, the Capital One Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein, and on that basis deny them.

3.      Answering Paragraph 3, the Capital One Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein, and on that basis deny them.

4. Answering Paragraph 4, the Capital One Defendants admit that Capital One Financial Corporation is a Delaware corporation with a place of business at 1680 Capital One Drive, McLean, Virginia 22102.

5. Answering Paragraph 5, the Capital One Defendants admit that Capital One Bank (USA), National Association is a national bank with a place of business at 1680 Capital One Drive, McLean, Virginia 22102 and that it is a subsidiary of Capital One Financial Corporation.

6. Answering Paragraph 6, the Capital One Defendants admit that Capital One, National Association is a national bank with a place of business at 1680 Capital One Drive, McLean, Virginia 22102 and that it is a subsidiary of Capital One Financial Corporation.

**JURISDICTION AND VENUE**

7. Answering Paragraph 7, the Capital One Defendants admit that if Plaintiffs were to have standing to assert the Patents-in-Suit in their own names, this Court would have subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), inasmuch as the Complaint purports to state claims for patent infringement arising under the patent laws of the United States. The Capital One Defendants deny any remaining allegations in Paragraph 7.

8. Answering Paragraph 8, the Capital One Defendants deny that they have committed any acts giving rise to this action, but admit that they are subject to personal jurisdiction in this Court. The Capital One Defendants further admit that they are headquartered and do business in Virginia. The Capital One Defendants deny any remaining allegations in Paragraph 8.

9. Answering Paragraph 9, the Capital One Defendants deny that they have committed acts of patent infringement giving rise to this action, whether within or without this

district, but admit that venue is proper in this judicial district. The Capital One Defendants deny any remaining allegations in Paragraph 9.

**STATEMENT OF FACTS**

10. Answering Paragraph 10, the Capital One Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein, and on that basis deny them.

11. Answering Paragraph 11, the Capital One Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein, and on that basis deny them.

12. Answering Paragraph 12, the Capital One Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein, and on that basis deny them.

13. Answering Paragraph 13, the Capital One Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein, and on that basis deny them.

14. Answering Paragraph 14, the Capital One Defendants admit that on its face, the ’701 Patent attached to the Complaint as Exhibit A is titled “Masking Private Billing Data By Assigning Other Billing Data To Use In Commerce With Businesses” and dated February 16, 2010, but deny that it was duly and lawfully issued by the PTO. The Capital One Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 14, and on that basis deny them.

15. Answering Paragraph 15, the Capital One Defendants admit that on its face, the ’382 Patent attached to the Complaint as Exhibit B is titled “Advanced Internet

Interface Providing User Display Access Of Customized Webpages" and dated October 13, 2009, but deny that it was duly and lawfully issued by the PTO. The Capital One Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 15, and on that basis deny them.

16.     Answering Paragraph 16, the Capital One Defendants admit that on its face, the '894 Patent attached to the Complaint as Exhibit C is titled "Systems And Methods For Authorizing A Transaction Card" and dated February 6, 2001, but deny that it was duly and lawfully issued by the PTO. The Capital One Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 16, and on that basis deny them.

17.     Answering Paragraph 17, the Capital One Defendants admit that on its face, the '137 Patent attached to the Complaint as Exhibit D is titled "Administration Of Financial Accounts" and dated December 27, 2011, but deny that it was duly and lawfully issued by the PTO. The Capital One Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 17, and on that basis deny them.

18.     Answering Paragraph 18, the Capital One Defendants admit that on its face, the '587 Patent attached to the Complaint as Exhibit E is titled "Method For Organizing Digital Images" and dated August 21, 2007, but deny that it was duly and lawfully issued by the PTO. The Capital One Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 18, and on that basis deny them.

19. Answering Paragraph 19, the Capital One Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein, and on that basis deny them.

20. Answering Paragraph 20, the Capital One Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein, and on that basis deny them.

21. The Capital One Defendants admit that one of more of them provide certain banking and financial services via the World Wide Web, but deny that such services are provided through the website https://bankofcapitalone.com. The Capital One Defendants further deny that they infringe one or more claims of the Patents-in-Suit in connection with these services. The Capital One Defendants deny any remaining allegations in Paragraph 21.

**FIRST CLAIM FOR RELIEF**
**(Infringement of U.S. Patent No. 7,664,701)[1]**

22. Answering Paragraph 22, the Capital One Defendants restate and incorporate by reference their responses to the allegations of Paragraphs 1-21 of the Complaint as if fully set forth herein.

23. The Capital One Defendants deny the allegations in Paragraph 23.

24. The Capital One Defendants deny the allegations in Paragraph 24.

25. The Capital One Defendants deny the allegations in Paragraph 25.

26. Answering Paragraph 26, the Capital One Defendants admit that IV I's counsel purportedly sent a letter, which on its face was dated June 18, 2013—only a day before the Complaint was filed—to Capital One in-house counsel alleging infringement of claim 5 of

[1] The Capital One Defendants deny the allegations embedded in this subheading.

the ’701 patent. The Capital One Defendants further admit that they have received a copy of the Complaint. The Capital One Defendants deny any remaining allegations in Paragraph 26.

27. The Capital One Defendants deny the allegations in Paragraph 27.

**SECOND CLAIM FOR RELIEF**
**(Infringement of U.S. Patent No. 7,603,382)[2]**

28. Answering Paragraph 28, the Capital One Defendants restate and incorporate by reference their responses to the allegations of Paragraphs 1-21 of the Complaint as if fully set forth herein.

29. The Capital One Defendants deny the allegations in Paragraph 29.

30. The Capital One Defendants deny the allegations in Paragraph 30.

31. The Capital One Defendants deny the allegations in Paragraph 31.

32. Answering Paragraph 32, the Capital One Defendants admit that IV I’s counsel purportedly sent a letter, which on its face was dated June 18, 2013—only a day before the Complaint was filed—to Capital One in-house counsel alleging infringement of claim 1 of the ’382 patent. The Capital One Defendants further admit that they have received a copy of the Complaint. The Capital One Defendants deny any remaining allegations in Paragraph 32.

33. The Capital One Defendants deny the allegations in Paragraph 33.

**THIRD CLAIM FOR RELIEF**
**(Infringement of U.S. Patent No. 6,182,894)[3]**

34. Answering Paragraph 34, the Capital One Defendants restate and incorporate by reference their responses to the allegations of Paragraphs 1-21 of the Complaint as if fully set forth herein.

35. The Capital One Defendants deny the allegations in Paragraph 35.

---

[2] The Capital One Defendants deny the allegations embedded in this subheading.

[3] The Capital One Defendants deny the allegations embedded in this subheading.

36. The Capital One Defendants deny the allegations in Paragraph 36.

37. The Capital One Defendants deny the allegations in Paragraph 37.

38. Answering Paragraph 38, the Capital One Defendants admit that IV II's counsel purportedly sent a letter, which on its face was dated June 18, 2013—only a day before the Complaint was filed—to Capital One in-house counsel alleging infringement of claim 18 of the '894 patent. The Capital One Defendants further admit that they have received a copy of the Complaint. The Capital One Defendants deny any remaining allegations in Paragraph 38.

