## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

INTELLECTUAL VENTURES I LLC and
INTELLECTUAL VENTURES II LLC,

                  Plaintiffs/Counter-
Defendants,

       v.

CAPITAL ONE FINANCIAL
CORPORATION; CAPITAL ONE BANK
(USA), NATIONAL ASSOCIATION; and
CAPITAL ONE, NATIONAL
ASSOCIATION,

                  Defendants/Counter-
Plaintiffs,

       v.

INTELLECTUAL VENTURES
MANAGEMENT, LLC; INVENTION
INVESTMENT FUND I, L.P.; INVENTION
INVESTMENT FUND II, LLC;
INTELLECTUAL VENTURES FUND 83
LLC, and JOHN DOES 1-2000,

Additional Counter-Defendants.

CIVIL ACTION NO. 1:13-cv-00740-AJT/TCB

**JURY TRIAL DEMANDED**

### PLAINTIFFS/COUNTERDEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO STRIKE OR DISMISS AMENDED ANTITRUST COUNTERCLAIMS 11, 12 AND 13 AND MOTION TO DISMISS EIGHTH AFFIRMATIVE PATENT MISUSE DEFENSE

# TABLE OF CONTENTS

**Pages**

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................. 2

I.   CAPITAL ONE HAS NOT PLED "PLAUSIBLE" CLAIMS FOR RELIEF. ............ 2

II.   CAPITAL ONE HAS NOT ALLEGED A PLAUSIBLE CLAIM FOR
MONOPOLIZATION......................................................................................................... 3

   A.   Capital One Has Not Identified a Plausible Antitrust Market ................................. 3

   B.   Capital One Has Not Begun Adequately to Allege Market Share .......................... 6

      1.   Capital One Alleged Neither Market Share nor the Two Types of Direct
Evidence of Monopoly Power Which Can Excuse a Market Share Allegation. ........ 6

      2.   Capital One's Monopolization Claim Requires that Intellectual Ventures'
Patents Be Valid and Infringed ................................................................................. 8

   C.   Capital One Has Not Plausibly Alleged that Intellectual Ventures Acquired
Monopoly Power, Willfully or Otherwise ..................................................................... 9

      1.   IV's Patent Aggregation Is Not Anticompetitive.............................................. 12

      2.   IV's Alleged Concealment of Patents Cannot Violate the Antitrust Laws........ 14

      3.   IV's Serial Assertion of Allegedly Weak Patents Is Not Anticompetitive ........ 14

   D.   Capital One Has Not Stated a Plausible Claim for Attempted Monopolization... 15

III.   INTELLECTUAL VENTURES DID NOT VIOLATE SECTION 7 ..................... 15

IV.   CAPITAL ONE HAS NOT ALLEGED ANTITRUST INJURY OR STANDING 16

V.   CAPITAL ONE'S PATENT MISUSE DEFENSE MUST BE STRUCK.............. 17

VI.   CONCLUSION................................................................................................... 17

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Apple, Inc. v. Motorola, Inc.*,
   869 F.Supp.2d 901 (N.D.Ill 2012) ................................................................. 4

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................... 8

*Broadcom Corp. v. Qualcomm, Inc.*,
   501 F.3d 297 (3rd Cir. 2007) ......................................................................... 4

*California Motor Transport Co v. Trucking Unlimited*,
   404 U.S. 508 (1972) .............................................................................. 14, 15

*City of Mishwaka v. Am. Elec. Power Co.*,
   616 F.2d 976 (7th Cir. 1980) ......................................................................... 10

*Continental Ore Co. v. Union Carbide and Carbon Corp.*,
   370 U.S. 690 (1962) .................................................................................... 9, 10

*Dickson v. Microsoft Corp.*,
   309 F.3d 193 (4th Cir. 2002) ........................................................................... 6

*Eastman Kodak Co. v Image Technical Servs., Inc.*,
   504 U.S. 451 (1992) ......................................................................................... 3

*eBay, Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) ....................................................................................... 13

*ERBE Elektromedizin GmBH v. Canady Technology LLC*,
   629 F.3d 1278 (Fed. Cir. 2010) ..................................................................... 15

*FTC v. Actavis, Inc,*,
   133 S.Ct. 2223 (2013) ................................................................. 1, 3, 10, 11

*Honeywell Intern. Inv. V. Universal Avionics Systems Corp.*,
   488 F.3d 982 (Fed. Cir. 2007) ........................................................................ 1

*Illinois Tool Works v. Independent Inc.*,
   547 U.S. 28 (2006) ........................................................................................... 4

*In re Neurontin Antitrust Litig.*,
    MDL No. 1479 (D. N.J. August 28, 2009) ................................................................. 10

*Kobe, Inc. v. Demsy Pump Co.*,
    198 F.2d 416 (10th Cir. 1952) ..................................................................................... 13

*Meredith Corp. v. SESAC, LLC*,
    2011 WL 856266 (S.D.N.Y. March 9, 2011) ................................................................. 4

*Midwestern Machinery Co., Inc. v. Northwest Airlines, Inc.*,
    392 F.2d 265 (8th Cir. 2004) ....................................................................................... 16

