UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, *et al*., | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| *v.* | ) | Case No. 1:13cv740 |
| | ) | (AJT/TCB) |
| CAPITAL ONE FINANCIAL CORP., *et al*., | ) | |
| | ) | |
| *Defendants* | ) | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION FOR A SEPARATE TRIAL ON ANTITRUST AND PATENT MISUSE ISSUES
AND TO STAY DISCOVERY ON THOSE ISSUES**

Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC, together with the

newly added "Additional Counter-Defendants," that is, Intellectual Ventures Management, LLC,

Invention Investment Fund I, L.P., Invention Investment Fund II, LLC, Intellectual Ventures

Fund 83 LLC (together, "Intellectual Ventures"), moved the Court to order bifurcation of

antitrust issues and to stay discovery on those issues (Doc. 112). Defendants (together, "Capital

One") have strenuously opposed that motion (Doc. 124). But Capital One's arguments fly in the

face of controlling law. Moreover, Capital One's suggestions about how little time is needed for

antitrust discovery, or how "efficient" a combined patent and antitrust trial would be, cannot be

credited. Indeed, those positions cannot be squared with positions that Capital One has already

taken in this case.

For example, Capital One suggests that a combined trial of all the patent issues (*e.g*.,

infringement, invalidity, and damages) and all the antitrust issues (*e.g*., market definition, market

power, anticompetitive practices, antitrust injury, and damages), would be manageable and

"more efficient" than separate trials of patent and antitrust issues (Doc. 124, *Br. Opp*. at 3, 4-10).

1

Yet, in the *Joint Discovery Plan*, Capital One represented that a trial on ***just the patent issues*** would take "approximately 15 court days to complete" (Doc. 44, *Joint Discovery Plan*, § P at 12).  And last week, Capital One filed a motion for leave to file up to five motions for summary judgment because, it argued, trying the issues of obviousness and anticipation concerning just the ***four*** patents-in-suit in one trial would "add[] confusion and complication to the already complex task the jury must perform" (Doc. 118, *Capital One Brief* at 3).  Now, however, Capital One contends that proving the invalidity of Intellectual Ventures' "entire patent portfolio" of pertinent patents—***3,500 patents***—would present no logistical challenges in trial management.  Capital One's arguments cannot withstand even slight scrutiny.

Moreover, Capital One ignores the controlling Federal Circuit authority on point (*In re Innotron Diagnostics*, 800 F.2d 1077 (Fed. Cir. 1986)), and bases its arguments on handful of district court cases.  Those cases are easily distinguished, and each was decided against the overwhelming trend in the case management practices when the accused infringer has asserted antitrust counterclaims.

Under *Innotron*, a threshold issue is whether the antitrust issues are "distinct and separable" from the patent issues asserted by Intellectual Ventures.  *Innotron*, 800 F.2d at 1086, Capital One now proves that point by repeatedly arguing that the merits of its antitrust contentions "do not depend upon" whether the four patents-in-suit are valid and infringed:

> Capital One will pursue its antitrust counterclaims ***regardless of the outcome of IV's infringement claims***.  ***The antitrust counterclaims do not depend on disposition of the infringement claims*** because a finding of infringement does not foreclose Capital One's Sherman Act claims that IV's acquisition and abuse of thousands of largely invalid patents violate the antitrust laws.

(Doc. 124, *Br. Opp*. at 7 (emphasis added); *accord* Doc. 120 at 12 ("Capital One's Monopolization Clam Does Not Depend on Infringement;" rather, it depends on the alleged

"aggregation" and assertion of thousands of "invalid" or "weak" patents).   Therefore, even though Capital One had attempted to plead its antitrust contentions to look like patent-type antitrust claims, it now emphatically states that they are not.

