IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

INTELLECTUAL VENTURES I        )
LLC, *et al.*,                 )
                               )
            Plaintiffs,        )
                               )
      v.                       )        Civil Action No. 1:13cv0740 (AJT/TCB)
                               )
CAPITAL ONE FINANCIAL          )
CORPORATION, *et al.*,         )
                               )
            Defendants.        )
_____)

## MEMORANDUM OPINION

On April 22, 2014, final judgment in this patent infringement action was entered in favor of Capital One Financial Corporation, Capital One Bank (USA), N.A., and Capital One, N.A. (collectively "Capital One" or "defendants") and against Intellectual Ventures I, LLC and Intellectual Ventures II, LLC (collectively "IV" or "plaintiffs" ). [Doc. No. 376]. Plaintiffs appealed that judgment to the United States Court of Appeals for the Federal Circuit and on July 6, 2015, the Federal Circuit affirmed the judgment in all respects. [Doc. No. 421].

Pending before the Court are Capital One's Motion to Declare this an Exceptional Case Pursuant to 35 U.S.C. § 285 [Doc. No. 379] and Amended Bill of Costs [Doc. No. 430-1].[1] These matters are now ripe for disposition; and for the reasons stated herein, the Court concludes that:

(1) Capital One is the "prevailing party" for purposes of Federal Rule of Civil Procedure 54(d) and 35 U.S.C. § 285;

---

[1] Action on Capital One's original Verified Bill of Costs [Doc. No 377] was stayed pending appeal. [Doc. No. 400]. Following appellate proceedings, Capital One filed its Amended Bill of Costs on August 28, 2015. [Doc. No. 430-1].

(2) This case is not an "exceptional case" and therefore denies Capital One's Motion to Declare this an Exceptional Case Pursuant to 35 U.S.C. § 285; and

(3) Capital One is entitled to recover costs in the amount of $87,805.74.

## BACKGROUND

On June 19, 2013, plaintiffs filed this patent infringement action against Capital One based on the following five patents: the '894 Patent (Systems and Methods for Authorizing a Transaction Card); the '587 Patent (Method for Organizing Digital Images); the '382 Patent (Advanced Internet Interface Providing User Display Access of Customized Webpages); the '701 Patent (Masking Private Billing Data by Assigning Another Billing Data to Use in Commerce with Businesses); and the '137 Patent (Administration of Financial Accounts). [Doc. No. 1]. The Court held a *Markman* hearing on November 18, 2013 [Doc. No. 137] and issued its claim construction Order on December 18, 2013 [Doc. No. 162].[2]

On January 1, 2014, IV filed an unopposed motion to dismiss its claims under the '894 Patent with prejudice [Doc. No. 172] and on January 13, 2014, the Court dismissed those claims with prejudice [Doc. No. 183].[3] On January 15, 2014, IV filed an

---

[2] The Order [Doc. No. 162] did not address claims under the '894 Patent based on IV's representation in its Opening Brief on Claim Construction that "IV is no longer asserting U.S. Patent No. 6,182,894." [Doc. No. 110 at 1 n.1].

[3] The accompanying memorandum in support provided the following explanation for IV's decision to dismiss these claims with prejudice:

> As discovery in this action progressed, Plaintiffs determined that there may be invalidating prior art references to the claims of the '894 patent. To be sure, Plaintiffs believe that the invention described in the '894 patent specification is patentable and valid, but recognize that the claims, *as written*, are at risk of being found invalid. Rather than incur that risk, and to save the parties' and Court's resources, Plaintiffs decided to withdraw those claims and explore their rights to have the '894 patent claims re-written, re-examined, and (or) re-issued.

[Doc. No. 173 at 2].