39. The Capital One Defendants deny the allegations in Paragraph 39.

**FOURTH CLAIM FOR RELIEF**
**(Infringement of U.S. Patent No. 8,083,137)**[4]

40. Answering Paragraph 40, the Capital One Defendants restate and incorporate by reference their responses to the allegations of Paragraphs 1-21 of the Complaint as if fully set forth herein.

41. The Capital One Defendants deny the allegations in Paragraph 41.

42. The Capital One Defendants deny the allegations in Paragraph 42.

43. The Capital One Defendants deny the allegations in Paragraph 43.

44. Answering Paragraph 44, the Capital One Defendants admit that IV I's counsel purportedly sent a letter, which on its face was dated June 18, 2013—only a day before the Complaint was filed—to Capital One in-house counsel alleging infringement of claim 12 of the '137 patent. The Capital One Defendants further admit that they have received a copy of the Complaint. The Capital One Defendants deny any remaining allegations in Paragraph 44.

45. The Capital One Defendants deny the allegations in Paragraph 45.

[4] The Capital One Defendants deny the allegations embedded in this subheading.

**FIFTH CLAIM FOR RELIEF**
**(Infringement of U.S. Patent No. 7,260,587)[5]**

46. Answering Paragraph 46, the Capital One Defendants restate and incorporate by reference their responses to the allegations of Paragraphs 1-21 of the Complaint as if fully set forth herein.

47. The Capital One Defendants deny the allegations in Paragraph 47.

48. The Capital One Defendants deny the allegations in Paragraph 48.

49. The Capital One Defendants deny the allegations in Paragraph 49.

50. Answering Paragraph 50, the Capital One Defendants admit that IV II's counsel purportedly sent a letter, which on its face was dated June 18, 2013—only a day before the Complaint was filed—to Capital One in-house counsel alleging infringement of claim 18 of the '587 patent. The Capital One Defendants further admit that they have received a copy of the Complaint. The Capital One Defendants deny any remaining allegations in Paragraph 50.

51. The Capital One Defendants deny the allegations in Paragraph 51.

**RESPONSE TO REQUEST FOR JUDGMENT**

Answering Plaintiffs' request for judgment, the Capital One Defendants deny that they infringe or have infringed any valid and enforceable claim of the Patents-in-Suit. The Capital One Defendants also deny that Plaintiffs are entitled to any relief requested against Capital One, including damages, interest, costs, disbursements, attorneys' fees, expenses, or any other relief of any kind, including, without limitation, Paragraphs 1 through 10 of Plaintiffs' request for judgment.

[5] The Capital One Defendants deny the allegations embedded in this subheading.

**JURY TRIAL DEMANDED**

Answering Plaintiffs' demand for jury trial, the Capital One Defendants acknowledge that Plaintiffs demand a trial by jury on all issues so triable.

**DEFENSES**

To the extent not expressly admitted above, the factual allegations contained in the Complaint are denied. Subject to the responses above, the Capital One Defendants allege and assert the following defenses in response to the allegations set forth in the Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. In addition to the defenses and affirmative defenses set forth below, and subject to its responses above, the Capital One Defendants specifically maintain the right to allege additional defenses pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States, and any other defenses, at law or in equity, that now exist or in the future may become known through the course of litigation discovery and further factual investigation in this case.

**FIRST DEFENSE**
**(Failure to State a Claim)**

Plaintiffs have failed to state a claim upon which relief can be granted.

**SECOND DEFENSE**
**(Non-Infringement)**

The Capital One Defendants are not infringing and have not infringed, either literally or under the doctrine of equivalents, directly, by inducement, contributorily, or in any way, any valid enforceable claim of the patents-in-suit.

**THIRD DEFENSE**
**(Invalidity)**

One or more claims of the Patents-In-Suit are invalid for failure to comply with one or more provisions of Title 35 of the United States Code, including without limitation §§ 101, 102, 103, and/or 112.

**FOURTH DEFENSE**
**(Waiver, Laches, Estoppel)**

Plaintiffs' claims for relief, in whole or in part, are barred by the doctrines of waiver, laches, and/or estoppel.  At a minimum, Plaintiffs are barred from recovering any pre-suit damages as a result of waiver, laches, and/or estoppel.

**FIFTH DEFENSE**
**(Express or Implied License, Patent Exhaustion)**

Plaintiffs' claims for relief, in whole or in part, are barred by any express or implied license to the Patents-in-Suit Capital One and/or other entities supplying, directly or indirectly, any allegedly infringing services or products to Capital One may have and/or by the doctrine of patent exhaustion.

**SIXTH DEFENSE**
**(Prosecution History Estoppel, Prosecution Disclaimer)**

Plaintiffs' claims for relief, in whole or in part, are barred by the doctrines of prosecution history estoppel and/or prosecution disclaimer.

**SEVENTH DEFENSE**
**(Limitations on Damages)**

Any claim by Plaintiffs' for damages is limited under 35 U.S.C. §§ 286 and 287.

**EIGHTH DEFENSE**
**(Patent Misuse)**

Patent misuse renders the asserted claims of the Patents-in-Suit unenforceable. Individually and in combination with their affiliates and other entities, Plaintiffs (collectively, "Intellectual Ventures") have engaged and are continuing to engage in a scheme to impermissibly broaden the scope of their patents, including the Patents-in-Suit, with anticompetitive purpose and effect.

**1. Impermissible Collection of Royalties from Invalid Patents**

Through threats and lawsuits, Intellectual Ventures is forcing and seeking to force U.S. commercial banks, including Capital One, to license vast patent portfolios that likely include hundreds if not thousands of patents—including the Patents-in-Suit—that do not read on the products and/or services offered by such financial institutions and that are of doubtful validity and enforceability. On information and belief, Intellectual Ventures acquires patents relating to financial services with the intent of creating a massive portfolio of patents that, in the aggregate, are very difficult for financial services companies to defend themselves against because of the sheer number of patents in the portfolio. The possible irrelevance, invalidity, and unenforceability of the patents in Intellectual Ventures' financial services portfolio is not an impediment to its strategy because, unlike bona fide portfolio licensing, Intellectual Ventures' business model is not based on the licensing of valuable patent rights, but rather on the threat of asserting thousands of patents in a never-ending series of costly and disruptive patent infringement law suits—pummeling its victims into submission. As an entity that does not practice any of its patents, Intellectual Ventures is in a position to magnify the credibility of this litigation threat because it is not itself subject to such infringement allegations from members of the financial services industry whom it attacks. By imposing the enormous costs of litigation on

multiple members of the industry, Intellectual Ventures further insulates itself from counterattack, further enhancing the credibility and coercive effect of its litigation threat.