*Nobelpharma AB v. Implant Innovations, Inc.*,
    141 F.3d 1059 (Fed. Cir. 1998) ...................................................................................... 1

*Princo Corp. v. ITC*,
    616 F.3d 1318 (Fed. Cir. 2010) ..................................................................................... 17

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*,
    508 U.S. 49 (1993) ......................................................................................................... 14

*SCM Corp. v. Xerox Corp.*,
    645 F.2d 1195 (2d Cir. 1981) .................................................................................. 13, 16

*United States v. Besser Manufacturing Co.*,
    96 F.Supp. 304 (E.D.Mich. 1951) ................................................................................. 13

*United States v. E.I. du Pont de Nemours & Co.*,
    353 U.S. 586 (1957) ....................................................................................................... 16

*United States v. Singer Mfg. Co.*,
    374 U.S. 174 (1963) ....................................................................................................... 12

*Waugh Chapel South LLC v. United Food & Commercial Workers Union Local 27*,
    728 F.3d 354 (4th Cir. 2013) ....................................................................................... 14

## INTRODUCTION

Capital One's Opposition to Intellectual Ventures' Motion to Strike or Dismiss Amended Antitrust Counterclaims 11, 12 and 13 and Motion to Dismiss Eighth Affirmative Patent Misuse Defense ("Opposition," Doc. 120) is as lacking in substance as its antitrust counterclaims and patent misuse defenses (collectively "antitrust claims"), and Capital One plays as fast and loose with the law in its Opposition as it does with the claims themselves.   It begins with Capital One's incorrect assertion that Federal Circuit law is not controlling as to its antitrust claims[1], and continues through its assertion that "[t]he Supreme Court expressly held this past summer in *FTC v. Actavis, Inc,,* 133 S.Ct. 2223 (2013), that a patentee's exercise of its rights under the patent laws may be anticompetitive under traditional antitrust principles.[2]   As established in Intellectual Ventures' opening brief in support of its motion to dismiss, Doc. 105, Capital One's antitrust claims and patent misuse defense are legally unsupported and if accepted would broaden the scope and reach of the antitrust laws beyond anything seen to date.

In 30 pages, Capital One never resolves the paradox of its patent misuse pleadings, namely how Intellectual Ventures' assertion of any number of irrelevant, invalid, unenforceable and non-infringed patents can convey monopoly power.   And Capital One nowhere deals with the fact that it has been sued precisely once, on five patents, not repeatedly on 3,500 patents. And despite the invitation to do so in Intellectual Ventures' opening brief, Capital One nowhere points to even one instance of Intellectual Ventures knowingly asserting an invalid patent or a single instance of Intellectual Ventures demanding or collecting a royalty for an invalid patent.

---

[1]  Capital One mis-cites two federal Circuit cases for the proposition that "Fourth Circuit law, however, applies to Capital One's antitrust claims." (Opposition at p. 5) But the key "questions about whether conduct in procuring or enforcing a patent is sufficient to strip a patentee of its immunity from the antitrust laws is decided on Federal Circuit law."   *Honeywell Intern. Inv. V. Universal Avionics Systems Corp.*, 488 F.3d 982, 1000-1001 (Fed. Cir. 2007), *quoting Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1067 (Fed. Cir. 1998).   As pointed out in Intellectual Ventures' Motion to Dismiss (Doc. 105) at p.17, *Noblelpharama* was decided *en banc* on this issue.   141 F.3d 1059 at fn. 5.

[2]  See section II (c), infra.

Consequently, Capital One's Eighth Affirmative defense for Impermissible Collection of Royalties from Invalid Patents must be dismissed.

Capital One's Monopolization Claims must be dismissed because, among other things, they fail to allege a plausible relevant market or Intellectual Ventures' share of it.   Indeed, were the relevant market Capital One pleads real, Intellectual Ventures' share of it would be anywhere from ***one-sixth to one thirty-fourth of the minimum share***[3] required for monopolization or attempted monopolization.   And Capital One fails to explain how patents that have nothing to do with each other, such as one patent that covers ATM envelope free deposit technology and another that reads on data security, can be in the same relevant market.   Nor does Capital One explain how even a hoard of "weak" patents can convey monopoly power.   Capital One's Monopolization Claims must be dismissed, as must Capital One's Thirteenth Counterclaim for "Unlawful Asset Acquisition in Violation of Section 7 of the Clayton Act," which suffers from many of the same fatal defects.

## ARGUMENT

## I.   CAPITAL ONE HAS NOT PLED "PLAUSIBLE" CLAIMS FOR RELIEF.

Capital One's antitrust claims are not just implausible, they are fanciful.   Even if one were to accept as plausible Capital One's contention that there is a relevant market defined as "the ex post market for technology used to provide commercial banking services in the United States," which Intellectual Ventures has shown falls far short of plausibility because it contains patents which are not substitutes for one another, Capital One fails to allege Intellectual Ventures' purported market share.   This is no accident because Intellectual Ventures purported 3,500 patents in that "relevant market" could not exceed 8.5% of that market and more plausibly would be less than 1.5%.