Instead, the antitrust counterclaims and misuse defense depend solely on Intellectual Ventures' alleged anticompetitive conduct in the alleged relevant market, and are "pure" antitrust claims.   There is no question that "pure" antitrust claims are separable and distinct by their very nature, and properly may be separated for trial.   Even when patent-type antitrust claims are asserted, as in *Innotron*, it is "standard practice" to order separate trials.   Only when patent-type antitrust claims are asserted, which depend on the invalidity, non-infringement, or unenforceability of the asserted patent, ***and*** in which the proof is "so interwoven as to preclude effective separation" would keeping both patent and antitrust issues together in one trial and one discovery period even be a proper exercise of judicial discretion.   *See In re Theodor Groz & Sohne*, Misc. No. 338, 1992 U.S. App. LEXIS 32501 (Fed. Cir. 1992) (unpublished).   Nonetheless, as the Federal Circuit made clear in *Innotron*, even when patent-type antitrust claims are asserted, separate trials are more efficient because jury confusion is avoided and any issue decided in the patent trial will be law of the case in the subsequent antitrust trial and not retried.[1]

Furthermore, as shown below, the cases on which Capital One relies all involved patent-type antitrust counterclaims which depended upon the invalidity, non-infringement, or

---

[1]  Capital One also tries use its novel misuse defense to bootstrap the antitrust counterclaims for trial with the patent claims.  Capital One's misuse defense, however, is not limited to the four asserted patents, but is based on Intellectual Ventures allegedly having "amass[ed] weak patents into a 3,500-patent monopoly" (Doc. 120 at 28).  Capital One also confirms that its misuse defense is "based on the ***same*** factual allegations" as the antitrust counterclaims (Doc. 124, *Br. Opp*. at 7 (emphasis in original)).  The misuse defense, therefore, is merely part-and-parcel of the antitrust issues, and it should be joined with the antitrust counterclaims for a separate trial.

unenforceability of the asserted patents.  Indeed, the district courts rendering those decisions allow discovery periods *far longer* than this Court and therefore can handle discovery and trial management differently.[2]

As shown in the opening brief, and herein, the Court should bifurcate the antitrust and patent misuse issues for a separate trial, and should stay discovery on antitrust issues until the trial of the patent issues has concluded.

## REPLY ARGUMENT

Prior to responding to Capital One's main points, Intellectual Ventures will respond to a few red-herring arguments, which apparently were made to color the Court's perception of Intellectual Ventures and suggest that it has acted improperly or with improper motives.

*First*, Capital One argues that "Intellectual Ventures deliberately selected this fast-moving forum to pursue its patent infringement claims against Capital One." (Doc. 124, Br. Opp. at 2).  That argument ignores the practical realities of current venue law.  Capital One is located in Virginia, and the alleged infringing activities occur here.  Had Intellectual Ventures filed anywhere else, a successful transfer motion to this District would have been likely.  *See In re TS Tech Corp.*, 551 F.3d 1315 (Fed. Cir. 2008) (issuing mandamus to district court to transfer case to district where evidence may be more conveniently obtained and alleged infringing activity took place).  Nor is there anything wrong with having selected this Court, even if Intellectual Venture's only motive had been to obtain a "fast-moving" docket.  *See Beverly Hills*

---

[2]  All the cases cited by Capital One are from slower district courts which have *average* times between filing and trial in civil cases much longer than the 10-11 months of this Court, and so those courts can manage discovery, bifurcation, and trial differently, too:  Delaware (30 months); Colorado (24 months); New Jersey (37 months); and Northern California (31 months). http://www.uscourts.gov/uscourts/Statistics/FederalCourtManagementStatistics/2013/district-fcms-profiles-june-2013.pdf (reporting statistics as of June 2013).  No doubt patent cases in those Districts take even longer.

*Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568-69 (Fed. Cir. 1994) (reversing dismissal order; *held*, non-resident patentee's decision to file action in the Eastern District of Virginia based on infringing sales in Virginia so that it may take advantage of the Court's "unique attributes" is not improper). Simply by virtue of having properly and reasonably filed here, Intellectual Ventures has not forfeited its rights to seek an orderly, fair, and just adjudication of any counterclaims asserted against it.