2

unopposed motion to dismiss its claims under the '701 patent with prejudice on the grounds that "[a]s discovery in this action progressed, Plaintiffs determined that proving Defendants' liability under the '701 patent was problematic." [Doc. No. 186 at 2]. On January 23, 2014, the Court dismissed plaintiffs' claims under the '701 Patent with prejudice. That same day, the Court dismissed plaintiffs' claims under the '587 Patent and entered a judgment of non-infringement in favor of Capital One [Doc. No. 200], based on IV's stipulation of non-infringement and unopposed motion for entry of judgment of non-infringement, filed on January 17, 2014 [Doc. Nos. 188, 190]. On February 6, 2014, the Court dismissed additional patent infringement claims with prejudice and counterclaims without prejudice pursuant to the parties' stipulation [Doc. No. 206], leaving for adjudication certain claims under the '137 Patent (claims 5–11) and '382 Patent (claims 1–5, 16–17, 19–22). [Doc. No. 207].

On February 28, 2014, the Court denied without prejudice Capital One's Motion for Judgment on the Pleadings as to all remaining claims under the '382 Patent. [Doc No. 248]. That same day, Capital One filed a motion for summary judgment. [Doc. No. 239]. On April 16, 2014, following oral argument on April 2, 2014, the Court granted Capital One's motion for summary judgement, and entered judgment in its favor, on the grounds that as a matter of law: (1) the '137 Patent and '382 Patent each claim non-patentable subject matter under § 101; and (2) certain claim terms with respect to the '382 Patent are indefinite and insolubly ambiguous, rendering the '382 Patent unenforceable under § 112(b). [Doc. No. 371 at 13]. On July 6, 2015, the Federal Circuit affirmed this Court's dismissal of claims under the '137 Patent and the '382 Patent, as well as dismissal of the '587 Patent based on its claims construction. [Doc. No. 421].

## STANDARD OF REVIEW

Only the "prevailing party" may recover costs under Rule 54(d) or attorneys' fees under

35 U.S.C. § 285.  *See* Fed. R. Civ. P 54(d)(1) ("Unless a federal statute, these rules, or a court

order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing

party."); 35 U.S.C. § 285 ("The court in exceptional cases may award reasonable attorney fees to

the prevailing party.").  There can be, however, only one "prevailing party," even in cases

involving mixed judgments.  *Shum v. Intel Corp.*, 629 F.3d 1360, 1367 (Fed. Cir. 2010) ("For the

purposes of costs and fees, there can only be one winner.  A court must choose one, and only

one, 'prevailing party' to receive any costs award.").  Accordingly, the Court must first decide

who should be considered the "prevailing party."   In a patent case, Federal Circuit law governs

the determination of which party has prevailed.  *See SSL Services, LLC v. Citrix Systems, Inc.*,

769 F.3d 1073, 1086 (Fed. Cir. 2014).  In contrast, "[w]hether an award of costs is reasonable is

determined under the law of the regional circuit."  *Shum*, 629 F.3d at 1370 (citing *Manildra*

*Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1183 (Fed. Cir. 1996)).

## ANALYSIS

### 1. Capital One is the "Prevailing Party"

In order to be a "prevailing party," a party must receive some relief on the merits "that

materially alter[s] the legal relationship between the parties by modifying one party's behavior in

a way that 'directly benefits' the opposing party.  A party is not required, however, to prevail on

all claims in order to qualify as a prevailing party under Rule 54."  *Shum*, 629 F.3d at 1367–68.

Here, both parties claim they were the "prevailing party"—IV, because it prevailed on Capital

One's antitrust counterclaims; Capital One, because it defeated IV's patent infringement claims.

In determining which of these two parties should be deemed the "prevailing party," the Court

must consider (1) whether the success of one party surpasses the other, and (2) whether that success aligns itself with the central issue of litigation. The critical inquiry is therefore the nature of each party's "respective successes" as they relate to the "central issue" in this case. *Shum*, 629 F.3d at 1368.

The central issue in this case was the enforceability against Capital One of five patents that involved various components of electronic banking services. The lawsuit was instituted on that basis; and the merits of those five patents drove the litigation throughout discovery and until the Court's ruling on summary judgment. Four of those patents underwent claim construction and thereafter were dismissed in whole or in part. The remaining claims under the '137 Patent and '382 Patent were dismissed on summary judgment. Overall, Capital One mounted a successful defense, resulting in some relief on the merits that materially altered the legal relationship between the parties by modifying IV's behavior in a way that directly benefited Capital One. *Shum*, 629 F.3d at 1367; *see also SSL Services*, 769 F.3d at 1086–87.