Therefore, Intellectual Ventures knows or should reasonably know that many if not most of the 3,500 patents in its financial services patent portfolio are irrelevant, invalid, not infringed, and/or unenforceable. Intellectual Ventures' conduct has severe anticompetitive effects in the relevant market where Intellectual Ventures, as the sole licensor of such a large number of patents, has monopoly power – specifically the market for technology enabling business processes common throughout the commercial banking industry in the United States. By forcing its victims to either face endless, costly and disruptive patent litigation or accept licenses to thousands of potentially irrelevant, invalid, and/or unenforceable patents, Intellectual Ventures eliminates the economic incentive of its coerced licensees to challenge the validity of individual patents within the portfolio, and causes anticompetitive effects contrary to public policy.

The foregoing constitutes patent misuse and is a legal bar to enforcement of the Patents-in-Suit by Intellectual Ventures.

**2. Unlawful Monopolization**

Through its patent aggregation and licensing practices, Intellectual Ventures has illegally monopolized the relevant antitrust market for technology enabling business processes common throughout the commercial banking industry in the United States. Specifically, Intellectual Ventures coerces licenses by threatening patent litigation without regard to the merits of specific patent-related allegations and alleges in discussions and through its litigation activities that, as a whole, any commercial bank needs a license to its patents. Moreover, Intellectual Ventures advises its victims that they should take a portfolio license because, even if

they prove that any given subset of Intellectual Ventures' portfolio, such as the presently-asserted patents, are invalid, unenforceable, or not infringed, Intellectual Ventures will assert other patents, and still other patents, in an endless stream of litigation that will continue irrespective of the merit of Intellectual Ventures' infringement allegations so long as the victim resists taking a license.  As an entity that does not practice any of its patents, Intellectual Ventures is in a position to magnify the credibility of this litigation threat because it is not itself subject to such infringement allegations from members of the financial services industry whom it attacks.  By imposing the enormous costs of litigation on multiple members of the industry, Intellectual Ventures further insulates itself from counterattack, further enhancing the credibility of its litigation threat.  Intellectual Ventures has thus impermissibly broadened the scope of the Patents-in-Suit by using them to obtain a market benefit, beyond that which inheres in the statutory patent right, for exclusionary purposes and in a manner that has substantial anticompetitive effects.

Intellectual Ventures repeatedly has demonstrated its power to raise prices for its portfolio of patents by successfully charging supra-competitive royalties without suffering loss of demand or sales toward other licensors.  The payments that Intellectual Ventures extracts from licensees do not reflect the real economic value of the patents in Intellectual Ventures' portfolio, which a licensee would pay in a competitive market.  Intellectual Ventures is instead trying to turn straw into gold in the sense that, while it has failed to demonstrate any of the individual patents has value, companies must license the portfolio or risk one of the patents slipping through at trial.  Or even if a defendant wins case after case, that company must be prepared to incur the significant costs and disruption of patent litigation, including a significant drain on the time of key technical and financial personnel associated with each and every accused service.

Accordingly, the payments reflect "hold up" value, resulting from Intellectual Ventures' deliberate strategy of mass patent aggregation and industry-wide litigation to fashion and exploit a patent monopoly, followed by serial patent assertion whose credibility as a litigation threat does not depend upon the merits of its infringement allegations.

Intellectual Ventures has engaged in exclusionary and anticompetitive conduct to obtain and maintain its monopoly power by, among other things:

1. Acquiring by purchase and exclusive license an enormous quantity of issued patents ostensibly related to financial and banking services, that purport to cover ordinary course financial services industry processes;

2. Aggregating a wide collection of patents ostensibly related to financial and banking services and attempting to force licenses to these patents in a way that effectively prevents Capital One and other commercial banks from evaluating the allegations of portfolio infringement and non-infringing technical work-arounds because of Intellectual Ventures' deliberate concealment of the extent of its patent holdings and its threats of continued litigation;

3. Initiating sham infringement litigation in bad faith, regardless of the relevance, validity, or enforceability of its patents or the likelihood of success on the merits at trial, with the intent of using the federal court process, as opposed to the outcome of that process, as an anticompetitive weapon to increase its pricing power in the relevant market. Intellectual Ventures has asserted a series of meritless patent claims against Capital One and other U.S. commercial banks for purposes of coercing settlement and without any realistic expectation of actually securing damages or other relief, *i.e.*, motivated by a desire to impose collateral, anticompetitive injury rather than to obtain a justifiable legal remedy;

4.   Asserting vague and ambiguous patents that purport to cover ordinary course financial services industry processes, coupled with licensing demands that increase Intellectual Ventures' power to impose royalty rates that vastly exceed the real economic value, if any, of that patent portfolio; and

5.   Asserting and threatening to assert its financial services patents in serial litigation, thus making it prohibitively costly (again, regardless of the merits) for a target to defend itself against alleged infringement.  Even if the target succeeds in defeating Intellectual Ventures' first wave of asserted patents, Intellectual Ventures' demonstrable tactic and thus plainly implied threat is to file another lawsuit, and then another in an attempt to bury the target with the legal process and associated costs, irrespective of the merits.  *See, e.g.*, *Intellectual Ventures I LLC, et al. v. Canon Inc. et al.*, C.A. No. 11-792-SLR (D. Del.); *Intellectual Ventures I LLC et al. v. Canon, Inc. et al.*, C.A. No. 13-473-SLR (D. Del.).

In the face of these anticompetitive practices, a rational financial services target would more likely than not pay for limited patent peace, even if Intellectual Ventures does not have a single valid and infringed patent in its financial services portfolio.  Such payments are not compensation for the inventive value of the patents but rather monopoly rents, in other words hold-up payments attributable to Intellectual Ventures' willful patent aggregation and serial assertion strategy.  Deliberately increasing the cumulative cost of patent litigation in order to extract payments above and beyond the economic value of its patent in a competitive marketplace extends Intellectual Ventures' patent rights to derive a benefit not attributable to the use of the patents' teaching and therefore constitutes misuse.

Intellectual Ventures' conduct harms the competitive process by, for example, forcing and seeking to force providers of financial services and products to pay monopoly

overcharges, thereby reducing the incentive to innovate.  Companies such as Capital One foresee that if they achieve success by selling a product with enough revenue to attract Intellectual Ventures, Intellectual Ventures will seek to "tax" it.  Moreover, Intellectual Ventures' campaigns of serially asserting waves of weak patents to intimidate its victims and coerce them into taking portfolio licenses at exorbitant prices forces its targets, including Capital One, to expend significant resources in defending against Intellectual Ventures' monopolistic course of conduct. Such supracompetitive royalties also restrict output and raise prices in the downstream markets for the commercial banking services and products, therefore harming consumers.  By raising the costs of companies such as Capital One that compete with Intellectual Ventures' through self-supplying or purchasing necessary financial service inputs from other firms, Intellectual Ventures injures competition in the broader downstream market for commercial banking services and products.