None of the acts alleged to be monopolistic, alone or in combination, plausibly could violate the antitrust laws.   And Intellectual Ventures' acquisition of 3,500 patents could not

---

[3] See Section II B (1), infra.

violate the antitrust laws because it is not a manufacturer whose purchase of patents could

exclude its competitors.   Finally, Capital One's patent misuse defense fails and must be struck

because it is not based on misuse of the patents in suit but rather is based implausibly and

impermissibly on Intellectual Ventures' alleged misuse of its portfolio of patents, all but five of

which are not at issue in this case.

## II.    CAPITAL ONE HAS NOT ALLEGED A PLAUSIBLE CLAIM FOR MONOPOLIZATION.

### A.    Capital One Has Not Identified a Plausible Antitrust Market

As with Capital One's assertions that Federal Circuit law is not relevant to its antitrust

claims (it is controlling as to most relevant issues) and that *FTC v. Actavis* stands for the

proposition that a patentee's unilateral exercise of its patent rights can violate the antitrust laws

absent *Walker Process* or other fraud in the procurement or enforcement of the patent (it cannot),

Capital One's assertion that *Eastman Kodak Co. v Image Technical Servs., Inc.*,

504 U.S. 451 (1992) somehow helps its "relevant market" definition and establishes that it could

be "locked into" using Intellectual Ventures' patents is ridiculous.

*Kodak* involved Kodak's ***change in its policy*** of selling spare parts to Independent

Service Organizations ("ISO's") after its customers had already purchased Kodak copiers in

reliance on the availability of getting spare parts and service from ISO's, which depended on

getting those parts from Kodak.   Those customers were arguably "locked in" to Kodak spare

parts since spare parts for other machines would not work in their Kodak copies.   *Id.* at 457-58.

And Kodak had nearly 100% of the parts market and 80% to 95% of the service market for its

own copiers.   *Id.* at 481.   Since the Court noted that over two-thirds of a market is a monopoly,

*id.*, and since the change in policy could have been for an anti-competitive purpose (to

monopolize the service and parts markets), summary judgment in favor of Kodak had to be

reversed.

Here, however, Intellectual Venture did not change any policy, and Capital One does not allege that it changed its behavior in response to anything Intellectual Ventures said or did. Capital One's assertion that it is "locked in" to practicing the patents that it practices is absurd. If practicing a patent locks a user into a patent for antitrust purposes, then every patent would confer monopoly power, a conclusion precluded both by the Patent Act, 35 U.S.C. §272(d)(3), and the Supreme Court's decision in *Illinois Tool Works v. Independent Inc.,* 547 U.S. 28, 42-43 (2006).

Capital One's reliance on *Broadcom Corp. v. Qualcomm, Inc.*, 501 F.3d 297, 315 (3rd Cir. 2007) (Doc. 120 at p.8) and *Apple, Inc. v. Motorola, Inc.*, 869 F.Supp. 2d 901, 913 (N.D.Ill 2012), is (if possible) even less availing.   Both stand for the unremarkable proposition that a patent can confer monopoly power if it is adopted by and becomes essential to a standard.   It is also not a novel proposition that a patent owner can unlawfully monopolize or attempt to monopolize by falsely promising to license a patent on Fair Reasonable and Non-Discriminatory ("FRAND") terms, and then breaking its FRAND promise after the patent gains monopoly power by being adopted as standards-essential.

Capital One notes in footnote 4 (Doc. 120) that "IV does not assert any standard essentials patents," but says that this is somehow irrelevant to its antitrust claims.   But it is precisely the adoption of a patent as "standard essential" that converts it from one with no monopoly power to one which has such power.   Capital One's admission that none of the patents asserted by Intellectual Ventures is "standard essential" dooms its claim that they somehow confer monopoly power.

Capital One's heavy reliance on the unpublished district court decision in *Meredith Corp. v. SESAC, LLC*, 2011 WL 856266 (S.D.N.Y. March 9, 2011), is just grasping at straws.   There

the challenged conduct was to SESAC's refusal to license performance rights to music (SESAC was a smaller version of ASCAP and BMI) except by blanket license.   The plaintiffs claimed that they were "locked in," or required to obtain, licenses to SESAC music because the third party programming they obtained contractually required them to obtain licenses to SESAC music. Since non-SESAC music was not a substitute for SESAC music already embedded in third party programs (an ASCAP or BMI license would not be a substitute for a SESAC license if the music was licensable by SESAC and not by ASCAP or BMI), the court held that there could be a relevant market comprised of only SESAC music.   And since SESAC was the only source for SESAC licensed music, it could have had monopoly power in a relevant market, defined as the market for SESAC music.

Capital One says these cases are relevant to its antitrust claims, despite no allegation that Capital One is contractually obligated to license Intellectual Ventures' patents and despite no allegation that Intellectual Ventures' patents are standards-essential, because Capital One claims it is locked into practicing the patents it practices.   The problem with Capital One's argument is that it proves far too much, since everyone who offers a product or service is locked into practicing the patents that its product or service practices, to the same extent that Capital One claims to be.   And that is true for every patent, not just for standards-essential patents.   This means that accepting Capital One's argument requires overturning Congress' determination that patents are not presumed to convey market power for patent misuse purposes, 35 U.S.C. §272(d)(3), and the Supreme Court's decision to the same effect for antitrust purposes in *Illinois Tool Works v. Independent Inc.,* 547 U.S. 28, 42-43 (2006).