*Second*, Capital One suggests that Intellectual Ventures has flouted the discovery rules: "[A]fter Capital One timely filed its antitrust counterclaims, IV unilaterally and improperly refused to participate in *any* discovery on the counterclaims, despite neither seeking nor receiving a stay or protective order." (Doc. 124, *Br. Opp*. at 2). Intellectual Ventures assumes that this argument, in part, is an inadvertent error because, of course, Intellectual Ventures has filed this motion for a stay of antitrust discovery. Moreover, Intellectual Ventures did not "unilaterally and improperly refuse[] to participate in *any* discovery on the counterclaims." Intellectual Ventures *served written objections* to the scope of the first round of discovery served by Capital One, E.D.VA.CIV.R. 26(C), and then confined its responses to the patent issues. Likewise, when Capital One later served the second round of discovery aimed solely at antitrust issues, Intellectual Ventures again objected to the antitrust discovery (Doc. 99-2 – 99-4). When the responding party has served objections, it does not need to respond to the requests as to which objections have been made. *See* FED.R.CIV.P. 33(b)(3); 34(b)(2)(B); 36(a)(3); E.D.VA.CIV.R. 26(C). Intellectual Ventures has properly objected, and, despite protesting in a letter (Doc. 113-1), Capital One did not file a motion to compel to overrule those objections. Intellectual Ventures *followed the rules*, not flouted them.

Moreover, immediately after the October 25 hearing Intellectual Ventures advised Capital One that it was not going to respond the antitrust discovery but was going to file a stay motion, which it did on October 31 (Doc. 112). Again, rather than flouting the rules, Intellectual Ventures timely sought an order from the Court staying the antitrust discovery.

*Third*, Capital One makes the disingenuous argument that "IV cannot complain about such an extension [of time for antitrust discovery], having previously asked Judge Jones for a three-month extension of discovery before Capital One filed its antitrust counterclaims." (Doc. 124, *Br. Opp*. at 3 (citing Doc. 49 & 50)). Capital One would leave the Court with the wholly false impression that it was Intellectual Ventures who, after filing in a fast-paced district, then tried to obtain for itself a three-month extension of the standard discovery period. That is not what happened. As the record makes clear, the parties *jointly requested* a three-month extension that was set forth in the plan that was filed (Doc. 44, *Joint Discovery Plan*, § A at 1-2). That Intellectual Ventures then filed the accompanying motion to modify and brief seeking the jointly proposed three-month extension (Doc. 49 & 50), was solely due to Intellectual Ventures' local counsel having successfully made such motions in several other recent patent cases, and so he could quickly prepare the necessary motion papers, which he did. The previous extension motion was not a unilateral request by Intellectual Ventures.

## I.   CAPITAL ONE RELIES ON THE WRONG LAW OR INAPPOSITE CASES

As its opening gambit, Capital One ignores controlling law (*Innotron*), cites to the wrong standards (proposing Third Circuit law), and relies on inapposite cases (Doc. 124, *Br. Opp*. at 4-5). Capital One's legal analysis must be rejected.

Instead of using the *Innotron* factors, Capital One cites to a district court decision from the District of Delaware for the framework of law. In *Senorx, Inc. v. Hologic, Inc.*, 920 F. Supp.

2d 565, 568 (D. Del. 2013), the district court denied the accused infringer's motion to bifurcate liability and damages in a patent case.  This Court reached the same conclusion in another recent decision.  *See Media Rights Tech., Inc. v. Capital One Fin. Corp.*, No. 1:13cv476 (E.D. Va. Sept. 13, 2013) (Doc. 45) (order denying motion by accused infringer, Capital One, to bifurcate liability and damages).  The decision matrix for bifurcation of damages and liability, however, is far different than that for antitrust and patent issues.  In any event, the *Senorx* opinion is not governing law, and that decision sheds no light on the issues raised in this motion.