IV contends that by obtaining dismissal of Capital One's antitrust counterclaims it also received some relief that qualifies it as the "prevailing party." IV also argues that while both parties lost on their affirmative claims "the scope of the claims asserted and remedies sought by Capital One dwarfed those sought by IV." [Doc. No. 436 at 9]. For this reason, "the breadth of the antitrust relief sought by Capital One shows that . . . the antitrust claims that Capital One asserted—and lost—were the 'central' issue in the case *from Capital One's perspective*." [Doc. No. 392 at 6] (emphasis added). But Capital One's somewhat novel antitrust contentions—as set forth in both its patent misuse defense and certain counterclaims—were asserted in direct response to IV's specific patent infringement claims and were clearly part and parcel of its overall defense against those claims. They were also dismissed as legally insufficient within a

5

period of less than 90 days of their filing, on a preliminary challenge pursuant to Rule 12(b)(6).[4]

For this reason, and despite all the consequences that IV theoretically avoided for its portfolio of

3,500 financial services patents, its victory did not result in obtaining any relief with respect to

its overall litigation objective, *viz.*, enforcement of the patents-in-suit.  Rather, it was a successful

preliminary skirmish over one of many legal contentions that IV had to overcome in order to

achieve ultimate success, something IV never realized.[5]  On the other hand, Capital One

successfully defeated IV's entire litigation objective.  IV's success neither surpassed Capital

One's nor aligned itself with the central issue in this case, the validity and enforceability of its

five patents.  In short, IV won some battles but lost the war.  Capital One lost some battles but

won the war.

For these reasons, the Court concludes that Capital One is the "prevailing party" for

purposes of Rule 54(d) and 35 U.S.C. § 285.

### 2. The Patent Act's Fee-Shifting Provision – 35 U.S.C. § 285

Having found Capital One to be the prevailing party, the Court must now consider

whether this litigation qualifies as an "exceptional case" pursuant to 35 U.S.C. § 285.

---

[4] The action was filed on June 19, 2013. [Doc. No. 1].  On September 11, 2013, Capital One filed its Answer and accompanying counterclaims [Doc. No. 62], which were subsequently amended on October 14, 2013 [Doc. No. 88].  On December 5, 2013, the Court granted IV's motion to dismiss Capital One's amended antitrust counterclaims and eighth affirmative patent misuse defense on the grounds that Capital One "failed to allege plausible claims for patent misuse, monopolization or attempted monopolization under Section 2 of the Sherman Act, or unlawful asset acquisition under the Clayton Act." [Doc. No. 151].

[5] In arguing that it is the prevailing party, IV relies on the Federal Circuit's decision in *SSL Services*, a mixed judgment case that measured each party's "respective successes" based on the relief obtained. *SSL Services*, 769 F.3d at 1087.  Even assuming, without deciding or endorsing, that the test in *SSL Services* contemplated some type of economic value comparison, IV's position ignores the Federal Circuit's primary focus on not only each party's success relative to one another, but also whether a party's success aligns with the central issue in the case. *See, e.g., Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 2015 WL 1470710, at *8 (M.D. Pa. Mar. 31, 2015) (citing *Shum*, 629 F.3d at 1368) ("the essential inquiry in mixed judgment cases is whether one party's successes surpass the other's with respect to the 'central issue[s]' in the suit").

In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), the Supreme Court considered the required showing for an award of fees under 35 U.S.C. § 285. It first rejected the test adopted by the Federal Circuit that in order to recover under Section 285, a prevailing party was required to establish that, absent misconduct during litigation or in securing the patent, the litigation was brought in subjective bad faith and was objectively baseless when filed. *See Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005). Rather, it concluded that the prevailing party must demonstrate that the case "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1756. The Court then instructed district courts to determine whether a case is exceptional "in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* Although evidence of bad faith is not necessary, the Court recognized that "a case presenting either subjective bad faith *or* exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* at 1757 (emphasis added). [6]

Since *Octane Fitness*, the Federal Circuit has emphasized that:

> [U]nder the new *Octane Fitness* standard . . . the Supreme Court did not simply relax the standard under § 285. It substantially changed the analysis. The district court may now consider the totality of the circumstances to determine whether this case is "exceptional," and the district court is not necessarily required to find evidence of the specific factors outlined in *Brooks Furniture*. Further, the Supreme Court lowered the burden of proof for establishing that a case is "exceptional."