Through the accumulation of a comprehensive patent portfolio primarily through acquisition, and by exclusionary abuse of that patent portfolio to extract monopoly, hold-up royalties, as set forth above, Intellectual Ventures has committed patent misuse rendering the Patents-In-Suit unenforceable as a matter of law.

## FIRST AMENDED COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 13, Capital One Financial Corporation, Capital One Bank (USA), N.A., and Capital One, N.A. (collectively "Capital One" or "Counter-Plaintiffs") allege the following against Counter-Defendants Intellectual Ventures I LLC and Intellectual Ventures II LLC, and Additional Counter-Defendants Intellectual Ventures Management, LLC, Invention Investment Fund I, L.P., Invention Investment Fund II, LLC, Intellectual Ventures Fund 83 LLC, and John Does 1-2000 (collectively "Intellectual Ventures" or "IV"):

## PARTIES

1.      Capital One Financial Corporation is a Delaware corporation with its corporate headquarters and principal place of business in McLean, Virginia.

2.      Capital One Bank (USA), N.A. is a national bank with its principal place of business in Glen Allen, Virginia.

3.      Capital One, N.A. is a national bank with its principal place of business in McLean, Virginia.

4.      Intellectual Ventures I LLC ("IV I") alleges that it is a Delaware limited liability company with its principal place of business in Bellevue, Washington.  It is an indirect, wholly owned subsidiary of Invention Investment Fund I, L.P.

5.      Intellectual Ventures II LLC ("IV II") alleges that it is a Delaware limited liability company with its principal place of business in Bellevue, Washington. It is an indirect, wholly owned subsidiary of Invention Investment Fund II, LLC.

6.      Intellectual Ventures Management, LLC is a Washington limited liability company with its principal place of business in Bellevue, Washington.

7. Invention Investment Fund I, L.P. is a Delaware limited partnership with its principal place of business in Bellevue, Washington.

8. Invention Investment Fund II, LLC is a Delaware limited liability company with its principal place of business in Bellevue, Washington.

9. Intellectual Ventures Fund 83 LLC is a Delaware limited liability company with its principal place of business in Bellevue, Washington. It is an indirect, wholly owned subsidiary of Invention Investment Fund II, LLC.

10. John Does 1-2000 are shell companies under the control of Intellectual Ventures Management, LLC that variously purchase, take ownership of, transfer, sell, and approach companies to license patents. When Capital One learns the identity of these John Doe entities during discovery, it will amend its pleading accordingly.

**JURISDICTION AND VENUE**

11. Subject to the affirmative defenses and denials set forth above, this Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 2201, and 2202.

12. Intellectual Ventures has submitted to the personal jurisdiction of this Court by, without limitation, conducting business in Virginia and filing the present action alleging infringement of the Patents-in-Suit. At least Intellectual Ventures Management, LLC, Invention Investment Fund I, L.P., and Invention Investment Fund II, LLC are subject to suit in this district because they personally met with Capital One, a Virginia resident corporation, in Northern Virginia on or about August 16, 2013. On information and belief, Intellectual Ventures Fund 83 LLC also met with Capital One at that meeting. Intellectual Ventures engaged in that meeting in an attempt to carry out its anticompetitive scheme. These Counterclaims arise out of

that purposeful contact with the district, and Intellectual Ventures' availing itself of the laws and privileges of Virginia.

13. Personal jurisdiction may also be asserted against all of the IV entities in this district based on their agency relationships. IV I acts solely as the agent of Invention Investment Fund I, L.P. All of IV I's actions may be imputed to Invention Investment Fund I, L.P. Similarly, IV II acts solely as the agent of Invention Investment Fund II, LLC. Intellectual Ventures Fund 83 LLC is a wholly owned subsidiary of Intellectual Investment Fund II, LLC. All of IV II's actions may be imputed to Intellectual Ventures Fund 83 LLC and Intellectual Investment Fund II, LLC.

14. In commencing this action, IV I and IV II acted, as always, as mere vessels for Intellectual Ventures Management, LLC, Invention Investment Fund I, L.P. and Invention Investment Fund II, LLC. On information and belief, IV I, IV II, Intellectual Ventures Management, LLC, Invention Investment Fund I, L.P., Invention Investment Fund II, LLC, and Intellectual Ventures Fund 83 LLC are alter egos of one another.

15. Venue is proper in this judicial district pursuant to, without limitation, 28 U.S.C. §§ 1391(b) and 1391(c).

**COUNTERCLAIM COUNT ONE**
**(Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,664,701)**

16. Capital One repeats and re-alleges the allegations of the preceding Paragraphs of these Counterclaims as if fully set forth herein.

17. IV I has sued Capital One in the present action, alleging infringement of U.S. Patent No. 7,664,701 ("the '701 Patent"). Thus, an immediate, real and justiciable controversy exists between IV, on the one hand, and Capital One, on the other hand, with respect to the alleged infringement of the '701 Patent.

18. Capital One is not infringing, and has not infringed, either literally or under the doctrine of equivalents, directly, by inducement, contributorily, or in any way, any valid, enforceable claim of the ’701 Patent.

19. Capital One is entitled to a declaratory judgment that it has not and does not infringe, directly or indirectly, any valid, enforceable claim of the ’701 Patent.

**COUNTERCLAIM COUNT TWO**
**(Declaratory Judgment of Invalidity and Unenforceability of U.S. Patent No. 7,664,701)**

20. Capital One repeats and re-alleges the allegations of the preceding Paragraphs of these Counterclaims as if fully set forth herein.

21. IV I has sued Capital One in the present action, alleging infringement of the ’701 Patent. Thus, an immediate, real and justiciable controversy exists between IV, on the one hand, and Capital One, on the other hand, with respect to the alleged infringement of the ’701 Patent.

22. The claims of the ’701 Patent are invalid for failure to satisfy one or more of the requirements of Title 35 of the United States Code, including, without limitation, Sections 101, 102, 103, and/or 112.

23. The claims of the ’701 Patent are unenforceable for at least the reasons stated in Capital One’s defenses, herein incorporated by reference.

24. Capital One is entitled to a declaratory judgment that the claims of the ’701 Patent are invalid and unenforceable.

**COUNTERCLAIM COUNT THREE**
**(Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,603,382)**

25. Capital One repeats and re-alleges the allegations of the preceding Paragraphs of these Counterclaims as if fully set forth herein.

26. IV I has sued Capital One in the present action, alleging infringement of U.S. Patent No. 7,603,382 ("the '382 Patent"). Thus, an immediate, real and justiciable controversy exists between IV, on the one hand, and Capital One, on the other hand, with respect to the alleged infringement of the '382 Patent.

27. Capital One is not infringing, and has not infringed, either literally or under the doctrine of equivalents, directly, by inducement, contributorily, or in any way, any valid, enforceable claim of the '382 Patent.

28. Capital One is entitled to a declaratory judgment that it has not and does not infringe, directly or indirectly, any valid, enforceable claim of the '382 Patent.