Capital One tries to salvage an argument that its antitrust claims do not require this Court to overturn a Congressional statute and overrule the Supreme Court by saying that it is the

5

aggregation of patents by Intellectual Ventures, and not the patents themselves, which gives

market power.   But what Capital One really means is that absent aggregation, it could ignore all

of the patents owned by everyone and infringe at will because: (1) "Patent enforcement is

expensive and invites countersuit"; (2) "for most patents, the likelihood of success is low," and

(3) the "owners of disaggregated patents properly earn royalties tied to the incremental value of

their claimed technologies," i.e., too low to justify enforcement.   (See Doc 120 at p. 10).   But

Capital One nowhere explains how the aggregation of enough patents to make enforcement

economically sensible can violate the antitrust law.   In short, Capital One has not identified a

plausible antitrust market.

     **B.    Capital One Has Not Begun Adequately to Allege Market Share**

          **1.    Capital One Alleged Neither Market Share nor the Two Types of Direct Evidence of Monopoly Power Which Can Excuse a Market Share Allegation.**

Capital One claims that Intellectual Ventures misstated the Fourth Circuit requirement

that it plead Intellectual Venture's market share, arguing that *Dickson v. Microsoft Corp.*, 309

F.3d 193 (4th Cir. 2002) only requires a pleading of market share or a conclusory pleading of

market power.   Capital One is wrong.   The Fourth Circuit said that "[a]fter identifying the type

of possible harm to competition alleged, we must proceed 'to determine whether that harm is not

only possible but likely and significant,' which requires 'examination of market circumstances,'

including market power ***and*** share."   309 F.3d at 206 (emphasis supplied, some internal citations

omitted).   In fact, the dissent criticized the majority for requiring the plaintiff to plead market

share:   "According to the majority, Gravity has not adequately pled the second element, an

unreasonable restraint of trade, because Gravity failed to plead the market shares of the OEMs."

*Id.* at 218.   In short, the Fourth Circuit requires pleading market share *and* market power, and

the complaint in Dickson was dismissed because it pled *neither*.

Capital One is correct that courts have held that evidence of market share is not required where there is direct evidence of monopolization, but fails to note that this requires "direct evidence of control over prices in the relevant market and/or the actual exclusion of competition from the relevant market." ABA, *Antitrust Law Developments* (Sixth) (2007) at p. 229 and cases cited therein. Capital One alleges no direct evidence of control over prices (since neither Capital One nor any other bank has taken a license to any Intellectual Ventures' patent, how could it?) nor exclusion of competition (there is no allegation of any exclusion, much less who was excluded). Absent such direct evidence of control over prices or actual exclusion in a relevant market, evidence of market share is required:

> Many lower courts continue to regard the defendant's market power as the starting point in assessing whether it possesses monopoly power, while others consider market share and entry barriers simultaneously. A market share in excess of 70 percent generally establishes a prima facie case of monopoly power, at least with evidence of substantial barriers to entry and evidence that existing competitors could not expand output. In contrast, courts virtually never find monopoly power where market share is less than about 50 percent. The greatest uncertainty exists when market shares are between 50 percent and 70 percent.

Id. at p. 233-34.

The reason that Capital One runs, but cannot hide, from its obligation to allege Intellectual Ventures' share of the relevant market is that Intellectual Ventures' share would be far too small to sustain a Section 2 claim, even if Capital One's market definition were plausible. Accepting for the moment that there could be a relevant market defined as "the ex post market for technology used to provide commercial banking services in the United States," Capital One's failure to allege Intellectual Ventures' purported share of that purported market is no accident, because Intellectual Ventures' share of that market could not mathematically exceed 8.5% and more plausibly would be less than 1.5%.

The Patent & Trademark Office ("PTO") has issued 41,734 unexpired patents in classification 705, the classification for "data processing: financial business practice,

management, or cost/price determination.   (Declaration of Nickolas Bohl in Support of

Plaintiffs' Motion to Dismiss Counterclaims ("Bohl Decl.") at ¶ 10.)   If all of Intellectual

Ventures' purported 3,500 financial patents were in classification 705, the narrowest

classification which encompasses Capital One's purported relevant market, Intellectual Ventures

market share would be less than 8.5% of the 43,734 unexpired patents in that classification

(3,500 divided by 43,734).   But the eleven patents Intellectual Ventures has asserted against

Capital One and other banks do not all fall in class 705.   In fact, they fall in eight different

classes. (Bohl Decl. at ¶6.)   Those classifications have 237,387 unexpired patents (Bohl Decl. at

¶10), so Intellectual Ventures' share of a market more appropriately (but still wrongly) defined

by all of the classes of the patents Intellectual Ventures has asserted against banks would be less

than 1.5% (3,500 divided by 237,387).   No court that we are aware of has allowed a Section 2

case to proceed where the defendant has less than a 50% market share, to say nothing of a market

share of 8.5% or 1.5%.