Similarly, the decision in *Quantum Loyalty Sys., Inc. v. TPG Rewards, Inc.*, No. 09-022-SLR/MPT, 2011 U.S. Dist. LEXIS 147305, 2011 WL 6652346 (D. Del. Dec. 22, 2011), is inapposite.  In *Quantum*, the district court applied Third Circuit law, instead of *Innotron*, and denied bifurcation of antitrust and patent issues because the "invalidity and unenforceability" of patent-in-suit was a basis for the accused infringer's "antitrust claims, as well as, two of its affirmative defenses."  2011 U.S. Dist. LEXIS 147305 at *14.  As Capital One has made plain, by contrast, its antitrust and misuse contentions "do not depend upon" the validity (or invalidity) of Intellectual Ventures' four patents-in-suit.  Rather, Capital One contends that it is the alleged invalidity of *3,500 other patents* that is the basis of its claim.  Thus, *Quantum* is inapposite.

Next, in *Sonobond Corp v. Uthe Tech., Inc.*, 314 F. Supp. 878 (N.D. Cal. 1970), which was decided 15 years before *Innotron*, and hardly reflects the current state of the law, the accused infringer asserted a very different sort of patent misuse defense than that asserted by Capital One.  In *Sonobond*, the accused infringer alleged that the patentee was committing patent misuse by extending "his patent monopoly to unpatented items" when requiring licensees to purchase unpatented components from the patentee as a condition to obtaining an implied license

under the patent.  That particular type of misuse defense has not been asserted here, and so *Sonobond* is factually distinguishable, and its reasoning is inapposite.

Capital One also cites to *Climax Molybdenum Co. v. Molychem, L.L.C.*, 414 F. Supp. 2d 1007 (D. Colo. 2005), but in that case, like *Quantum*, the accused infringer had asserted a patent-type antitrust claim—specifically a *Walker Process* antitrust claim—directed solely at the asserted patents.  A *Walker Process* claim arises from allegations that the asserted patent was procured by fraud.  *See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 176-78 (1965).  Capital One does not even cite to *Walker Process* to defend the validity of its claims (*see* Doc. 120), and does not allege that all 3,500 patents were procured by fraud, only that they are otherwise "invalid" or "weak" (whatever is meant by that).

Finally, Capital One's reliance on *Synopsys, Inc. v. Magma Design Automation*, No. CIVA 05-701(GMS), 2006 U.S. Dist. LEXIS 33751, 2006 WL 1452803 (D. Del. May 25, 2006), is factually distinguishable.  In that case, the district court applied Third Circuit law, instead of *Innotron*, and denied bifurcation because the accused infringer Magma's "antitrust claims are based in part on the allegation that Synopsys fraudulently-obtained two of its patents and asserted them against Magma in violation of Section 2 of the Sherman Act.  Synopsys' alleged fraud is also a centerpiece of Magma's invalidity claims."  2006 U.S. Dist. LEXIS 33751 at *11. This case, like *Climax*, involved a *Walker Process* antitrust counterclaim that depended on a finding that the patentee had fraudulently procured the asserted patent, and that the asserted patent was therefore invalid.  That is not what Capital One contends, and the reasoning in *Synopsis* does not apply.

Accordingly, Capital One relies on the wrong law, and its reasoning, therefore, urges the Court to draw the wrong conclusions.

8

## II.     CAPITAL ONE'S ARGUMENTS ARE NOT CREDIBLE

### A.     ANTITRUST DISCOVERY WILL TAKE MORE THAN "THREE MONTHS"

Capital One contends that bifurcation and a discovery-stay of antitrust issues is not needed "because a three-month extension of discovery, at most, is sufficient." (Doc. 124, *Br. Opp*. at 6.)  That contention is incredible.  Capital One's suggestion that in an "at most" three-month extension it can amass proof that *3,500* patents are invalid, and take all the discovery from thousands of third-party assignors and licensees that *Capital One has expressly demanded* (Doc. 113-1 & 99-2, 99-3, and 99-4), is so gross an exaggeration as to fall of its own weight.