---

[6] The Supreme Court also "reject[ed] the Federal Circuit's requirement that patent litigants establish their entitlement to fees under § 285 by 'clear and convincing evidence.'" *Id.* at 1758 ("Section 285 demands a simple discretionary inquiry; it imposes no specific evidentiary burden, much less a high one. Indeed, patent-infringement litigation has always been governed by a preponderance of the evidence standard.").

*AdjustaCam, LLC v. Newegg, Inc.*, 2015 WL 5449927, *3 (Fed. Cir. Sept. 17, 2015). The

Federal Circuit has also recognized that "our § 285 cases that address litigation misconduct,

which were not overruled by *Octane Fitness*, make clear that a district court should consider a

patentee's pattern of litigation where adequate evidence of an abusive pattern is presented." *SFA*

*Systems, LLC v. Newegg Inc.*, 793 F.3d 1344, 1352 (Fed. Cir. 2015). The Federal Circuit has

also emphasized the broad discretion exercised by district courts in this area, reminding litigants

that "there is a distinction between being eligible for fees as the prevailing party and the

discretionary decision to award fees." *SSL Services*, 769 F.3d at 1087.

Other lower courts have looked to a variety of factors in assessing whether a case is

exceptional. These courts have generally recognized, however, that while the bar a prevailing

party must clear to establish an "exceptional" case has been lowered, an award of fees under 35

U.S.C. § 285 involves litigation conduct that goes beyond mere stonewalling, excessive

discovery demands, or otherwise burdensome litigation strategies.[7] Indeed, as the Supreme

Court observed, it is "the rare case in which a party's unreasonable conduct—while not

---

[7] *See, e.g., Oplus Technologies, Ltd. v. Vizio, Inc.*, 782 F.3d 1371 (Fed. Cir. 2015) (district court
abused its discretion in denying fees where it found "ample evidence" of litigation misconduct
and describing counsel's behavior as "inappropriate," "unprofessional," "vexatious," and
"harassing"); *Cognex Corp. v. Microscan Systems, Inc.*, 2014 WL 2989975, at *4 (S.D.N.Y. June
30, 2014) (awarding fees after determining that litigation tactics, such as filing post-trial motions
that sought to re-litigate issues previously decided during trial "wasted the Court's time and have
required plaintiffs to expend significant resources"); *Precision Links Inc. v. USA Products
Group, Inc.*, 2014 WL 2861759, at *3 (W.D.N.C. June 24, 2014) (awarding fees where plaintiff
sought "baseless" preliminary injunction on a previously-rejected theory of liability and filed
frivolous post-dismissal motions); *Intellect Wireless, Inc. v. Sharp Corp.*, 2014 WL 2443871, at
*6 (N.D. Ill. May 30, 2014) (awarding fees based on false declarations before the PTO, and
without which, plaintiff would not have obtained the patents at issue); *see also LendingTree,
LLC v. Zillow, Inc.*, 54 F. Supp. 3d 444 (W.D.N.C. 2014) (considering the "substantive strength"
of a claim in light of whether the non-prevailing party conducted an adequate pre-filing
investigation).

necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Octane Fitness*, 134 S. Ct. at 1757.

Capital One contends that this is an "exceptional case" because IV's patent infringement claims had no objectively determinable merit, IV failed to engage in a sufficient pre-filing investigation, and in several instances, IV was actually aware of information that undercut either the patent's validity or Capital One's infringement. Capital One also contends that IV's conduct must be assessed within the context of what it characterizes as industry-wide "sham litigation" by the world's largest patent assertion entity.[8]

First, the Court draws no adverse inferences solely from IV's status as a patent assertion entity. Second, for essentially the same reasons previously discussed, the record before the Court does not establish a history of abusive "sham litigation."[9] Third, the Court must bear in mind that certain contentions and positions improper in some circumstances are nevertheless authorized and, indeed, encouraged, by the nature of the presumptively valid patent monopoly conferred on a patent holder. Fourth, the Court must assess IV's assertion of its claims in light of the realities of patent litigation, and whether this case stands out in material respects from other

---

[8] Patent assertion entities are sometimes referred to as "non-operating entities" or derisively as "patent trolls." Capital One describes, without challenge, IV as the largest patent assertion entity in the United States, with a portfolio of approximately 80,000 patents and patent applications, including 3,500 related to financial services. [Doc. No. 388 at 1–4].