**COUNTERCLAIM COUNT FOUR**
**(Declaratory Judgment of Invalidity and Unenforceability of U.S. Patent No. 7,603,382)**

29. Capital One repeats and re-alleges the allegations of the preceding Paragraphs of these Counterclaims as if fully set forth herein.

30. IV I has sued Capital One in the present action, alleging infringement of the '382 Patent. Thus, an immediate, real and justiciable controversy exists between IV, on the one hand, and Capital One, on the other hand, with respect to the alleged infringement of the '382 Patent.

31. The claims of the '382 Patent are invalid for failure to satisfy one or more of the requirements of Title 35 of the United States Code, including, without limitation, Sections 101, 102, 103, and/or 112.

32. The claims of the '382 Patent are unenforceable for at least the reasons stated in Capital One's defenses, herein incorporated by reference.

33. Capital One is entitled to a declaratory judgment that the claims of the '382 Patent are invalid and unenforceable.

**COUNTERCLAIM COUNT FIVE**
**(Declaratory Judgment of Non-Infringement of U.S. Patent No. 6,182,894)**

34.     Capital One repeats and re-alleges the allegations of the preceding Paragraphs of these Counterclaims as if fully set forth herein.

35.     IV II has sued Capital One in the present action, alleging infringement of U.S. Patent No. 6,182,894 ("the '894 Patent").   Thus, an immediate, real and justiciable controversy exists between IV, on the one hand, and Capital One, on the other hand, with respect to the alleged infringement of the '894 Patent.

36.     Capital One is not infringing, and has not infringed, either literally or under the doctrine of equivalents, directly, by inducement, contributorily, or in any way, any valid, enforceable claim of the '894 Patent.

37.     Capital One is entitled to a declaratory judgment that it has not and does not infringe, directly or indirectly, any valid, enforceable claim of the '894 Patent.

**COUNTERCLAIM COUNT SIX**
**(Declaratory Judgment of Invalidity and Unenforceability of U.S. Patent No. 6,182,894)**

38.     Capital One repeats and re-alleges the allegations of the preceding Paragraphs of these Counterclaims as if fully set forth herein.

39.     IV II has sued Capital One in the present action, alleging infringement of the '894 Patent.  Thus, an immediate, real and justiciable controversy exists between IV, on the one hand, and Capital One, on the other hand, with respect to the alleged infringement of the '894 Patent.

40.     The claims of the '894 Patent are invalid for failure to satisfy one or more of the requirements of Title 35 of the United States Code, including, without limitation, Sections 101, 102, 103, and/or 112.

41. The claims of the ’894 Patent are unenforceable for at least the reasons stated in Capital One’s defenses, herein incorporated by reference.

42. Capital One is entitled to a declaratory judgment that the claims of the ’894 Patent are invalid and unenforceable.

**COUNTERCLAIM COUNT SEVEN**
**(Declaratory Judgment of Non-Infringement of U.S. Patent No. 8,083,137)**

43. Capital One repeats and re-alleges the allegations of the preceding Paragraphs of these Counterclaims as if fully set forth herein.

44. IV I has sued Capital One in the present action, alleging infringement of U.S. Patent No. 8,083,137 (“the ’137 Patent”). Thus, an immediate, real and justiciable controversy exists between IV, on the one hand, and Capital One, on the other hand, with respect to the alleged infringement of the ’137 Patent.

45. Capital One is not infringing, and has not infringed, either literally or under the doctrine of equivalents, directly, by inducement, contributorily, or in any way, any valid, enforceable claim of the ’137 Patent.

46. Capital One is entitled to a declaratory judgment that it has not and does not infringe, directly or indirectly, any valid, enforceable claim of the ’137 Patent.

**COUNTERCLAIM COUNT EIGHT**
**(Declaratory Judgment of Invalidity and Unenforceability of U.S. Patent No. 8,083,137)**

47. Capital One repeats and re-alleges the allegations of the preceding Paragraphs of these Counterclaims as if fully set forth herein.

48. IV I has sued Capital One in the present action, alleging infringement of the ’137 Patent. Thus, an immediate, real and justiciable controversy exists between IV, on the

one hand, and Capital One, on the other hand, with respect to the alleged infringement of the ’137 Patent.

49. The claims of the ’137 Patent are invalid for failure to satisfy one or more of the requirements of Title 35 of the United States Code, including, without limitation, Sections 101, 102, 103, and/or 112.

50. The claims of the ’137 Patent are unenforceable for at least the reasons stated in Capital One’s defenses, herein incorporated by reference.

51. Capital One is entitled to a declaratory judgment that the claims of the ’137 Patent are invalid and unenforceable.

**COUNTERCLAIM COUNT NINE**
**(Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,260,587)**

52. Capital One repeats and re-alleges the allegations of the preceding Paragraphs of these Counterclaims as if fully set forth herein.

53. IV II has sued Capital One in the present action, alleging infringement of U.S. Patent No. 7,260,587 (“the ’587 Patent”). Thus, an immediate, real and justiciable controversy exists between IV, on the one hand, and Capital One, on the other hand, with respect to the alleged infringement of the ’587 Patent.

54. Capital One is not infringing, and has not infringed, either literally or under the doctrine of equivalents, directly, by inducement, contributorily, or in any way, any valid, enforceable claim of the ’587 Patent.

55. Capital One is entitled to a declaratory judgment that it has not and does not infringe, directly or indirectly, any valid, enforceable claim of the ’587 Patent.

**COUNTERCLAIM COUNT TEN**
**(Declaratory Judgment of Invalidity and Unenforceability of U.S. Patent No. 7,260,587)**

56. Capital One repeats and re-alleges the allegations of the preceding Paragraphs of these Counterclaims as if fully set forth herein.

57. IV II has sued Capital One in the present action, alleging infringement of the ’587 Patent. Thus, an immediate, real and justiciable controversy exists between IV, on the one hand, and Capital One, on the other hand, with respect to the alleged infringement of the ’587 Patent.

58. The claims of the ’587 Patent are invalid for failure to satisfy one or more of the requirements of Title 35 of the United States Code, including, without limitation, Sections 101, 102, 103, and/or 112.

59. The claims of the ’587 Patent are unenforceable for at least the reasons stated in Capital One’s defenses, herein incorporated by reference.

60. Capital One is entitled to a declaratory judgment that the claims of the ’587 Patent are invalid and unenforceable.

**COUNTERCLAIM COUNT ELEVEN**
**(Monopolization Under Section 2 of the Sherman Act)**

61. Capital One repeats and re-alleges the allegations of the preceding Paragraphs of these Counterclaims as if fully set forth herein.

62. Intellectual Ventures is a patent-assertion entity (“PAE”), more commonly known as a “patent troll,” that neither commercializes technology nor builds products, but instead merely accumulates vast numbers of patents and patent applications. It does so to hold-up innovators like Capital One that provide goods and services to consumers. Intellectual Ventures boasts that it controls “the largest portfolio of active patent assets in the world” and has a total portfolio of approximately 80,000 patents and pending patent applications.