> **2.    Capital One's Monopolization Claim Requires that Intellectual
> Ventures' Patents Be Valid and Infringed**

Capital One's response to Intellectual Ventures' argument that the accumulation of 3,500

patents, which are alleged to be irrelevant, invalid, unenforceable and not infringed, cannot give

monopoly power is … nothing.   Capital One just repeats its allegations and then says,

implausibly, "[w]ith the benefit of discovery, Capital One will prove that IV has acquired

otherwise-nonexistent monopoly power using weak patents."   (Opposition, Document 120 at p.

13. )   But even for a bank, 3,500 times zero market power still must be zero.   And the

requirement that a *plausible* antitrust claim be pled **before** expensive and disruptive discovery is

permitted is precisely the rationale behind the Supreme Court's requirement that an antitrust

pleading be plausible in order to survive a motion to dismiss.   *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 558 (2007) ("[T]he costs of modern federal antitrust litigation and the increasing

caseload of the federal courts counsel against sending the parties into discovery when there is no

reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint." (citations omitted).)   Capital One should not be allowed to put Intellectual Ventures to the expense of providing, and this Court to the trouble of managing, extensive antitrust discovery based on Capital One's hope that there is an antitrust claim hiding out there somewhere.

### C.    Capital One Has Not Plausibly Alleged that Intellectual Ventures Acquired Monopoly Power, Willfully or Otherwise

Capital One asserts that alleging five acts by Intellectual Venture that are all lawful under the patent and antitrust laws can somehow produce unlawful monopolization.   To support its contention that five lawful acts can be somehow transmogrified into one unlawful one, Capital One primarily relies on *Continental Ore Co. v. Union Carbide and Carbon Corp.*, 370 U.S. 690 (1962).   *Continental Ore,* however, has nothing to do with this case.

*Continental Ore* involved "several efforts which Continental made to enter and maintain itself in the vanadium business, all of which were allegedly frustrated by defendants' Sherman Act violations…." *Id.* at 694.   "Continental's fundamental claim throughout was that inadequate supplies of vanadium oxide were available to it and its associates, and that respondents' alleged Sherman Act violations caused or contributed to this shortage." *Id*. at 697.   The statement quoted by Capital One beginning "[T]he Court of Appeals approached [plaintiff's] claims as if they were five completely separate and unrelated lawsuits" (Opposition, Doc. 120, at p. 13) simply went to the uncontroversial proposition that the exclusionary effect of a series of ***related transactions*** had to consider all the transactions rather than considering each in a vacuum.

But here, each of the alleged acts by Intellectual Ventures was itself lawful, and were not a series of related transactions which could be aggregated in some way to make a collective whole.   Capital One nowhere explains how (1) an acquisition of an "enormous quantity" of

patents with (2) alleged deliberate concealment of them with (3) a lawsuit which is alleged to be but does not begin to meet the criteria for "sham litigation" with (4) alleged assertion of vague and ambiguous patents with (5) anticipated serial litigation is analogous to a set of transactions that excluded *Continental Ore* from a market.   The problem, of course, is that the acts alleged in Continental Ore could be legal if by a non-monopolist but illegal if by a monopolist, whereas the conduct alleged by Capital One is legal whether or not Intellectual Ventures is a monopolist.

   *City of Mishwaka v. Am. Elec. Power Co.*, 616 F.2d 976, 986 (7th Cir. 1980), relied on by Capital One (Opposition, Doc. 120, at p. 13), is more of the same.   The very next sentence after the sentence quoted by Capital One ending with "monopoly broth that produces the unsavory flavor" is "[w]e have recognized previously that "(t)here are kinds of acts which would be lawful in the absence of monopoly but, because of their tendency to foreclose competitors from access to markets or customers or some other inherently anticompetitive tendency, are unlawful under § 2 if done by a monopolist . . . ."   But unlike the acts alleged in *City of Mishwaka*, the alleged acts of monopolization by Intellectual Ventures are legal even if done by a monopolist.   The same is true of *In re Neurontin Antitrust Litig.*, MDL No. 1479, 2009 WL 2751029 (D. N.J. August 28, 2009).

   Capital One attempts to refute Intellectual Ventures' contention that it cannot violate the antitrust laws if its conduct stays within the scope of its patents by claiming that "[t]he Supreme Court expressly held this past summer in in *FTC v. Actavis, Inc,*, 133 S.Ct. 2223 (2013), that a patentee's exercise of its rights under the patent laws may be anticompetitive under traditional antitrust purposes."   (Opposition, Doc. 120, at p. 4, discussed at more detail at pp. 14-15.) Capital One is wrong again.