Nonetheless, to hammer this point home, here are *some* of the factual issues unique to the antitrust claims that Capital One argues need to be developed during discovery:

- The "'relevant" antitrust market (Doc. 120 at 6-11).
- Whether Intellectual Ventures has and is exercising "monopoly power" to "impose an enormous licensing 'tax' upon the entire banking industry" (*Id*. at 12).
- Whether Intellectual Ventures has and is exercising "monopoly power" to "increase its pricing power in the relevant market" (*Id*.).
- Whether Intellectual Ventures has and is exercising "monopoly power" to "impose royalty rates that vastly exceed the real economic value, if any, of [its] patent portfolio" (*Id*.).
- Whether Intellectual Ventures has "acquired otherwise-nonexistent monopoly power using weak patents" (*Id*. at 12-13).
- Whether Intellectual Ventures has "willfully" acquired or sought to acquire monopoly power (*Id*. at 13-15).
- Whether Intellectual Ventures' "aggregation" of patents is anti-competitive (*Id*. at 15-16).
- Whether Intellectual Ventures has filed, or threatens to file, "serial" lawsuits asserting "weak patents" to attain market or monopoly power (*Id*. at 17-21).

None of these facts has anything to do with the patent claims, as Capital One confirms by advising the Court that it is entitled to, and will, pursue the antitrust claims even if its loses the

patent issues (*Id*. at 22).  Developing all of these facts, which will be sharply disputed, is going to take more than three months of discovery.

### B.      A COMBINED TRIAL WILL NOT BE "MORE EFFICIENT"

As shown above, Capital One has pointed out the complexity and confusion that would arise if all the patent issues were presented in one trial.  Yet, now, it argues presenting "the already complex" patent issues *plus* the admittedly "complex" antitrust issues in a single trial "will be more efficient than two separate trials."  (Doc. 124, *Br. Opp*. at 6.).  As shown immediately above, Capital One's antitrust contentions are extraordinary and extraordinarily complex.  Conducting only one trial will leave the Court and the jurors awash in disputed factual details to which must be applied esoteric legal and economic principles.  One trial will not work.

As Intellectual Ventures showed in its opening brief using the proper *Innotron* analysis, a combined trial would be unduly complex, lengthy, and confusing.  Those effects are inherent in cases in which both patent and antitrust issues are raised, such that bifurcation has become the "standard practice."  *Innotron*, 800 F.2d at 1087.  Since Capital One has previously complained about the complexity of trying the infringement and invalidity issues in one trial, it cannot be heard to argue now that adding the admittedly complex antitrust issues to an "already complex" patent trial will somehow simplify the jury's fact-finding tasks, improve the jury's comprehension, and facilitate the jury's application of esoteric legal and economic principles to those numerous, diverse, and detailed facts.  Once again, Capital One's arguments fall of their own weight.

### C.      THERE WOULD BE NO SUBSTANTIAL OVERLAP OF EVIDENCE

Capital One strains to argue that there will be any substantial overlap of evidence.  The cases on which it relies (*Climax*, *Synopsys*, and *Quantum*) all involved patent-antitrust

counterclaims directed solely at the asserted patents, in which the overlap is inherent because the antitrust claims depend upon the invalidity of the asserted patent. Here, however, Capital One's antitrust counterclaims ***are not*** patent-type antitrust claims (like *Walker Process*), and as Capital One has repeatedly argued, its antitrust contentions "do not depend upon" the validity or infringement of the four asserted patents. Instead, Capital One seeks to prove that Intellectual Ventures' "aggregation" of thousands of other "invalid" and "weak" patents, and the assertion of "wave after wave" of "sham" lawsuits constitute anticompetitive conduct. There will be ***no*** substantial overlap of evidence between the patent and antitrust issues as would preclude ordering separate trials.

### D. BIFURCATION WILL PREVENT PREJUDICE TO INTELLECTUAL VENTURES AND WILL PREVENT JURY CONFUSION

Capital One disclaims any "tactical" motive in its filing, and argues that, therefore, Intellectual Ventures cannot possibly be prejudiced by a single trial. Even if Capital One's motives were pure, that argument is a *non sequitur*. The infliction of unnecessary antitrust discovery expenses on Intellectual Ventures is one prejudicial effect—but there are others that have been repeatedly cited by the Courts as grounds for bifurcation of antitrust and patent issues. The principal prejudice to Intellectual Ventures from a single trial is the undeniable risk of jury confusion over the course of a multiple-week trial of the distinct and separable antitrust contentions. *See Innotron*, 800 F.2d at 1085 (finding that expedition, convenience, and avoidance of prejudicial confusion all were factors favoring bifurcation). Thus, even if they were not asserted for "tactical" reasons, ordering a separate trial on Capital One's antitrust counterclaims is warranted to avoid prejudice to Intellectual Ventures and to avoid jury confusion.