[9] The claim of "sham litigation" appears to recast many of the allegations the Court previously confronted when addressing Capital One's antitrust counterclaims. *See* [Doc. No. 88 at 15] ("Intellectual Ventures has asserted a series of meritless patent claims against Capital One and other U.S. commercial banks for purposes of coercing settlement and without any realistic expectation of actually securing damages or other relief."). Ostensibly in support of its position, Capital One points to five lawsuits filed by plaintiffs in 2013 against other financial institutions involving some or all of the same patents. [Doc. No. 380 at 3 n.2]. As best the Court can tell, none of the courts in these cases, or the U.S. Patent and Trademark Office in any of its own proceedings, adjudicated any of these patents on the merits before this Court.

patent litigation. Based on these and other considerations, discussed below, the Court concludes that this case does not qualify as an "exceptional" case under 35 U.S.C. § 285.

Based on all the facts and circumstances, the Court cannot sufficiently distinguish this case from the large category of cases where the ultimate merits must be determined through the rigors of the litigation process, including contested claim construction and the assessment of expert testimony, all to be considered in light of constantly evolving legal standards that, by their very nature, are highly conceptual and nuanced. *See, e.g., Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312 (Fed. Cir. 2015) (discussing indefiniteness under 35 U.S.C. § 112). While one may argue with some force that a more cautious, careful, diligent or reasonable patent holder would have left these patents on the shelf, the Court cannot conclude that the merits were so baseless as to make this case "exceptional." IV had limited visibility into the details of certain of Capital One's processes, systems and methods that, at least from its website and those of other financial institutions, had some facial relationship to those covered by the asserted patents.

The inherent nature of patent litigation offers a wide opportunity for aggressive advocacy that does not exceed appropriate boundaries; and the application of 35 U.S.C. § 285 must be assessed with these realties in mind. Here, IV's claims proved weak and problematic; but overall, the Court cannot conclude that the claims were objectively unreasonable or frivolous or that the case was otherwise exceptional based on IV's litigation conduct. IV consistently reassessed the merits of its patents throughout the litigation process and acted with reasonable dispatch in dismissing claims once their merits became clear through the Court's rulings.

There is no doubt that this case was aggressively litigated by both sides. But conduct triggering relief must go beyond an aggressive litigation strategy. *See, e.g., Gametek, LLC v. Zynga*, 2014 WL 4351414, at *4–5 (N.D. Cal. Sept. 2, 2014) (collecting cases). Indeed, it is the

Court's experience that aggressive patent infringement litigation is often *de rigueur*, particularly where, as here, both parties are fueled with substantial resources and an appetite to engage. For these reasons, based on the totality of the circumstances, the Court cannot conclude that this case should be deemed an "exceptional case" under 35 U.S.C. § 285.

### 3. Capital One's Bill of Costs [10]

Awarding costs involves two separate inquiries: "First, who is the 'prevailing party' within the meaning of Rule 54(d)(1). Second, how much (if any) costs should be awarded to the prevailing party." *Shum*, 629 F.3d at 1366. Federal courts also retain broad discretion when awarding costs. *See Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 234 (1964).

While Rule 54(d)(1) creates a presumption that the prevailing party will be awarded costs, the prevailing party still bears the burden of showing that the requested costs are permitted under § 1920. *See Fells v. Va. Dep't of Transp.*, 605 F. Supp. 2d 740, 742 (E.D. Va. 2009); *Cofield v. Crumpler*, 179 F.R.D. 510, 514 (E.D. Va. 1998). However, "[o]nce it is established that an items falls within 28 U.S.C. § 1920, the prevailing party is presumed to be entitled to recover costs, and the burden is on the losing party to show impropriety of an allowance." *Cofield*, 179 F.R.D. at 514.