63.     Secrecy, misdirection, and obfuscation are hallmarks of Intellectual Ventures' business strategy, which uses a labyrinthine network of some 2,000 shell companies for at least two anticompetitive purposes.  First, it employs those shell companies to engage in "submarine" hold-up.  The shell companies allow Intellectual Ventures to conceal its patent acquisitions so that targets have no idea that it is building walls of patents around their businesses.  Second, the shell companies ensure that, when Intellectual Ventures does launch an attack, its targets cannot assess or value its portfolio, and thus among other things cannot determine whether they could avoid Intellectual Ventures' infringement claims by redesigning their accused products or processes.  Both of these effects amplify the magnitude and impact of the threat that IV imposes on its victims.

64.     Intellectual Ventures almost never operates in ex ante technology-licensing markets, where companies wishing to acquire useful technologies for new products in the pipeline go to obtain useful know-how.  These markets are generally competitive, as purchasers of technology inputs can choose among substitutable products and are free to design and develop their future, planned products to avoid the claims of patentees that refuse to license at reasonable prices.  Such ex ante licensing markets efficiently distribute technology, allowing firms to implement cutting-edge engineering insights, benefitting downstream consumers who enjoy superior products at reduced cost, and offering patentees financial rewards reflecting the incremental worth of their claimed technologies.

65.     Intellectual Ventures avoids ex ante technology-licensing markets because they are efficient and hence do not allow patentees to command prices exceeding the technological contribution of their technologies.  Intellectual Ventures' domain is the ex post world, where innovators have already built products and services incorporating widely known

technologies. By this stage, companies have sunk large investments (many of them long-lived, fixed capital assets, often without any significant alternative use) into their product lines, meaning that they can no longer cheaply abandon their chosen product designs. Ex post, makers and buyers of technological products are, to a significant degree, locked-in, which makes them attractive targets for Intellectual Ventures' litigation scheme for extracting supracompetitive licensing fees through coercion and deception.

66.     Intellectual Ventures readily acknowledges that even the most assiduous innovators dedicated to obtaining necessary licenses before researching and developing novel products cannot avoid arguable claims of patent infringement in the ex post market. Between 2002 and 2012, the U.S. Patent and Trademark Office ("PTO") issued more than 2 million patents. In 2012 alone, the PTO issued almost a quarter-million patents. Intellectual Ventures observes on its website that, "[i]n today's fast-paced, high-tech world—where companies are entering new markets and building products that contain upwards of thousands of patented inventions—there is an inevitable Invention Gap™."

67.     Intellectual Ventures' monopolistic practices have not gone unnoticed. On September 30, 2013, the Federal Trade Commission announced a Rule 6(b) study to investigate anticompetitive conduct by Intellectual Ventures and other PAEs. That study follows joint hearings in December 2012 with the U.S. Justice Department's Antitrust Division into the role of patent assertion in "disrupting competition in high-tech markets." In February 2013, President Obama lambasted PAEs like Intellectual Ventures, observing that "[t]hey don't actually produce anything themselves. They're just trying to essentially leverage and hijack somebody else's idea and see if they can extort some money out of them." PAEs have been described as having "indicia of extortion." *Eon-Net v. Flagstar Bancorp*, 653 F.3d 1314, 1326 (Fed. Cir. 2011).

68.     Most patents that arguably read on existing and redesigned products in the financial services industry are invalid.  Indeed, such patents are characterized by "potential vagueness and suspect validity."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 397 (2006) (Kennedy, J., concurring).  Due to their probable invalidity, and the risk of countersuit to those who might enforce them, such patents provide their owners with no market power.  But the very traits that render those patents invalid makes them attractive to IV, which realizes that, by combining enough of them, it can make sweeping claims of infringement.

69.     By accumulating patents that serve as a crutch for its anticompetitive scheme, not building any goods or services that might make it vulnerable to claims of patent infringement, hiding its patent accumulation using thousands of shell companies, and not telling its targets what patents are in its portfolio, Intellectual Ventures acquires monopoly power where there was previously none.  Intellectual Ventures creates an inescapable threat by aggregating so many weak patents that it can attack successful products and redesigned alternatives.  Intellectual Ventures thus eliminates competition and cuts off escape avenues for the innovators it attacks. Intellectual Ventures further bolsters its monopoly power by asserting sham patent-infringement suits, entirely without regard to their substantive merits, for the subjective, improper purpose of using the legal process itself as a weapon to pummel its targets into submission.

70.     The result of this willful acquisition of monopoly power is clear. Intellectual Ventures reportedly extracted $350 million from Verizon Communications, for instance, $120 million from Intuit Inc., and between $200 million to $400 million from Cisco Systems, Inc.  Such amounts bear no commercial or economic relation to the real financial worth of the individual licensed patents, but reflect portfolio monopoly overcharges that Intellectual

Ventures can impose due to its targeted aggregation, obfuscation, and related anticompetitive practices.

71. Intellectual Ventures is using its anticompetitive business strategy against Capital One. Intellectual Ventures has monopolized an otherwise-competitive ex post market for technology enabling business processes common throughout the commercial banking industry in the United States, where the relevant geographic market is nationwide. Intellectual Ventures' aggregation and related anticompetitive conduct have caused prices to rise in that market. That is typical of the effect that Intellectual Ventures has in other ex post markets that it monopolizes, as evidenced in part by the hundreds of millions of dollars Intellectual Ventures has forced its targets in other industries to pay.

72. Based on the sheer number of patents Intellectual Ventures has accumulated, its licensing practices, and its other anticompetitive conduct alleged above (but not based on the value of any of its individual patents), Intellectual Ventures holds monopoly power in the market for technology enabling business processes common throughout the commercial banking industry in the United States. Principally through acquisition and license, rather than internal development, Intellectual Ventures has amassed an enormous portfolio of 3,500 or more patents that it alleges cover widely used financial and retail banking services. Intellectual Ventures represents that it has accumulated at least 1,000 patents purportedly reading directly on retail commercial banking activities in the areas of ATMs, credit and debit transaction processing, and online and mobile banking services.

73. Intellectual Ventures is deliberately targeting providers of financial services and products in the U.S. for a campaign of royalty extortion based on its targeted patent portfolio of extraordinary size, and is instituting and threatening to prosecute this and future bad-

faith, strategic litigation against Capital One and other commercial banking entities in the United States.  Intellectual Ventures has created a portfolio with monopoly power to impose an enormous licensing "tax" upon the entire banking industry.  Intellectual Ventures has thereby monopolized the ex post market for technology enabling business processes common throughout the commercial banking industry in the United States in violation of Section 2 of the Sherman Act.