*FTC v. Actavis* arose under the Federal Trade Commission Act and relates to whether *an agreement* between a pharmaceutical patent holder and a would-be generic competitor that, in return for a share of the patent holder's profits, the generic competitor would stay out of the market, could violate Section 1 (not Section 2) of the Sherman Act.   The court first noted that "[a]pparently most if not all reverse payment settlement agreements arise in the context of pharmaceutical drug regulation, and specifically in the context of suits brought under statutory provisions allowing a generic drug manufacturer (seeking speedy marketing approval) to challenge the validity of a patent owned by an already-approved brand-name drug owner."   133 S.Ct. at 2227.   And contrary to Capital One's assertion to the contrary, the Supreme Court expressly held that the patent statute does not authorize these "reverse payment" settlements:

> What *does* appear novel are the dissent's suggestions that a patent holder may simply 'pa[y] a competitor to respect its patent' and quit its patent invalidity or noninfringement claim without any antitrust scrutiny whatever, *post,* at 2228, and that 'such settlements ... are a well-known feature of intellectual property litigation,'*post,* at 2243. Closer examination casts doubt on these claims. The dissent does not identify any patent statute that it understands to grant such a right to a patentee, whether expressly or by fair implication.

*Id.* at 2233.   On the contrary,

> [i]n the traditional examples cited above, a party with a claim (or counterclaim) for damages receives a sum equal to or less than the value of its claim.   In reverse payment settlements, in contrast, a party with no claim for damages (something that is usually true of a paragraph IV litigation defendant) walks away with money simply so it will stay away from the patentee's market. That, we think, is something quite different.

*Id.* This is because the key question in determining whether acts involving a patent can violate the antitrust laws is "whether 'the patent statute specifically gives a right" to restrain competition in the manner challenged," *id.* at 2231 (citation omitted), which is not true of reverse-payment settlements, but is true of the alleged acts of monopolization by Intellectual Ventures.

So Capital One's assertion that "the anticompetitive harm fell entirely inside the scope of the patent" in *ITC v. Activis* is false, because the Patent Act does not authorize reverse-payment settlements.   Acts which come entirely within the scope of a patent were and are immune from antitrust liability.   And as established by Intellectual Ventures in its opening brief, Doc. 105, none of the acts alleged by Capital One, separately or collectively, could violate the antitrust laws even had Capital One pled a plausible relevant market and Intellectual Ventures' share of it, because they come entirely within the scope of Intellectual Ventures' patents.

### 1.    IV's Patent Aggregation Is Not Anticompetitive.

Capital One claims that several cases, including one cited by Intellectual Ventures, stand for the proposition that "ex post patent aggregation *of the kind that Capital One has alleged* can constitute monopolization under Section 2." (Opposition, Doc. 120, at p. 15 (emphasis supplied").)   True as to the remainder of the sentence; false as to "of the kind that Capital One has alleged," because all of the cases it cites relate to the acquisition of patents by a company with the intent to use the exclusionary power of the patents *to restrain its competitors*.   For example, in *United States v. Singer Mfg. Co.*, 374 U.S. 174 (1963) (discussed at Opposition, Doc 120, at p. 15), the Court said:

> First it may be helpful to set out what is not involved in this case. There is no claim by the Government that it is illegal for one merely to acquire a patent in order to exclude his competitors; or that the owner of a lawfully acquired patent cannot use the patent laws to exclude all infringers of the patent; or that a licensee cannot lawfully acquire the covering patent in order better to enforce it on his own account, even when the patent dominates an industry in which the licensee is the dominant firm. Therefore, we put all these matters aside without discussion.

> What is claimed here is that Singer engaged in a series of transactions with Gegauf and Vigorelli for an illegal purpose, i.e., to rid itself and Gegauf, together, perhaps, with Vigorelli, of infringements by their common competitors, the Japanese manufacturers. The Government claims that in this respect there were an identity of purpose among the parties and actions pursuant thereto that in law amount to a combination or conspiracy violative of the Sherman Act. It claims that this can be established under the findings of the District Court.

*Id.* at 189.    The language cited by Capital One (Opposition, Doc. 120, p. 15) from *SCM Corp. v. Xerox Corp.*, 645 F.2d 1195 (2d Cir. 1981) also deals with the acquisition of a patent by a manufacturer to enjoin its competitor.    The whole paragraph paraphrased by Capital One reads:

> Patent acquisitions are not immune from the antitrust laws. Surely, a §2 violation will have occurred where, for example, the dominant competitor in a market acquires a patent covering a substantial share of the same market that he knows when added to his existing share will afford him monopoly power. See generally *Kobe, Inc. v. Dempsey Pump Co.*, 198 F.2d 416 (10th Cir.), cert. denied, 344 U.S. 837, 73 S.Ct. 46, 97 L.Ed. 651 (1952); *United States v. Besser Manufacturing Co.,* 96 F.Supp. 304, 310-11 (E.D.Mich. 1951), aff'd, 343 U.S. 444, 72 S.Ct. 838, 96 L.Ed. 1063 (1952). That the asset acquired is a patent is irrelevant; in such a case the patented invention already has been commercialized successfully, and the magnitude of the transgression of the antitrust laws' proscription against willful aggregations of market power outweighs substantially the negative effect that the elimination of that class of purchasers for commercialized patents places upon the patent system.