By contrast, the Court should reject Capital One's claim that it will be prejudiced because it will have to endure two trials based on claims and counterclaims that all "arise out of the same core set of facts." (Doc. 124, *Br. Opp*. at 9.)  That is not so—either in general or in this case.  By their very nature the antitrust and patent claims are largely different—even when patent-type antitrust claims are involved—but, in any event, no fact issues from the patent trial would be retried in the antitrust trial.  *Innotron*, 800 F.2d at 1086.  Second, antitrust and patent claims are "distinct and separable," such that having separate trials would not violate the Seventh Amendment.  *Id*.  Third, there is no danger to Capital One of "inconsistent verdicts" because the issues in this action are "distinct and separable."  *Id*.  Moreover, to the extent that facts from the patent case are pertinent to the antitrust issues, as in *Innotron*, the jury's verdict will be applied law of the case in the antitrust trial.  *Id*.  In short, there will be no prejudice to Capital One.  And as outlined above, the antitrust claims involve complex factual inquiries that have no connection to the patent claims, or even the alleged invalidity of the four asserted patents.  Capital One's antitrust contentions are directed at Intellectual Ventures' "entire patent portfolio" of allegedly 3,500 patents.

Finally, Capital One will not be prejudiced if there is a finding that the four asserted patents are not invalid and are infringed, and the jury awards a reasonable royalty.  At that time, Capital One can request that a separate judgment not be entered.  If Capital One prevails in the second trial, the jury's award of patent damages may be wiped out.

There is simply no prejudice to Capital One from proceeding in two trials.

## III.    A STAY IS WARRANTED IF BIFURCATION IS ORDERED

In its final argument, Capital One argues that antitrust discovery should not be stayed even if separate trials are ordered.  That argument is wrong on at least two levels.  First, Capital

One again relies on inapposite cases.  Second, delaying the patent trial to allow what will surely be a lengthy, costly, and contentious discovery period would not be good case management.

The first case Capital One relies on is easily distinguished.  In *Ecrix Corp. v. Exabyte Corp.*, 191 F.R.D. 611 (D. Colo. 2000), separate trials were ordered, but antitrust discovery was not stayed because discovery had not yet begun on any issue ***and*** the antitrust counterclaim for prosecuting "objectively baseless" litigation was factually interrelated with the patent claims— indeed, the district court noted that if the patentee prevailed in the first trial, there would be no antitrust liability as a matter of law.  That is not what Capital One claims, as it contends that if will be permitted to pursue its antitrust contentions even if it loses the patent trial.  Thus, the decision in *Ecrix* not to stay discovery was based on factors not present here.

Likewise, the facts and circumstances, as well as the reasoning, in *Dentsply Int'l, Inc. v. New Tech. Co.*, No. 96-272 MMS, 1996 U.S. Dist. LEXIS 19846, 1996 WL 756766 (D. Del. Dec. 19, 1996), are inapposite.  In that case, the district court granted bifurcation, but did not stay antitrust discovery because the accused infringer's "sham litigation" antitrust counterclaim depended upon a finding of the non-infringement or invalidity of the asserted patent, rendering the patent claims and antitrust counterclaims factually interrelated for discovery.  Those facts and circumstances are not found here, and so the reasoning in *Dentsply* does not apply.