As a practical matter, courts look to the general taxation of costs statute to determine whether taxation of a particular item is permitted. *See* 28 U.S.C. § 1920. Those costs include: (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses;

---

[10] On May 2, 2014, Capital One filed a Bill of Costs [Doc. No. 377], consideration of which was stayed pending appeal [Doc. No. 400]. Thereafter, the Court permitted supplemental briefing. [Doc. No. 425]. On August 28, 2015, Capital One filed an Amended Bill of Costs, omitting costs associated with its unsuccessful counterclaims, costs associated with obtaining *pro hac* admission for attorneys who were consulted on those counterclaims, related hearing transcripts, expedited transcripts, and additional copies of transcripts. [Doc. No. 430].

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under 28 U.S.C. § 1923; and (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828.

Having established that Capital One is the prevailing party, the Court must determine "how much (if any) costs should be awarded to the prevailing party." *Shum*, 629 F.3d at 1366.

### a. *Fees of the Clerk*

Plaintiffs object to $900.00 in "miscellaneous" Clerk fees on the grounds that fees associated with *pro hac* admission are not taxable under 28 U.S.C. § 1920 and that, in any event, it was not reasonable for Capital One to apply for the admission of twelve out-of-state lawyers in addition to the six Virginia lawyers that appeared. [Doc. No. 392 at 9]. Given the complexities of this case, the Court will award the costs associated with these *pro hac* admissions.[11]

### b. *Fees for service of summons and subpoena*

Plaintiffs object to $2,026.99 for serving third-party discovery subpoenas on the grounds that recovery of these costs is only permitted when service is made by the United States Marshals. In support of their position, plaintiffs cite the Taxation of Costs Guidelines for the Eastern District of Virginia, which categorizes private process server fees as "not taxable." *See* Taxation of Costs Guidelines, *available at* http://www.vaed.uscourts.gov/formsandfees/ documents/TaxationofCostsGuidelines5-30-2014.pdf. Although judges within the Eastern District of Virginia remain divided over this issue, the Court will deny Capital One's request for

---

[11] Judges within Eastern District of Virginia have recognized that *pro hac* fees are not specifically authorized under the Taxation of Costs Guidelines, but note that they have been awarded as 'fees of the clerk.'" *See, e.g., Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 2013 WL 1192947, at *3 (Mar. 21, 2013); *Nobel Biocare USA, LLC v. Technique D'usinage Sinlab*, 2013 WL 819911, at *2 (E.D. Va. Mar. 4, 2013); *Synergistic Int'l, L.L.C. v. Korman*, 2007 WL 517676, at *2 (E.D. Va. Feb. 8, 2007).

these costs for the reasons stated in *Ford v. Zalco Realty, Inc.*, 708 F. Supp. 2d 558, 561 (E.D. Va. 2010) ("the weight of cases in this district . . . hold that private process server fees are not taxable under 28 U.S.C. § 1920."). *But see O'Bryhim v. Reliance Standard Life Ins. Co.*, 997 F. Supp. 728 (E.D. Va. 1998); *Mann v. Heckler & Koch Defense, Inc.*, 2011 WL 1599580 (E.D. Va. Apr. 28, 2011).

### c. *Fees for printed or electronically recorded transcripts necessarily obtained for use in the case*

28 U.S.C. § 1920(2) provides that "[a] judge or clerk of any court of the United States may tax as costs the . . . [f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case."[12]  Capital One requests $94,104.28 for printed or electronically recorded transcripts necessarily obtained for use in the case.  [Doc. No. 430-1].[13]  These costs include fees associated with hearing transcripts ($776.70), deposition transcripts ($51,067.18), and videography costs ($42,260.40).  [Doc. No. 430-2].