74.     Intellectual Ventures has engaged in exclusionary and anticompetitive conduct to obtain and maintain its monopoly power in the relevant market by among other things:

a.     Acquiring by purchase and exclusive license an enormous quantity of issued patents, ostensibly related to financial and banking services, that purport to cover ordinary course financial services industry processes;

b.     Aggregating a wide collection of patents ostensibly related to financial and banking services and attempting to force licenses to these patents in a way that effectively prevents Capital One and other commercial banks from evaluating the allegations of portfolio infringement and the availability of non-infringing technical work-arounds because of Intellectual Ventures' deliberate concealment of the extent of its patent holdings and its threats of continued litigation;

c.     Initiating sham infringement litigation in bad faith, regardless of the relevance, validity, or enforceability of its patents or the likelihood of success on the merits at trial, with the intent of using the federal court process, as opposed to the outcome of that process, as an anticompetitive weapon to increase its pricing power in the relevant market.  Intellectual Ventures has asserted a series of meritless patent claims, against Capital One and other U.S.

commercial banks, for purposes of coercing settlement and without any realistic expectation of actually securing damages or other relief, *i.e.*, motivated by a desire to impose collateral, anticompetitive injury rather than to obtain a justifiable legal remedy;

d. Asserting vague and ambiguous patents that purport to cover ordinary course financial services industry processes, coupled with licensing demands that increase Intellectual Ventures' power to impose royalty rates that vastly exceed the real economic value, if any, of that patent portfolio; and

e. Asserting its financial services patents in serial litigation, thus making it prohibitively costly (again, regardless of the merits) for a target to defend itself against alleged infringement. Even if the target succeeds in defeating Intellectual Ventures' first wave of asserted patents, Intellectual Ventures' demonstrable tactic and thus plainly implied threat is to file another lawsuit, and then another in an attempt to bury the target with the legal process and associated costs, irrespective of the merits. *See, e.g.*, *Intellectual Ventures I LLC, et al. v. Canon Inc. et al.*, C.A. No. 11-792-SLR (D. Del.); *Intellectual Ventures I LLC et al. v. Canon, Inc. et al.*, C.A. No. 13-473-SLR (D. Del.). As an entity that does not practice any of its patents, Intellectual Ventures is in a position to magnify the credibility of this litigation threat because it is not itself subject to such infringement allegations from members of the financial services industry whom it attacks. By imposing the enormous costs of litigation on multiple members of the industry, Intellectual Ventures further insulates itself from counterattack, further enhancing the credibility of its litigation threat.

75. To the extent that Capital One and other defendants victimized by Intellectual Ventures' campaign make expenditures to defend themselves and/or are required to pay royalties as a result, the cost to Capital One and its competitors of delivering financial

products and services in the United States will increase, the price of such services to consumers will rise, and the quantity, quality and rate of innovation of such products and services will decline.  Intellectual Ventures' campaign of extraordinary patent accumulation and litigation, with the objective to compel the payment of enormous royalties from Capital One and other large commercial banks by "going after the entire industry," has no cognizable procompetitive justification and lacks any efficiency-enhancing effects sufficient to outweigh its enormous anticompetitive impact.

76.     Intellectual Ventures' financial services patent monopoly increases prices in the relevant market and, by reducing the rewards of successful innovation, restricts the demand for future inputs to the innovation process.  Intellectual Ventures raises the costs of commercial banking operations to include the "hold-up" value of the immense license fees it imposes and, accordingly, increases prices for and decreases services available to retail commercial banking customers of Capital One and the other target firms.   These are "deadweight" economic losses that decrease consumer welfare and, because Intellectual Ventures produces no products or services in the relevant market itself, serve only to prevent commercial banking entities like Capital One from purchasing, using and passing on to consumers lower-cost technologies and business processes available from vendor firms that actually supply valuable goods and services to the industry.

77.     Intellectual Ventures has thereby monopolized the ex post market for technology enabling business processes common throughout the commercial banking industry in the United States, where the relevant geographic market is nationwide, in violation of Section 2 of the Sherman Act.

78. As a direct result of Intellectual Ventures' illegal monopolization, Capital One has been injured in its business and property. Intellectual Ventures has forced Capital One to operate under constant threat of hold-up, endangering Capital One's future design freedom, cash resources, and investment in innovation. Intellectual Ventures has increased the price of patent licenses in the relevant market, and has reduced incentives to innovate by taxing those who successfully develop and provide innovative goods and services. Intellectual Ventures' campaign has already required Capital One to expend substantial sums of money and devote considerable management time and other resources in defending themselves, and will require Capital One to make substantial additional expenditures and devote additional resources to their defense in the future. Capital One's injuries are accordingly a direct result of the anticompetitive conduct engaged in by Intellectual Ventures and are injuries of the type the antitrust laws were intended to prevent.

79. Pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, Capital One is entitled to treble the amount of their actual damages attributable to Intellectual Ventures' unlawful monopolization in an amount to be determined at trial, plus the cost of suit, including reasonable attorneys' fees.

80. Pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, Capital One is entitled to an injunction preventing and restraining Intellectual Ventures' conduct in violation of Section 2 of the Sherman Act, and to an award of the cost of suit, including reasonable attorneys' fees.

**COUNTERCLAIM COUNT TWELVE**
**(Attempted Monopolization Under Section 2 of the Sherman Act)**

81. Capital One repeats and re-alleges the allegations of the preceding Paragraphs of these Counterclaims as if fully set forth herein.

82.     Intellectual Ventures has engaged in the anticompetitive and exclusionary practices previously alleged with the specific purpose and intent of obtaining monopoly power in the ex post market for technology enabling business processes common throughout the commercial banking industry in the United States, where the relevant geographic market is nationwide.

83.     Intellectual Ventures has either already acquired or presents a dangerous probability of achieving monopoly power in the relevant market.

84.     Intellectual Ventures has thereby attempted to monopolize the ex post market for technology enabling business processes common throughout the commercial banking industry in the United States, in violation of Section 2 of the Sherman Act.

85.     As a direct result of Intellectual Ventures' attempted monopolization, Capital One has been injured in their business and property, as previously alleged.  Capital One's injuries are a direct result of the unlawful conduct engaged in by Intellectual Ventures and are injuries of the type the antitrust laws were intended to prevent.

86.     Pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, Capital One is entitled to treble the amount of its actual damages attributable to Intellectual Ventures' unlawful monopolization in an amount to be determined at trial, plus the cost of suit, including reasonable attorneys' fees.

87.     Pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, Capital One is entitled to an injunction preventing and restraining Intellectual Ventures' conduct in violation of Section 2 of the Sherman Act, and to an award of the cost of suit, including reasonable attorneys' fees.

**COUNTERCLAIM COUNT THIRTEEN**
**(Unlawful Asset Acquisitions in Violation of Section 7 of the Clayton Act)**

88. Capital One repeats and re-alleges the allegations of the preceding Paragraphs of these Counterclaims as if fully set forth herein.