*Id.* at 1205.    And *Kobe, Inc. v. Demsy Pump Co.*, 198 F.2d 416, 425 (10th Cir. 1952), also involved a manufacturer using its patents to exclude a competitor:

> We have no doubt that is there was nothing more than the bringing of the infringement action, resulting damages could not be recovered, but that is not the case. The facts as hereinbefore detailed are sufficient to support a finding that although Kobe believed some of its patents were infringed, the real purpose of the infringement action and the incidental activities of Kobe's representatives was to further the existing monopoly and to eliminate Dempsey as a competitor. The infringement action and the related activities, of course, in themselves were not unlawful, and standing alone would not be sufficient to sustain a claim for damages which they may have caused, but when considered with the entire monopolistic scheme which preceded them we think, as the trial court did, that they may be considered as having been done to give effect to the unlawful scheme.

*Id.* at 425.    Here, Capital One is demonstrably not a competitor of Intellectual Ventures, and Intellectual Ventures expressly has not sought an injunction, and could not get one anyway under *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).    Intellectual Ventures' aggregation of patents is not anticompetitive.

**2.    IV's Alleged Concealment of Patents Cannot Violate the Antitrust Laws**

Capital One's reliance on cases involving concealing patents from standard setting organizations for the purpose of making them standard essential patents and then asserting them is misplaced, as Capital One well knows.   Indeed, Capital One acknowledges that the cases are inapposite earlier in its brief when it concedes that "IV does not assert any standard essential patents."   (Opposition, Doc. 120, at p.8, fn.4.)   There is simply no duty to disclose one's patents outside of the standard setting arena, and Capital One cites to no case holding to the contrary.

**3.    Anticipated Serial Assertion of Allegedly Weak Patents Is Not Anticompetitive**

Capital One says it does not have to plausibly plead the absence of *Noerr-Pennington* immunity because such immunity is an affirmative defense, relying principally on *Waugh Chapel South LLC v. United Food & Commercial Workers Union Local 27*, 728 F.3d 354, 360 (4th Cir. 2013).   But as Capital One admits, if "all facts necessary to the affirmative defense clearly appear on the face of the complaint," the court can adjudicate *Noerr-Pennington* immunity on a Rule 12(b)(6) defense.   *Id.*   Here, all of the facts necessary to adjudicate *Noerr-Pennington* immunity are alleged by Capital One, and Intellectual Ventures' motion to dismiss does not stray from what Capital One pleads.

Capital One asserts that it does not have to meet the test of *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49 (1993) ("*PREI*"), because Capital One's assertion of "a series of meritless patent claims" is governed by *California Motor Transport Co v. Trucking Unlimited*, 404 U.S. 508 (1972), instead.   (Opposition, Doc. 120, at p. 19).   But while the Federal Circuit has expressly not ruled on whether *PREI* or *California Motor Transport* applies to a series of legal proceedings, *ERBE Elektromedizin GmBH v. Canady*

14

*Technology LLC*, 629 F.3d 1278, 1291 (Fed. Cir. 2010), and Federal Circuit law applies, *id.* at 1291; *see* footnote 1, *supra, PREI* applies in any event because three lawsuits against the same defendant "do not constitute a whole series of legal proceedings."   *Id.* at 1291-1292. Accordingly, one case against Capital One cannot constitute a whole series of legal proceedings, and *PREI* applies.

Capital One points to no authority, because there is none, that holds that *California Motor Transport* and not *PREI* applies where separate lawsuits have been filed against unrelated entities, as are Intellectual Ventures' lawsuits against banks.   And there is only one lawsuit against Capital One, not a series or even three.   That brings this case squarely under *PREI*, not *California Motor Transport*, and Capital One's counterclaim demonstrates on its face that Intellectual Ventures' lawsuits against it comes squarely within *Noerr-Pennington* immunity as established in Intellectual Ventures' opening brief, Doc. 105, at pp. 17-24.   Intellectual Ventures' single lawsuit against Capital One, even if combined with its lawsuits against other banks, is not an act of monopolization.

> **D.     Capital One Has Not Stated a Plausible Claim for Attempted Monopolization.**

Intellectual Ventures and Capital One apparently agree on one thing:   Capital One's attempted monopolization claim rises or falls with its monopolization claim.   (*See* Opposition, Doc. 120, at p. 23.)   Because Capital One's monopolization claim fails, so too does its attempted monopolization claim.

## III.     INTELLECTUAL VENTURES DID NOT VIOLATE SECTION 7

As Intellectual Ventures established in its opening brief, Capital One's Section 7 claim, like its monopolization claim, requires an allegation of a plausible relevant market and Intellectual Ventures' share of that market. (Doc. 105, p. 27.)   Because Capital One has failed to allege either one, its Section 7 counterclaim must be dismissed.

Capital One disputes Intellectual Ventures' assertion that the determination of an acquisition's legality is at the time of acquisition, *citing United States v. E.I. du Pont de Nemours & Co.*, 353 U.S. 586, 607 (1957), for the proposition that it is determined as of the time of suit. But that is true only for a government action, not a private action such as Capital One's. *Midwestern Machinery Co., Inc. v. Northwest Airlines, Inc.*, 392 F.3d 265, 272-273 (8th Cir. 2004).   This is because unlike the four year statute of limitations for private antitrust actions, there is no statute of limitations for government antitrust actions.   *Id.*   For private antitrust actions, the legality of a patent acquisition is measured at the time of acquisition.   *SCM Corp. v Xerox Corp.*, 645 F.2d 1195 (2d Cir. 1981).