Finally, in *Ricoh Co. v. Katun Corp.*, No. 03-2612 (WHW), 2005 U.S. Dist. LEXIS 46493 (D.N.J. July 14, 2005), the district court ordered separate trials because "the antitrust counterclaims presented raise certain complex issues that would likely confuse a jury of laypersons if they were required to consider the validity of Plaintiffs' patent claims and the truth of Defendants' [antitrust] assertions simultaneously;" however, the district court also stayed discovery on antitrust damages, but not on antitrust liability, apparently because the accused

infringer asserted patent-type antitrust claims based on interrelated facts. *Id*. at *5. Once again, those facts and circumstances are not present here, and the reasoning in *Ricoh* does not apply.

As shown in the opening brief, a stay of antitrust discovery is warranted. Otherwise, it would overwhelm the patent case with lengthy, contentious, expensive, and far-ranging discovery.

## CONCLUSION

For the reasons argued above and in the opening brief, the motion for separate trials and a stay of antitrust discovery should be granted.

Dated: November 14, 2013

Respectfully submitted,

/s/ Craig C. Reilly
Craig C. Reilly VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
TEL:   (703) 549-5354
FAX:   (703) 549-2604
E-MAIL: craig.reilly@ccreillylaw.com
*Counsel for Plaintiffs and the New*
*Intellectual Ventures Parties*

Ian Feinberg
Elizabeth Day
Marc Belloli
Clayton Thompson
FEINBERG DAY ALBERTI & THOMPSON LLP
1600 El Camino Real, Suite 280
Menlo Park, CA  94025
(650) 618-4364 (T)
(650) 618-4368 (F)
cthompson@feinday.com
ifeinberg@feinday.com
eday@feinday.com
mbelloli@feinday.com
*Counsel for Plaintiffs, Intellectual Ventures I LLC*
*and Intellectual Ventures II LLC,*
*and the New Intellectual Ventures Parties*

14

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2013, I filed the foregoing pleading or paper through the Court's CM/ECF system which sent a notice of electronic filing to the following attorneys for defendants:

| | |
|---|---|
| Robert A. Angle<br>  robert.angle@troutmansanders.com<br>Dabney J. Carr, IV<br>  dabney.carr@troutmansanders.com<br>Nicholas R. Klaiber<br>  nicholas.klaiber@troutmansanders.com<br>TROUTMAN SANDERS LLP<br>1001 Haxall Point<br>Richmond, Virginia  23219 | Mary Catherine Zinsner<br>  mary.zinsner@troutmansanders.com<br>S. Mohsin Reza<br>  mohsin.reza@troutmansanders.com<br>TROUTMAN SANDERS LLP<br>1660 International Drive, Suite 600<br>McLean, VA  22102-3805 |
| Andrew J. Fossom (*pro hac vice*)<br>andrew.fossum@lw.com<br>LATHAM & WATKINS LLP<br>811 Main Street, Suite 3700<br>Houston, TX 77002 | Jeffrey G. Homrig (*pro hac vice*)<br>jeff.homrig@lw.com<br>LATHAM & WATKINS LLP<br>140 Scott Drive<br>Menlo Park, CA 94025-1008 |
| Joseph H. Lee (*pro hac vice*)<br>joseph.lee@lw.com<br>LATHAM & WATKINS LLP<br>650 Town Center Drive, 20th Floor<br>Costa Mesa, CA 92626-1925 | Neil A. Rubin (*pro hac vice*)<br>neil.rubin@lw.com<br>LATHAM & WATKINS LLP<br>355 South Grand Avenue<br>Los Angeles, CA 90071-1560 |
| | Matthew J. Moore (*pro hac vice*)<br>matthew.moore@lw.com<br>Abbott B. Lipsky, Jr. (*pro hac vice*)<br>tad.lipsky@lw.com<br>Jonathan D. Link<br>Jonathan.link@lw.com<br>LATHAM & WATKINS LLP<br>555 Eleventh Street, NW, Suite 1000<br>Washington, D.C. 20004-1304 |

*/s/ Craig C. Reilly*

Craig C. Reilly, Esq. VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
TEL (703) 549-5354
FAX (703) 549-2604
craig.reilly@ccreillylaw.com
*Counsel for plaintiffs and the New Intellectual Ventures Parties*