### i. Hearing Transcripts

Capital One requests the costs associated with six hearing transcripts: (1) Capital One's Motion to Dismiss with Prejudice on August 28, 2013; (2) the *Markman* hearing on November 18, 2013; (3) the Final Pretrial Conference on December 19, 2013; (4) Capital One's Motion for Judgment on the Pleadings on February 28, 2014; (5) Plaintiffs' Motion to Strike the Untimely Expert Report of Robin O'Connell on March 14, 2014; and (6) Capital One's Motion for

---

[12] The Taxation of Costs Guidelines do not track this general language. However, before these guidelines existed, one judge in this district concluded that "[t]he basic standard to be applied in determining whether to allow the expense of a transcript as taxable cost is whether it was necessarily obtained for use in the case, that is whether it was necessary to counsel's effective performance and proper handling of the case." *Marcoin, Inc. v. Edwin K. Williams & Co., Inc.*, 88 F.R.D. 588, 590 (E.D. Va. 1980).

[13] Capital One's initial Bill of Costs filed on May 2, 2014 requested a total of $125,518.42 for this category.  [Doc. Nos. 377-1].

Summary Judgment on April 2, 2014. The Court finds that these transcripts were necessarily obtained for use in this litigation and for that reason awards $776.70 in hearing transcript costs.

### ii. Deposition Transcripts

Capital One seeks $51,067.18 in deposition transcript costs, consisting of $25,700.61 for depositions noticed by Capital One and $25,366.57 for depositions noticed by IV.

Courts within the Fourth Circuit routinely award the costs of deposition transcripts "when the taking of a deposition is reasonably necessary at the time of its taking." *LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n*, 830 F.2d 522, 528 (4th Cir. 1987); *see also Cook v. Magellan Health Servs.*, 2013 WL 2152638, at *1 (E.D. Va. May 15, 2013). Under this standard, such costs are taxable "if they were incurred in order to prepare for trial, regardless of whether the transcripts are actually used at trial." *Cook*, 2013 WL 2152638, at *1 (quoting *Jop v. City of Hampton, Va.*, 163 F.R.D. 486, 488 (E.D. Va. 1995)). This Court has also recognized that "[a] deposition taken within the proper bounds of discovery, even if not used at trial, will normally be deemed to be necessarily obtained for use in the case, and its costs will be taxed unless the opposing party interposes a specific objection that the deposition was improperly taken or unduly prolonged." *Cofield*, 179 F.R.D. at 518 (quoting *Fed. Sav. & Loan Ins. Corp. v. Szarabajka*, 330 F. Supp. 1202, 1210 (N.D. Ill. 1971)).

The Court finds these identified deposition transcripts were necessarily obtained for use in this case and therefore awards Capital One $51,067.18 in costs, as requested.

### iii. Videography Costs

Capital One seeks $26,776.87 in videography costs associated with seventeen depositions noticed by Capital One. [Doc. No. 430-2].[14] In *Cherry v. Champion Int'l Corp.*, 186 F.3d 442

---

[14] Capital One's reply brief appears to limit its request for videography costs to depositions noticed by Capital One. [Doc. No. 430 at 9] ("Capital One has demonstrated that *the seventeen*

(4th Cir. 1999), the Fourth Circuit squarely addressed whether 28 U.S.C. § 1920(2) precludes the taxation of costs associated with videography services where costs associated with transcribing the deposition have already been assessed. The Fourth Circuit held that while 28 U.S.C. § 1920(2) does not preclude an award of such costs, it requires a showing of necessity that goes beyond mere convenience or an alternative method for presenting evidence at trial. *Cherry*, 186 F.3d. at 449.

Capital One seeks videography costs on the grounds that "[s]even of those depositions were for third-party inventors . . . beyond the subpoena power of the court and not within the control of IV or Capital One." [Doc. No. 430 at 9]. "Six others were for depositions of IV's corporate representative and CEO that would have been admissible at trial [and] . . . the remaining four depositions were of IV's experts, which were necessary for trial preparation and potential use for impeachment." [*Id.*]. Plaintiffs object to these costs, arguing that taxing both transcription and videography is the exception rather than the rule. [Doc. No. 392 at 11].