89. Intellectual Ventures has amassed a financial services patent portfolio of extraordinary breadth in order to carry out its campaign of actual and threatened bad-faith and strategic litigation. This enormous portfolio, which it asserts includes at least 3,500 patents ostensibly related to financial services and more than 1,000 patents claimed to read directly on retail commercial banking activities in the areas of ATMs, credit and debit transaction processing, and online and mobile banking services, has been aggregated primarily through acquisition by Intellectual Ventures of assets, namely patents and exclusive patent licenses.

90. These asset acquisitions are likely to lessen substantially, and indeed already have lessened substantially, competition in the ex post market for technology enabling business processes common throughout the commercial banking industry in the United States, where the relevant geographic market is nationwide. These asset acquisitions in addition are likely to create, and indeed already have created, a monopoly in the relevant market.

91. Intellectual Ventures' acquisitions thereby violate Section 7 of the Clayton Act, 15 U.S.C. § 18.

92. As a direct result of Intellectual Ventures' unlawful asset acquisitions, Capital One has been injured in its business and property, as previously alleged. Capital One's injuries are a direct result of the unlawful conduct engaged in by Intellectual Ventures and are injuries of the type the antitrust laws were intended to prevent.

93. Pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, Capital One is entitled to treble the amount of its actual damages attributable to Intellectual Ventures' unlawful

acquisitions in an amount to be determined at trial, plus the cost of suit, including reasonable attorneys' fees.

94.     Pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, Capital One is entitled to an injunction mandating divestiture or other disposition of Intellectual Ventures' unlawfully acquired patent assets and to an award of the cost of suit, including reasonable attorneys' fees.

## RELIEF REQUESTED

WHEREFORE, Capital One respectfully requests the following relief:

A.     That Intellectual Ventures take nothing on its Complaint;

B.     That Intellectual Ventures' Complaint be dismissed with prejudice and that all relief requested by Intellectual Ventures be denied with prejudice;

C.     That the Court find and declare that Capital One has not infringed and does not infringe in any manner any valid, enforceable claim of the Patents-in-Suit;

D.     That the Court find and declare that each claim of the Patents-in-Suit is invalid, void, unenforceable, and without any force or effect against Capital One and its officers, employees, agents and attorneys, or any of them;

E.     That the Court find and declare this to be an exceptional case under 35 U.S.C. § 285, and that the Court award Capital One its reasonable attorneys' fees;

F.     That the Court enter judgment against Intellectual Ventures under Section 2 of the Sherman Act and Section 7 of the Clayton Act, award Capital One treble the amount of its actual damages attributable to Intellectual Ventures' antitrust violations, plus reasonable attorneys' fees, and enter an injunction (i) preventing and restraining Intellectual Ventures'

exclusionary, anticompetitive conduct, and (ii) mandating divestiture or other disposition of Intellectual Ventures' unlawfully acquired financial services patent assets;

G. That the Court award to Capital One its costs associated with this case; and

H. That the Court award to Capital One such further relief, in law or in equity, as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Capital One demands a trial by jury on all issues properly triable to a jury.

Dated: October 14, 2013

**CAPITAL ONE FINANCIAL CORPORATION**
**CAPITAL ONE BANK (USA), N.A.**
**CAPITAL ONE, N.A.**

/s/ Jonathan D. Link

Jonathan D. Link (VSB No. 42951)
jonathan.link@lw.com
Matthew J. Moore (*pro hac vice*)
matthew.moore@lw.com
Abbott B. Lipsky, Jr. (*pro hac vice*)
tad.lipsky@lw.com
Peter Schmidt (*pro hac vice*)
peter.schmidt@lw.com
Gabrielle Kohlmeier (*pro hac vice* pending)
gabrielle.kohlmeier@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Tel: (202) 637-2200; Fax: (202) 637-2201

Jeffrey G. Homrig (*pro hac vice*)
jeff.homrig@lw.com
Patricia Young (*pro hac vice*)
patricia.young@lw.com
Linfong Tzeng (*pro hac vice*)
linfong.tzen@lw.com

LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025-1008
Tel: (650) 328-4600; Fax: (650) 463-2600

Joseph H. Lee (*pro hac vice*)
joseph.lee@lw.com
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Tel: (714) 840-1235; Fax: (714) 755-8290

Neil A. Rubin (*pro hac vice*)
neil.rubin@lw.com
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
Tel: (213) 485-1234; Fax: (213) 891-8763

Andrew J. Fossom (*pro hac vice*)
andrew.fossom@lw.com
LATHAM & WATKINS LLP
811 Main Street, Suite 3700
Houston, TX 77002
Tel: (713) 546-7449; Fax: (713) 546-5401

Alan James Devlin (*pro hac vice*)
alan.devlin@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Tel: (415) 395-8294; Fax: (415) 395-5095

Robert A. Angle (VSB No. 37691)
robert.angle@troutmansanders.com
Dabney J. Carr, IV (VSB No. 28679)
dabney.carr@troutmansanders.com
Nicholas R. Klaiber (VSB No. 80563)
nicholas.klaiber@troutmansanders.com
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1246
Facsimile: (804) 698-5124

Mary Catherine Zinsner (VSB No. 31397)
mary.zinsner@troutmansanders.com

S. Mohsin Reza (VSB No. 75347)
mohsin.reza@troutmansanders.com
Glenn B. Manishin (VSB No. 49029)
glenn.manishin@troutmansanders.com
TROUTMAN SANDERS LLP
1850 Towers Crescent Plaza, Suite 500
Tysons Corner, Virginia 22182
Telephone: (703) 734-4334
Facsimile: (703) 734-4340

*Attorneys for Defendants, Capital One Financial
Corporation, Capital One Bank (USA), N.A. and
Capital One, N.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of October, 2013, I electronically served the foregoing to Plaintiff's counsel as indicated:

Craig Crandall Reilly
Law Office of Craig C. Reilly
111 Oronoco St.
Alexandria, VA 22314
703-549-5353
Fax: 703-549-2604
craig.reilly@ccreillylaw.com

Clayton Thompson
Ian F. Feinberg
M. Elizabeth Day
David Alberti
Marc C. Belloli
Yakov Zolotorev
Lawrence McDonough
Sal Lim
Nickolas Bohl
Peter Mikhail
Feinberg Day Alberti & Thompson LLP
1600 El Camino Real, Suite 280
Menlo Park, CA 94025
(650) 618-4364 (T)
(650) 618-4368 (F)
cthompson@feinday.com
ifeinberg@feinday.com
eday@feinday.com
dalberti@feinday.com
nbelloli@feinday.com
yzolotorev@feinday.com
lmcdonough@feinday.com
slim@feinday.com
nbohl@feinday.com
pmikhail@feinday.com

*Counsel for Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC*

/s/ Jonathan D. Link
Jonathan D. Link (VSB No. 42951)
jonathan.link@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

*Attorneys for Capital One Defendants Financial Corporation, Capital One Bank (USA), National Association and Capital One, National Association*