Capital One also fails to explain how the acquisition of patents by Intellectual Ventures, and not their assertion, could possibly have injured non-competitor Capital One.   The reason it does not explain how it was injured is that it was not in fact injured by Intellectual Ventures' acquisition of patents.

For all the foregoing reasons, Capital One's Clayton Act §7 claim should be dismissed with prejudice.

## IV.   <u>CAPITAL ONE HAS NOT ALLEGED ANTITRUST INJURY OR STANDING</u>

Despite the rhetoric, the only injury Capital One alleges is that it has had to defend one patent litigation.   The decision whether to litigate or license, and the attendant costs of each, results from the assertion of patents, not from any alleged antitrust violation.

Capital One speculates that had the patents not been owned by Intellectual Ventures, it would not have been sued for infringement.   But patents come with a right to assert them, and thus any injury resulting from their assertion is a product of the patent laws, not an antitrust violation.

Capital One acknowledges that it cannot have suffered antitrust injury as a competitor of Intellectual Ventures, because it is not one, but claims that it suffered antitrust injury as a purchaser.   (Opposition, Doc. 120, at p. 27.)   But Capital One is not a purchaser, and cites no

case finding that a potential purchaser, particularly one like Capital One which alleges it has no interest in buying what is on offer – a patent license – has suffered antitrust injury.

Capital One alleges that it does not want to take a license to any of Intellectual Ventures patents, and but for Intellectual Ventures' alleged unlawful acts it would not have to take a license.   Its injury presumably is that it is a forced purchaser, except that it has purchased nothing.   Capital One has not spent a dime for a patent license.   Capital One has simply suffered no antitrust injury as a non-purchaser and non-competitor.

## V.   **CAPITAL ONE'S PATENT MISUSE DEFENSE MUST BE STRUCK**

Capital One argues that it adequately pled patent misuse because the asserted patents are among the 3,500 that Intellectual Ventures supposedly misused.   But Capital One's patent misuse defense is not based on Intellectual Ventures' misuse of the patents in suit, but is expressly premised on its supposed misuse of its entire portfolio of 3,500 financial services patents. (Doc 88, Affirmative Defense 8, pp. 12-13.)   Under *Princo Corp. v. ITC*, 616 F.3d 1318, 1329 (Fed. Cir. 2010), Capital One's patent misuse defense must be struck because it is not based on misuse of the asserted patents.

## VI.   **CONCLUSION**

Because Capital One does not and cannot allege a plausible antitrust counterclaim or a patent misuse defense, Capital One's amended antitrust counterclaims 11, 12 and 13, and its eighth affirmative defense for patent misuse, must be dismissed with prejudice.


Dated:   November 13, 2013                    Respectfully submitted,

                                             */s/* Craig C. Reilly
                                             Craig C. Reilly VSB # 20942
                                             111 Oronoco Street
                                             Alexandria, Virginia 22314
                                             Tel:     (703) 549-5354
                                             Fax:     (703) 549-2604
                                             E-mail: craig.reilly@ccreillylaw.com
                                             *Counsel for Plaintiffs Intellectual Ventures*
                                             *I LLC and Intellectual Ventures II LLC*

Clayton Thompson, VSB No. 41962
Ian N. Feinberg
M. Elizabeth Day
Marc C. Belloli
FEINBERG DAY ALBERTI &
THOMPSON LLP
1600 El Camino Real, Suite 280
Menlo Park, CA   94025
Telephone:   (650) 618.4360
Facsimile:    (650) 618.4368
cthompson@feinday.com
ifeinberg@feinday.com
eday@feinday.com
mbelloli@feinday.com

*Counsel for Plaintiffs Intellectual Ventures
I LLC and Intellectual Ventures II LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 13, I filed the foregoing pleading or paper through the Court's CM/ECF system which sent a notice of electronic filing to the following attorneys for defendants:

Robert A. Angle
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia   23219
robert.angle@troutmansanders.com


TS-CapOne_IV@troutmansanders.com

Matthew J. Moore
Abbott B. Lipsky, Jr. (*pro hac vice*)
Jonathan D. Link (VSB No. 42951)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
matthew.moore@lw.com
tad.lipsky@lw.com
Jonathan.link@lw.com

Jeffrey G. Homrig
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025-1008
jeff.homrig@lw.com

Joseph H. Lee
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
joseph.lee@lw.com

Neil A. Rubin
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
neil.rubin@lw.com

Andrew J. Fossom
LATHAM & WATKINS LLP
811 Main Street, Suite 3700
Houston, TX 77002
andrew.fossom@lw.com

CAPITALONEIV.LWTEAM@lw.com

*/s/ Craig C. Reilly*
Craig C. Reilly VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
Tel: (703) 549-5354
Fax: (703) 549-2604
E-mail: craig.reilly@ccreillylaw.com
*Counsel for Plaintiffs*