The Court concludes that Capital One has established the necessity of videography costs with respect to witnesses beyond the subpoena power of the Court, but has not otherwise demonstrated why it should be permitted to recover the videography costs associated with plaintiffs' expert witnesses, offering nothing beyond its conclusory claim that videotaping a deposition "is necessary both for trial preparation and for impeachment." *See Cherry*, 186 F.3d at 449 ("Champion asserts that videotaping Cherry's deposition was necessary to enhance its chances of effectively impeaching Cherry at trial. While that may be so . . . [t]he concept of necessity for use in the case connotes something more than convenience or duplication to ensure

---

*depositions for which it seeks videographic costs* were necessarily obtained for use in the case.") (emphasis added). The Court's analysis and award is therefore limited to the videography costs associated with these seventeen depositions.

alternative methods for presenting materials at trial."). Accordingly, the Court will deduct $7,665.67 in videography fees and award Capital One $19,111.20.[15]

### d. *Fees for exemplification and copying costs*

Capital One requests the taxation of costs associated with formatting and copying electronic documents. Specifically, Capital One seeks costs associated with the following: (1) TIFF imaging; (2) Bates and confidentiality branding; (3) OCR generation; (4) Native format production. [Doc. No. 378 at 9].

28 U.S.C. § 1920(4) provides that "[a] judge or clerk of any court of the United States may tax as costs the . . . [f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." Recently, the Fourth Circuit considered the scope of ESI related costs recoverable under § 1920(4). *See Country Vinter of North Carolina, LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249 (4th Cir. 2013) (considering "flattening" and "indexing" electronically stored information, data extraction, unitizing electronic documents, TIFF and PDF production, Bates numbering, copying images onto CDs and DVDs, and general processing of electronic data). In *Country Vinter*, the district court concluded that "the only tasks that involve[d] copying [we]re the conversion of native files to TIFF and PDF formats and the transfer of files onto CDs" and for that reason, none of the other related ESI costs qualified for exemplification under § 1920(4). *Country Vinter of North Carolina, LLC v. E. & J. Gallo Winery, Inc.*, 2012 WL 3202677, at *2–3 (Aug. 3, 2012). The Fourth Circuit affirmed, adopting a narrow interpretation of § 1920(4). *Country Vinter*, 718 F.3d at 260 (citing *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158 (3d Cir. 2012)).

---

[15] Plaintiffs also object to Capital One's attempt to recover "finance charges" (i.e., late fees) related to the ordering of twenty-seven videotaped depositions noticed by IV. [Doc. No. 436 at 40]. The Court declines to address this objection, given that Capital One has sought only the recovery of videography costs associated with depositions noticed by Capital One.

The Court concludes that costs associated with electronic Bates stamping and generating OCR to create searchable text may not be awarded under the Fourth Circuit's interpretation of § 1920(4) in *Country Vinter*. Accordingly, the Court will deduct $3,343.64 in fees associated with Bates stamping and/or Confidentiality branding and $291.90 in fees associated with the generation of OCR and award $14,534.16 in costs pursuant to 28 U.S.C. § 1920(4).[16]  The Court also awards $1,396.50 in connection with the production of source code.[17]

e. *Docket fees*

The statutory docket fees sought by Capital One are unopposed.  [Doc. No. 392 at 12].

Accordingly, the Court will award $20.00 in costs pursuant to 28 U.S.C. § 1923.

### CONCLUSION

For the reasons stated above, the Court DENIES Capital One's Motion to Declare this an Exceptional Case Pursuant to 35 U.S.C. § 285 [Doc. No. 379], GRANTS in part Capital One's Amended Bill of Costs [Doc. No. 430-1], and awards $87,805.74 in costs pursuant to 28 U.S.C. § 1920.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record.  An appropriate Order will issue.

/s/

_____
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
November 17, 2015

---

[16] Capital One also argues these costs should be awarded because they are tasks referenced in the Stipulation Regarding Format of Certain Document Productions [Doc. No. 47]. That Stipulation does not, however, address whether or how such costs should be taxed under § 1920(4).

[17] Capital One argues that it is entitled to recover the costs associated with the production of source code under Section I(C) of the Agreed Protective Order [Doc. No. 51]. Although that document does not address whether such costs are taxable under § 1920(4), plaintiffs have not specifically objected to the requested costs, which appear to have been reasonably contemplated by discovery.